**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| NIKKI STEINER MAZZOCCHIO and ANGELA STEINER KRAUS, <br><br> Plaintiffs, <br><br> v. <br><br> COTTER CORPORATION et al., <br><br> Defendants | Case No. 4:22-cv-00292-MTS |

**DEFENDANT COTTER CORPORATION (N.S.L.)'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Riley Safer Holmes & Cancila LLP
Brian O. Watson, #68678MO
Jennifer Steeve, #308082CA
Nacenté Seabury, #67248MO
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471–8700 (main)
(312) 471–8701 (fax)
bwatson@rshc-law.com
jsteeve@rshc-law.com
nseabury@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)**

**I.      INTRODUCTION**

Plaintiffs' complaint—alleging that radioactive material from the Manhattan Project caused their cancers—should be dismissed because the Price-Anderson Act ("PAA"), 42 U.S.C. §§ 2210, *et seq.*, preempts their purported state-law claims, and they disclaim any PAA claim. The PAA deems any lawsuit "arising out of or resulting from a nuclear incident," broadly defined as any occurrence causing bodily injury or property damage "arising out of or resulting from the radioactive . . . or other hazardous properties of source, special nuclear, or byproduct material," to be an action arising under federal law. *Id.* §§ 2014(w), (q), (hh).  Plaintiffs' allegations unquestionably fall within the PAA.

As the Eighth Circuit and this Court have held in related litigation, the PAA applies to these allegations against Cotter and are claims exclusively under federal rather than state law. *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 977 n.3 (8th Cir. 2018); *In re Cotter (N.S.L.)*, 22 F.4th 788, 793 (8th Cir. 2022); *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013).  The Supreme Court has also underscored that the PAA not only creates "complete preemption," where federal standards must control, but the "pre-emptive force" of the PAA "is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim." *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 n.6 (1999).  Therefore, because Plaintiffs "can sue under the PAA *or not at all*," *McClurg*, 933 F. Supp. 2d at 1186 (citation omitted and emphasis added), and Plaintiffs improperly sued here under state law, dismissal is required.

Perhaps most significantly, Plaintiffs explicitly disclaim any possible cause of action arising under the PAA and federal law.  Pet. ¶ 11, ECF No. 5.  That judicial admission dooms their lawsuit and is likely because they cannot plead sufficient facts to state a PAA claim.  Under

1

the PAA, Plaintiffs must allege that Cotter violated the federal standard of care by exposing Plaintiffs to radiation at exposure levels in excess of the 500 millirem-per-year dose limit permitted by the federal regulations in effect at the time of Cotter's alleged conduct between 1969 and 1973. But Plaintiffs allege no such exposure and concede levels are below background (i.e., natural radiation that is always present in the environment). Plaintiffs' complaint therefore should be dismissed with prejudice.

## II.     BACKGROUND

Plaintiffs Nikki Steiner Mazzocchio and Angela Steiner Krause filed this complaint in Missouri state court on January 25, 2022, seeking damages "related to the processing, transport, storage, handling, and disposal of hazardous, toxic, and radioactive materials . . . in and around St. Louis County, Missouri." Pet. ¶ 1, ECF No. 5. Plaintiffs allege their claims arise from "radiological contamination generated by activities" of the Manhattan Project "during the development of the atomic weapons of the 1940s and 50s." *Id*. ¶ 27, n. 1. Plaintiffs claim that "[a]s a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous and radioactive substances into the area," in March and May 2018, respectively, Plaintiffs were diagnosed with multiple myeloma. *Id*. ¶¶ 21.A.1–A.2.

Plaintiffs allege that Mallinckrodt originally processed the material in downtown St. Louis from 1942 until 1957, under contracts with the Manhattan Engineer District and the Atomic Energy Commission. *Id*. ¶ 42. Plaintiffs then allege that by 1946, Mallinckrodt ran out of space at the St. Louis Downtown Site ("SLDS") and began to store the radioactive material at a 21.7-acre tract of land, known as the St. Louis Airport Site ("SLAPS"), in northern St. Louis County. *Id.* ¶¶ 31, 43. Plaintiffs claim that "[h]undreds of thousands of tons of hazardous, toxic, and radioactive wastes were transported from the SLDS to the SLAPS for storage, including

2

radium-bearing residues, refined cake, barium sulfate cake, and C-liner slag." *Id.* ¶ 40.  Plaintiffs also claim that "these hazardous, toxic, and radioactive waste residues migrated directly from the SLAPS onto other sites (via Coldwater Creek) or were deposited as the residues were hauled along transportation routes." *Id*. ¶ 40.

In the 1960s, Plaintiffs allege the material was eventually sold to Contemporary Metals Corporations, whose subsidiary, Continental Mining & Milling Company ("CMM"), transported the material to 9200 Latty Avenue ("Latty Avenue Site"). *Id.* ¶ 45.  After CMM went bankrupt, Plaintiffs allege that yet another company, Commercial Discount Corporation, took possession of CMM's assets, including the Latty Avenue Site and the radioactive material. *Id*. ¶¶ 44–46.

As to Cotter, Plaintiffs allege that, "[i]n 1969, the remaining hazardous, toxic, and radioactive wastes [sic] residues at Latty Avenue were sold to the Cotter . . . .  In 1970, Cotter employed B&K Construction Company of St. Louis, Missouri, to transport these waste residues out of state.  By late 1970, most of the residues had shipped offsite, except for 10,000 tons of Colorado raffinate and 8,700 tons of leached barium sulphate raffinates." *Id*. ¶ 47.  Plaintiffs also allege "[i]n 1973, Cotter disposed of approximately 47,700 tons of soil mixed with uranium ore processing residues, including leached barium sulfate, uranium, and thorium, into the West Lake Landfill." *Id*. ¶ 48.[1]

---

[1] As Plaintiffs' own sources show (Pet. ¶¶ 53–55), B&K Construction Company (not Cotter) disposed of the material at West Lake Landfill.  U.S. Environmental Protection Agency, *Remedial Investigation Addendum: West Lake Landfill Operable Unit 1* at 163, n. 98 (2018). *See See Brown v. Medtronic, Inc.*, 628 F.3d 451, 459–60 (8th Cir. 2010) "documents attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents 'for all purposes'"); *see also N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("when documents attached to a complaint contradict the allegations of the complaint, the document controls").

But Plaintiffs expressly and voluntarily state that they "do not allege any causes of actions arising under any laws of the United States." *Id.* ¶ 11. Plaintiffs assert that their claims do not fall within the scope of the PAA because Coldwater Creek has never been a licensed nuclear facility. *Id.* ¶¶ 12–13. Thus, Plaintiffs purport to allege only state-law claims of trespass (Count I), temporary nuisance (Count II), permanent nuisance (Count III), negligence (Count IV), negligence per se (Count V), and absolute or strict liability (Count VI).

### III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While a court draws all reasonable inferences in the plaintiff's favor, "the tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions." *Id.* Thus, plaintiff's factual allegations must include more than "labels and conclusions" in order to "give the defendant fair notice of what ... the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In other words, "'naked assertion[s]' devoid of 'further factual enhancement'" and "formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Twombly*, 550 U.S. at 555.

4

## IV.     ARGUMENT

### A.     The Price-Anderson Act Preempts Plaintiffs' State-Law Claims.

The framework of the PAA determines the outcome of this case.  The PAA is part of a comprehensive federal regime that preempts the states from regulating the health and safety aspects of radiation.  *See, e.g.*, *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 205, 208, 212 (1983); *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1240–45 (10th Cir. 2004).  That regime of "pervasive federal regulation" occupies "the entire field of nuclear safety concerns."  *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 856–60 (3d Cir. 1991).

According to the Supreme Court, the PAA creates "complete preemption" and its "pre-emptive force . . . is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim."  *Neztsosie*, 526 U.S. at 484 n.6.  And the PAA's "unusual pre-emption provision . . . not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court even when they assert only state-law claims."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

Congress originally passed the PAA by amending the Atomic Energy Act of 1954 and seeking to "encourage[] the private sector to become involved in the development of atomic energy for peaceful purposes under a program of federal regulation and licensing" under the "strict supervision" of the Atomic Energy Commission ("AEC"), now the Nuclear Regulatory Commission ("NRC").  *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 63 (1978).  But participants in the private nuclear energy industry, facing liability concerns in the event of an accidental release, "informed Congress that they would be forced to withdraw from

5

the field if their liability were not limited by appropriate legislation." *Id.* at 64. "Congress responded in 1957 by passing the Price-Anderson Act . . . . The Act had the dual purpose of 'protect[ing] the public and . . . encourag[ing] the development of the atomic energy industry.'" *Id.* (quoting 42 U.S.C. § 2012(i)).

The PAA initially allowed state courts to hear nuclear incident claims under state law. In 1966, however, Congress amended the Act to "provide[] for the transfer, to a federal district court, of all claims arising out of an *extraordinary nuclear occurrence*," *In re TMI II*, 940 F.2d at 852 (emphasis added), which the NRC or Secretary of Energy had to deem "substantial" and had "resulted or will probably result in substantial damages to persons offsite or property offsite." 42 U.S.C. § 2014(j); *Est. of Ware v. Hosp. of the Univ. of Penn.*, 871 F.3d 273, 280 (3d Cir. 2017).

In 1988, in response to hundreds of cases filed from the Three Mile Island accident, Congress amended the PAA again to create an exclusive federal cause of action for any "public liability action" arising from any "nuclear incident"—thus significantly extending the reach of preemptive federal jurisdiction. 42 U.S.C. § 2014(hh), § 2210(n)(2); *see Neztsosie*, 526 U.S. at 477. Specifically, Congress broadly defined "nuclear incident" as:

> any occurrence, including an extraordinary nuclear occurrence within the United States causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or for loss of use of property, arising out of or resulting from the radioactive . . . properties of source, special nuclear, or byproduct material.

42 U.S.C. § 2014(q). In turn, the PAA defines a "public action" as "any suit asserting any public liability," 42 U.S.C. § 2014(hh), and "[p]ublic liability" as "*any legal liability* arising out of or resulting from a nuclear incident." 42 U.S.C. § 2014(w) (emphasis added). The PAA thus "applies broadly to any event causing bodily or property damage from nuclear material." *In re Cotter*, 22 F.4th at 795.

6

At bottom, the PAA creates an exclusive federal cause of action, establishes federal jurisdiction over the entire action, and channels all legal liability to the federal courts. *In re TMI*, 940 F.2d at 856–57.  In doing so, Congress "ensured that all claims resulting from a given nuclear incident would be governed by the same law, [and] provided for the coordination of all phases of litigation and the orderly distribution of funds"—in federal court.  *Id.*; *see also Halbrook*, 888 F.3d at 977 n.3 (incorporating *In re TMI*'s "comprehensive" analysis).  Among other things, the PAA establishes the maximum permissible radiation dose levels set by federal safety standards as the duty of care for radiation injuries.  *McClurg*, 933 F. Supp. 2d at 1187; *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2007) ("Every federal circuit that has considered the appropriate standard of care . . . has concluded that [defendants] are not liable unless they breach federally-imposed dose limits" (collecting decisions)).

      **B.**      <u>**Plaintiffs' Suit Falls Squarely within the Price-Anderson Act.**</u>

There can be no question that Plaintiffs' claims—arising out of Manhattan Project "radioactive wastes generated in the processing of uranium ores in the St. Louis area" that allegedly caused Plaintiffs' multiple myeloma—fall within the PAA.  Pet. ¶¶ 1–71.  Indeed, as the Eighth Circuit and this Court in related litigation have held repeatedly, these claims against Cotter "are claims under federal rather than state law."  *Halbrook*, 888 F.3d at 977 n.3; *In re Cotter (N.S.L.)*, 22 F.4th at 793; *McClurg*, 933 F. Supp. 2d at 1186.

Plaintiffs also cannot avoid the PAA by claiming a lack of an applicable license or indemnity agreement.  Pet. ¶¶ 13–17.  Just this year, the Eighth Circuit rejected this argument by Plaintiffs' counsel.  *In re Cotter (N.S.L.)*, 22 F.4th at 793 (PAA applies to "all 'nuclear incidents,' regardless of whether the defendant had an applicable license or indemnity agreement").

7

Nor can Plaintiffs escape the PAA based on the well-pleaded complaint rule. Pet. ¶¶ 12, 18–20. Here, the artful pleading doctrine applies as an exception because the PAA has "such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims." *Neztsosie*, 526 U.S. at 484 n.6. Thus, plaintiff "may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law," and "a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271–72 (2d Cir. 2005). Under the artful pleading doctrine, this Court is thus required to construe Plaintiffs' complaint as raising a federal claim under the PAA.

The bottom line is that because Plaintiffs' claims arise out of Manhattan Project radioactive material, they can be brought "under the PAA or not *at all*." *McClurg*, 933 F. Supp. 2d at 1186 (citation omitted and emphasis added). And because of Plaintiffs' judicial admission that they "do not allege any causes of actions arising under any laws of the United States," dismissal with prejudice is appropriate. *See Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 721 (6th Cir. 2021) (quoting *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997)).

**C. <u>Federal Dose Limits Foreclose Plaintiffs' Claims.</u>**

To the extent that Plaintiffs could seek to amend, and this Court ignores Plaintiffs' judicial admission, even then Plaintiffs fail to plead that they could have been exposed to radiation at levels necessary to state a PAA claim. Specifically, Plaintiffs must allege that Cotter violated the federal standard of care by exposing Plaintiffs to radiation at exposure levels in excess of the 500 millirem per year dose limit permitted by federal regulations in effect at the

time of Cotter's alleged conduct between 1969 and 1973. *McClurg*, 933 F. Supp. 2d at 1187; *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2015 WL 867455, at *7 (E.D. Mo. Feb. 27, 2015) ("an essential element of each Plaintiff's PAA public liability action is a breach of the 500 millirem per year dose limit"), *aff'd*, *Halbrook*, 888 F.3d at 971.

This Court has explained that every federal circuit court—the Third, Sixth, Seventh, Ninth, Tenth, and Eleventh that has considered the PAA—"ha[s] concluded that the maximum permissible radiation dose levels set by federal safety standards establish the duty of care for radiation injuries, and that imposing a non-federal duty would conflict with federal law." *McClurg*, 933 F. Supp. 2d at 1187; *accord In re Hanford*, 534 F.3d at 1003 ("Every federal circuit that has considered the appropriate standard of care . . . has concluded that [defendants] are not liable unless they breach federally-imposed dose limits" (collecting decisions)).

"The federal dose limits in effect at the time of release govern." *McClurg*, 2015 WL 867455, at *7. In this case, between 1969 and 1973, federal regulations permitted 500 millirems per year. Pet. ¶¶ 47–48. Thus, "an essential element of each Plaintiff's PAA public liability action is a breach of the 500 millirem per year dose limit." *McClurg*, 2015 WL 867455, at *7.

But Plaintiffs' own cited sources show that the levels here are not only *below* the 500 millirem per year dose limit that applies to Cotter by federal regulations, but also that the "levels of measured radionuclides in surface-water samples from Coldwater Creek were consistent with *background levels*." *See* Pet. ¶ 55 (citing U.S. Army Corps of Engineers, *Record of Decision for the North St. Louis County Sites* at 2-18 (Sept 2, 2005) (emphasis added)). That is, the levels are consistent with everyday natural sources, including the sun, or naturally occurring radioactive elements, such as radon in the ground surrounding our homes, that are always present in the environment. *See id.* That alone warrants dismissal. *See Brown*, 628 F.3d at 459–60

9

("documents attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents 'for all purposes'"); *N. Ind. Gun*, 163 F.3d at 454 ("when documents attached to a complaint contradict the allegations of the complaint, the document controls").

Tellingly, Plaintiffs allege no particular exposure levels and instead claim that "exposures to radioactive wastes should be as low as is reasonably achievable." Pet. ¶ 114. That threadbare allegation not only misstates the standard of care, *McClurg*, 2015 WL 867455, at *7, but courts have held that an "as low as reasonably achievable" philosophy cannot define the legal standard of care under the PAA. *In re TMI Litig.*, 67 F.3d 1103, 1114 (3d Cir. 1995) ("as low as reasonably achievable" is an "objective," not a judicially enforceable, obligation); *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 807–08 (N.D. Ill. 1999); *Finestone v. Fla. Power & Light Co.*, 319 F. Supp. 2d 1347, 1349 (S.D. Fla. 2004); *Corcoran v. New York Power Auth.*, 935 F. Supp. 376, 386 (S.D.N.Y. 1996) (quoting *In re TMI*, 67 F.3d at 1117); *McLandrich v. S. California Edison Co.*, 942 F. Supp. 457, 467 (S.D. Cal. 1996) (citing *In re TMI*, 67 F.3d at 1117).

Together with Plaintiffs' judicial admission, Plaintiffs' failure to allege any plausible exposure level shows that dismissal is required.

## V. CONCLUSION

For these reasons, Cotter requests that the Court grant its motion to dismiss and dismiss Plaintiffs' complaint with prejudice.

Dated: March 17, 2022

Respectfully submitted,

*/s/ Brian O. Watson*
RILEY SAFER HOLMES & CANCILA LLP
Brian O. Watson, #68678MO
Jennifer Steeve, #308082CA
Nacenté Seabury, #67248MO
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
jsteeve@rshc-law.com
nseabury@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)**

## **CERTIFICATE OF SERVICE**

I certify that on March 17, 2022, these papers were served upon all counsel of record via the Court's electronic filing system.

>Respectfully submitted,
>
>*/s/ Brian O. Watson*
>RILEY SAFER HOLMES & CANCILA LLP
>Brian O. Watson, #68678MO
>Jennifer Steeve, #308082CA
>Nacenté Seabury, #67248MO
>70 W. Madison St., Ste. 2900
>Chicago, Illinois 60602
>(312) 471-8700 (main)
>(312) 471-8701 (fax)
>bwatson@rshc-law.com
>jsteeve@rshc-law.com
>nseabury@rshc-law.com
>docketdept@rshc-law.com
>
>**ATTORNEYS FOR DEFENDANT
>COTTER CORPORATION (N.S.L.)**