# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| NIKKI STEINER MAZZOCCHIO and ANGELA STEINER KRAUS, | |
| Plaintiffs, | |
| v. | Case No. 4:22-cv-00292-MTS |
| COTTER CORPORATION et al., | |
| Defendants. | |

**DEFENDANT COTTER CORPORATION (N.S.L.)'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

RILEY SAFER HOLMES & CANCILA LLP
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
docketdept@rshc-law.com

RILEY SAFER HOLMES & CANCILA LLP
Jennifer Steeve, #308082CA
100 Spectrum Center Drive, Suite 440
Irvine, CA 92618
(949) 359-5515 (main)
(312) 471-8701 (fax)
jsteeve@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)**

## **INTRODUCTION**

For two fundamental reasons, Plaintiffs' First Amended and Supplemental Complaint ("Amended Complaint"), alleging that radioactive material from the Manhattan Project caused their cancers, fails to state a claim against Cotter Corporation (N.S.L.) and should be dismissed.

*First*, Plaintiffs fail to allege the necessary elements of their public liability claim under the Price-Anderson Act ("PAA"), 42 U.S.C. §§ 2210, *et seq*. To state a public liability claim against Cotter under the PAA, Plaintiffs must allege, among other things, that (a) Cotter breached the levels of radiation permitted by federal regulations in effect at the time of Cotter's alleged conduct, i.e., a breach of the federal standard of care; and (b) Plaintiffs were exposed to this radiation released by Cotter in excess of background levels. Because Plaintiffs allege no such breach or exposure, their PAA claim should be dismissed.

*Second*, Plaintiffs' state-law "subpart" claims fail because they are preempted by the PAA. *In re Cotter Corp. (N.S.L.)*, 22 F.4th 788, 793 (8th Cir. 2022); *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 977 n.3 (8th Cir. 2018); *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013) ("*McClurg I*"). The Supreme Court has underscored that not only does the PAA create "complete preemption" such that federal standards must control, but the "pre-emptive force" of the PAA "is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim." *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 n.6 (1999). Therefore, because Plaintiffs "can sue under the PAA *or not at all*," Plaintiffs' state-law "subpart" claims should be dismissed with prejudice. *McClurg I*, 933 F. Supp. 2d at 1186 (citation omitted and emphasis added), *aff'd*, *Halbrook*, 888 F.3d at 971; *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 721 (6th Cir. 2021) ("for claims arising from a

1

nuclear incident, a plaintiff 'can sue under the Price-Anderson Act, as amended, or not at all.'") (collecting cases).

## BACKGROUND

I. **Relevant Factual Allegations.**

Plaintiffs Nikki Steiner Mazzocchio and Angela Steiner Krause seek damages "related to the processing, transport, storage, handling, and disposal of hazardous, toxic, and radioactive materials . . . in and around St. Louis County, Missouri." Am. Compl. ¶ 7, ECF No. 44. Plaintiffs claim that Defendants "caus[ed] the release of hazardous, toxic, and radioactive substances which have now been physically deposited on surrounding properties by various means including wind, soil, surface water, and groundwater transmission." *Id.* ¶ 19. Plaintiffs allege that as a result, in March and May 2018, respectively, Plaintiffs were diagnosed with multiple myeloma. *Id.* ¶¶ 10–11.

According to the Amended Complaint, the radioactive material came to St. Louis via Mallinckrodt, which, as part of the Manhattan Project, processed the material in downtown St. Louis from 1942 until 1957 under contracts with the United States government. *Id.* ¶¶ 17, 34. Plaintiffs allege that by 1947, Mallinckrodt also transported the radioactive material to, and stored it on, a site near the Lambert Airport and Coldwater Creek known as the St. Louis Airport Site ("SLAPS"). *Id.* ¶ 36. Plaintiffs allege that in the late 1960s, unnamed parties then transported some portion of the radioactive material, including "(1) pitchblende raffinate, (2) Colorado raffinate, (3) barium sulfate (unleached), (4) barium cake (leached), and (5) miscellaneous residues[,]" from SLAPS to a site located on Latty Avenue, which is also near Coldwater Creek. *Id.* ¶¶ 41–43.

As to Cotter, Plaintiffs allege that, "[i]n 1969, Cotter purchased and assumed responsibility for the RWM [radioactive waste materials] stockpiled at Latty Avenue." *Id.* ¶ 44.

2

Cotter did so under a source material license issued by the controlling federal agency at the time, the Atomic Energy Commission ("AEC"). *Id.* ¶ 45; *see also id.* ¶ 46.

Plaintiffs allege that "[d]uring Cotter's drying operations at Latty Avenue," the AEC cited Cotter in relation to sample surveys, and also that the AEC, the St. Louis County Health Department, and other "[h]ealth and environmental experts" "expressed concerns and noted violations." *Id.* ¶ 48. Plaintiffs do not allege that the AEC, or anyone else, ever cited Cotter for violating the federal regulations that explicitly defined the levels of radiation at the time that protected members of the public in an unrestricted area from excessive exposure. *See id.*

Plaintiffs allege that Cotter's involvement with the materials ended in 1973, when Cotter shipped 10,000 tons of radioactive material to Colorado and mixed the remaining 8,700 tons of material "with contaminated soil and dumped them in the West Lake Landfill." *Id.* ¶ 50. Plaintiffs then allege that Cotter sought to terminate its source material license with the AEC on May 10, 1974, and that as part of that application Cotter certified that the Latty Avenue site was decontaminated to permissible levels. *Id.* ¶ 57. At Cotter's request, the AEC terminated the source material license on November 13, 1974. *Id.* ¶ 59.[1]

Based on the above, Plaintiffs conclude that Cotter's "acts and omissions at the Latty Avenue site" caused contamination of "the properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked)." *Id.* ¶ 52. This contamination, Plaintiffs

---

[1] Plaintiffs also make several allegations on information and belief, including: (a) various unattributed conduct at Latty Avenue (fence washing, disrepair of settling ponds and drying equipment); (b) Cotter's alleged knowledge in the "early 1970s" of a "harmful radiation survey at the Latty site in excess of decontamination guidelines"; (c) Cotter's alleged failure to submit this survey to the AEC; (d) Cotter's alleged failure to do any further remediation; and (e) that "Cotter's RWM remain on the Latty Avenue site to this day." *Id.* ¶¶ 48, 53, 58.

3

conclude, was "in excess of background levels." *Id.*; *see also id.* ¶¶ 10–11, 20–22, 40, 52, 62, 68, 76, 80, 126 (alleging contamination "above background").

II.     **Relevant Procedural Background.**

Plaintiffs filed this action in Missouri state court on January 25, 2022, purporting to raise a variety of state-law claims against Cotter, Commonwealth Edison ("ComEd"), DJR Holdings ("DJR"), and the St. Louis Airport Authority ("Airport"). Petition, ECF No. 1-1. Plaintiffs brought state claims in state court on the theory that the PAA did not apply to their case because there was no applicable license or indemnity agreement that would give rise to federal jurisdiction under the PAA. Am. Compl. ¶ 1.

Weeks before Plaintiffs filed their original petition, the Eighth Circuit had held in related litigation filed by the same plaintiffs' lawyers against Cotter (*Banks*, No. 4:20-cv-01227-JAR) that "the PAA provides federal question jurisdiction over all 'nuclear incidents,' regardless of whether the defendant had an applicable license or indemnity agreement." *In re Cotter*, 22 F.4th at 793 (citing 42 U.S.C. §§ 2210(n)(2), 2014(q)). Cotter thus removed this action to federal court. Notice of Removal, ECF No. 1. Cotter, ComEd, and DJR filed motions to dismiss. Mots. To Dismiss, ECF Nos. 12, 14, 22.

In April 2022, before briefing on the motions to dismiss, this case was stayed in light of the *Banks* plaintiffs' petition for writ of certiorari asking the United States Supreme Court to reverse the Eighth Circuit's PAA decision in *In re Cotter*. Am. Compl. ¶ 4. The parties agreed in their request to stay that "the central question is whether the Price-Anderson Act applies to this litigation." Joint Mot. For Stay of Proceedings, ECF No. 26, at 1. The Supreme Court denied the petition for writ of certiorari on November 14, 2022, leaving *In re Cotter* as controlling authority. Am. Compl. ¶ 5 (citing *Banks v. Cotter Corp.*, 143 S. Ct. 422 (2022)).

4

Plaintiffs filed their Amended Complaint on February 7, 2023. Acknowledging the binding effect of *In re Cotter* and the Supreme Court's denial of certiorari, Plaintiffs' Amended Complaint purports to raise a public liability claim under the PAA. Am. Compl. ¶¶ 92–101. However, Plaintiffs also purport to allege state-law "subpart" claims of negligence, negligence per se, strict liability, punitive damages, and civil conspiracy. *Id.* ¶¶ 102–147.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While a court draws all reasonable inferences in the plaintiff's favor, "the tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions." *Id.* Thus, a plaintiff's factual allegations must include more than "labels and conclusions" in order to "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, "'naked assertion[s]' devoid of 'further factual enhancement'" and "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Twombly*, 550 U.S. at 555.

# ARGUMENT

## I. Plaintiffs Fail to State a Public Liability Claim Under the PAA.

To state a public liability claim under the PAA, a plaintiff must allege that: (1) the defendant breached the levels permitted by the federal regulations in effect at the time, i.e., a breach of the federal standard of care; (2) the plaintiff was exposed to this radiation in excess of the normal background level of radiation in the environment; (3) the plaintiff has injuries; and (4) radiation was the cause of the plaintiff's injuries. *See In re TMI Litig.*, 67 F.3d 1103, 1119 (3d Cir. 1995), *cert. denied*, 516 U.S. 1154 (1996) ("*TMI II*"); *In re TMI Litig.*, 193 F.3d 613, 659 (3d Cir. 1999) ("*TMI III*") (agreeing with these elements); *McClurg I*, 933 F. Supp. 2d at 1187 (same); *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2017 WL 2929444, at *6 (E.D. Mo. July 7, 2017) ("*McClurg III*") (same). Plaintiffs have failed to allege the first two elements.

### A. Plaintiffs Fail to Plead That Cotter Breached the Federal Standard of Care.

As this Court has held, federal regulations at the time of Cotter's conduct defined the levels of radiation that would protect members of the public in an unrestricted area from excessive exposure and thus establish Cotter's standard of care. *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2015 WL 867455, at *7 (E.D. Mo. Feb. 27, 2015) ("*McClurg II*") ("an essential element of each Plaintiff's PAA public liability action is a breach of the 500 millirem per year dose limit"), *aff'd*, *Halbrook*, 888 F.3d at 971. But Plaintiffs fail to allege any facts showing that Cotter ever breached these levels of radiation permitted by federal regulations.

In applying the federal standard of care, this Court has explained that "every Circuit Court that has [decided the issue], the Third, Sixth, Seventh, Ninth, Tenth, and Eleventh, ha[s] concluded that the maximum permissible radiation dose levels set by federal safety standards establish the duty of care for radiation injuries, and that imposing a non-federal duty would

conflict with federal law." *McClurg I*, 933 F. Supp. 2d at 1187.  In other words, "[e]very federal circuit that has considered the appropriate standard of care under the PAA has concluded that [defendants] are not liable unless they breach federally-imposed dose limits." *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008) (collecting cases).

Specifically, Section 20.105 permitted releases of radiation so long as they were "not likely to cause any individual to receive a dose to the whole body in any period of one calendar year in excess of *0.5 rem [or 500 mrem]*." 10 C.F.R. § 20.105(a) (1960) (emphasis added).  Section 20.106 also permitted releases of specific radioactive materials to unrestricted areas so long as their concentrations did not exceed specific limits set for each radionuclide using a one-year average.  10 C.F.R. § 20.106 (1960).  But Plaintiffs allege no facts showing that they were ever exposed to radiation in excess of the specific dose permitted by 10 C.F.R. § 20.105 or specific radionuclides in excess of the levels permitted by 10 C.F.R. § 20.106.  *See McClurg I*, 933 F. Supp. 2d at 1187.

Indeed, Plaintiffs' Amended Complaint alleges no particular exposure level, location, time, or any other fact pertaining to Cotter's alleged breach of the federal standard owed to Plaintiffs.  Instead, Plaintiffs make a general allegation that "Cotter released radiation into unrestricted areas in the environment in excess of the levels permitted by federal regulations in effect at the time, including but not limited to, 10 C.F.R. §§ 20.105 and 20.106." Am. Compl. ¶ 52; *see also id.* ¶ 121 (listing eleven regulations in negligence *per se* "subpart" claim as potential violations "to the extent applicable").  That conclusory allegation does not commit to any standard of care allegedly owed to Plaintiffs by Cotter, let alone a breach of that standard, and is not sufficient to stave off dismissal.  *See Twombly*, 550 U.S. at 555 ("'naked assertion[s]' devoid of 'further factual enhancement'" and "formulaic recitation of the elements of a cause of

7

action will not do."); *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 772–73 (E.D. Tenn. 2012) (PAA claim dismissed for similar conclusory pleading of breach of PAA standard of care); *McClurg I*, 933 F. Supp. 2d at 1187 (PAA claim insufficient for similar conclusory pleading of PAA standard of care).[2]

Worse yet, Plaintiffs' Amended Complaint tries to misstate the federal standard of care. Plaintiffs allege that "exposures to radioactive wastes should be as low as is reasonably achievable." Am. Compl. ¶¶ 33, 103. That threadbare allegation not only misstates the federal standard as this Court has held, *McClurg II*, 2015 WL 867455, at *7, but courts across the nation have consistently held that an "as low as reasonably achievable" philosophy cannot define the legal standard of care under the PAA. *TMI II*, 67 F.3d at 1114 ("as low as reasonably achievable" is an "objective," not a judicially enforceable obligation); *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 807–08 (N.D. Ill. 1999); *Finestone v. Fla. Power & Light Co.*, 319 F. Supp. 2d 1347, 1349 (S.D. Fla. 2004), *aff'd*, 272 F. App'x 761, 768 (11th Cir. 2008); *Corcoran v. New York Power Auth.*, 935 F. Supp. 376, 386 (S.D.N.Y. 1996) (quoting *TMI II*, 67

---

[2] Plaintiffs' additional allegations of: (a) unidentified AEC "concerns"; (b) an unidentified AEC citation related to sample surveys; (c) St. Louis County Health Department and other unidentified third-party commentators' unidentified "concerns" and noted "violations"; and (d) unidentified "surveys" that were "harmful . . . in excess of decontamination guidelines" or that showed "licensable quantities of source material" at Latty Avenue in the 1970s, Am. Compl. ¶¶ 48, 58–61, do nothing to allege or raise an inference that Cotter released radiation in excess of the federal standard of care. *See Adkins*, 960 F. Supp. 2d at 772–73 ("Although plaintiffs make various conclusory claims of "violations" and "non-compliance," they "totally fail to provide any factual allegations which would support their allegation of the breach of an applicable federal safety standard."). Nor do Plaintiffs' allegations "on information and belief" of presumed conduct related to fence washing, maintenance of settling ponds and dryer equipment, and transmission of one of the aforementioned surveys, Am. Compl. ¶¶ 48, 58. *See Jones v. Douglas Cnty. Sheriff's Dep't*, 915 F.3d 498, 500 (8th Cir. 2019) ("threadbare allegations 'on information and belief' do not survive a motion to dismiss").

F.3d at 1117); *McLandrich v. S. California Edison Co.*, 942 F. Supp. 457, 467 (S.D. Cal. 1996) (citing *TMI II*, 67 F.3d at 1117).

Consequently, because Plaintiffs fail to state plausible, factual allegations that show Cotter ever breached the federal standard of care applicable under the PAA, Plaintiffs' Amended Complaint should be dismissed.

> **B. Plaintiffs Fail to Plead Exposure Above Background Levels to Excessive Radiation Released by Cotter.**

Even if Plaintiffs' public liability claim could somehow survive despite failing to show exposure above the federal limits (*Finestone*, 272 F. App'x at 768; *In re Hanford*, 534 F.3d at 1003; *McClurg I*, 933 F. Supp. 2d at 1187), dismissal is still warranted because Plaintiffs also fail to allege facts showing their exposure to excessive radiation released by Cotter in excess of background levels. *TMI III*, 193 F.3d at 659; *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 131 F. Supp. 3d 352, 365–66 (W.D. Pa. 2015), *aff'd*, 869 F.3d 246 (3d Cir. 2017).

Under the PAA, each plaintiff "must demonstrate that he or she was exposed to 'this radiation,' that is, the radiation released from the [defendant's] facility allegedly in excess of the federal permissible limits." *McMunn*, 131 F. Supp. 3d at 397 (citing *TMI III*, 193 F.3d at 659). And because radiation is a "constituent element" of our environment and everyone is exposed to natural and man-made radiation, the exposure element requires that each plaintiff show that he or she was exposed to excessive radiation released by the defendant's facility "to a greater extent than anyone else, i.e., that their exposure levels exceeded the normal background level." *TMI III*, 193 F.3d at 644, 659; *accord Butler v. Mallinckrodt LLC*, No. 4:18-CV-01701-AGF, 2022 WL 4598531, at *8 (E.D. Mo. Sept. 30, 2022) ((quoting *McMunn*, 869 F.3d at 277) (McKee, J., concurring)) (requiring exposure above background levels to excessive radiation from Cotter's

9

facility because "[w]e are exposed from numerous natural sources including the sun, or naturally occurring radioactive elements such as radon in the ground surrounding our homes.").

Despite Plaintiffs' many conclusions that they were exposed to radiation generally "above background," they do not allege any facts showing that they were specifically exposed to this excess radiation released *by Cotter's facility* above background levels. *See* Am. Compl. ¶¶ 10–11 (alleging that plaintiffs suffered exposure above background as a result of all defendants' "acts and omissions described in the Complaint"); ¶¶ 19–22, 80, 126 (same); ¶ 52 (alleging that Cotter released radiation that caused *properties* allegedly associated with Plaintiffs to be "contaminated with radioactive materials in excess of background levels"); ¶ 62 (alleging that Cotter and ComEd's actions and omissions caused properties allegedly associated with Plaintiffs to be contaminated above background).

For this reason, too, Plaintiffs' Amended Complaint fails to state a public liability claim against Cotter under the PAA and should be dismissed. *See McMunn*, 131 F. Supp. 3d at 397 (citing *TMI III*, 193 F.3d at 659) (plaintiffs must show exposure above background to radiation released by defendant's facility); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

II. **The PAA Preempts Plaintiffs' Purported State-Law "Subpart" Claims.**

   A. **The PAA Framework Determines the Outcome of this Entire Suit.**

Plaintiffs' purported state-law "subpart" claims also fail to state a claim against Cotter and should be dismissed with prejudice because this entire suit and all claims are exclusively under federal rather than state law. *Halbrook*, 888 F.3d at 977 n.3; *In re Cotter*, 22 F.4th at 793; *McClurg I*, 933 F. Supp. 2d at 1186. As the Supreme Court has held, the PAA creates "complete preemption" and its "pre-emptive force . . . is so extraordinary that it converts an ordinary state

10

common-law complaint into one stating *a federal claim*." *Neztsosie*, 526 U.S. at 484 n.6 (emphasis added).

Under its "unusual preemption provision," *id.* at 484, the PAA converts all claims into "a 'public liability action' and therefore the entire suit is deemed to be an action arising under federal law." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 194 (5th Cir. 2011) (citing 42 U.S.C. § 2014(hh)); *accord In re Cotter*, 22 F.4th at 793 (quoting *Halbrook*, 888 F.3d at 977) ("Congress created a federal cause of action"); *Matthews*, 15 F.4th at 721–22.  In creating this single federal cause of action under the PAA, Congress "ensured that all claims resulting from a given nuclear incident would be governed by the same law, [and] provided for the coordination of all phases of litigation and the orderly distribution of funds" in federal court.  *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 856–57 (3d Cir. 1991) ("*TMI I*"); *see also Halbrook*, 888 F.3d at 977 n.3.

Moreover, as part of a comprehensive federal regime, the PAA ensures that states are preempted from regulating the health and safety aspects of radiation.  *See, e.g.*, *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 205, 208, 212 (1983); *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1240–45 (10th Cir. 2004).  That regime of "pervasive federal regulation" occupies "the entire field of nuclear safety concerns." *TMI I*, 940 F.2d at 856–60.  And that federal regime avoids "put[ting] juries in charge of deciding the permissible levels of radiation exposure and, more generally, the adequacy of safety procedures at nuclear plants—issues that have explicitly been reserved to the federal government." *In re Hanford*, 534 F.3d at 1003 (internal quotations omitted).  In other words, applying state law here "would undermine the purpose of a comprehensive and exclusive federal scheme for nuclear incident liability."  *Id.* (internal quotations omitted).

### B. Plaintiffs' Entire Suit and All Claims Fall Under the PAA.

As this Court has held, Plaintiffs' claims therefore must be brought "under the PAA or not *at all*." *McClurg I*, 933 F. Supp. 2d at 1186 (citation omitted and emphasis added); *Matthews*, 15 F.4th at 721. And there can be no question that all of Plaintiffs' claims—arising out of Manhattan Project radioactive wastes generated in the processing of uranium ores in the St. Louis area that allegedly caused Plaintiffs' multiple myeloma—fall entirely within the PAA. Am. Compl. ¶¶ 1–91. Indeed, consistent with the Eighth Circuit and this Court's repeated holdings that these claims against Cotter "are claims under federal rather than state law[,]" *Halbrook*, 888 F.3d at 977 n.3; *In re Cotter*, 22 F.4th at 793; *McClurg I*, 933 F. Supp. 2d at 1186, Plaintiffs amended their complaint to assert a claim under the PAA. Am. Compl. ¶¶ 92–101.

Plaintiffs' purported state-law "subpart" claims thus fail as a matter of law and should be dismissed with prejudice. *McClurg I*, 933 F. Supp. 2d at 1186–87 (dismissing state-law claims); *Steward v. Honeywell Int'l, Inc.*, 469 F. Supp. 3d 872, 880 (S.D. Ill. 2020) (same); *Adkins*, 960 F. Supp. 2d at 772–73 (same) (collecting cases); *McMunn*, 131 F. Supp. 3d at 365–66, *aff'd*, 869 F.3d 246 (same).

### C. Plaintiffs' State-Law "Subpart" Claims Are Inconsistent with Their PAA Claim.

Dismissal is especially warranted when, as here, Plaintiffs' state-law "subpart" claims are preempted as inconsistent with their PAA claim. *See Neztsosie*, 526 U.S. at 484; 42 U.S.C. § 2014(hh) (preempting inconsistent state law under the PAA). In particular, Plaintiffs' state-law "subpart" claims—negligence, negligence *per se*, strict liability, punitive damages, and civil conspiracy—carry standards of care that conflict with the applicable federal standard of care as discussed above. *See* § I(A) above; *see also McClurg I*, 933 F. Supp. 2d at 1186–87; *Steward*,

469 F. Supp. 3d at 880; *Adkins*, 960 F. Supp. 2d at 772–73; *McMunn*, 131 F. Supp. 3d at 365–66, *aff'd*, 869 F.3d 246.

**Plaintiffs' "Subpart" Negligence Claim.**  An essential element of a negligence claim is a "legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks." *Brock v. Dunne*, 637 S.W.3d 22, 29 n.8 (Mo. 2021), *reh'g denied* (Feb. 8, 2022).  Here, Plaintiffs try to assert a number of duties/standards beyond the federal standard that they claim applies to Cotter, including: (a) "to ensure the safe and legal handling, storage, and disposal of the radioactive wastes in order to prevent significant bodily injury, sickness and disease"; (b) to handle radioactive wastes "with the utmost safety in mind" and with the goal of keeping exposures "as low as is reasonable achievable"; (c) to warn; and (d) to "comply with applicable state, federal, and local governmental laws, regulations, and guidelines applicable to persons processing, handling, storing, and/or disposing of hazardous, toxic, and radioactive waste materials." Am. Compl. ¶¶ 102–106.  Because these alleged duties/standards are inconsistent with the federal PAA standard of care, *see* § I(A) above, Plaintiffs' negligence "subpart" claim necessarily fails.

**Plaintiffs' "Subpart" Negligence Per Se Claim.**  For a negligence *per se* claim under Missouri law, a plaintiff need show only "[t]he violation of a statute, which is shown to be the proximate cause of the injury." *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. Ct. App. 2018).  The standard of care in a negligence *per se* action is determined by the statute whose violation plaintiffs allege—here, Missouri regulations for Protection Against Ionizing Radiation, the Missouri Clean Water Act, and eleven federal regulations "to the extent applicable."[3] *Id.*; Am. Compl. ¶¶ 117–121.  But these state-law duties are inconsistent with the

---

[3] Plaintiffs do not state which federal standards are "applicable."

13

federal PAA standard of care and are preempted.  *See, e.g.*, Mo. Code Regs. Ann. Tit. 19, §§ 20-10.070, 20-10.090 (referring to "maximum permissible dose" limits, broken down by body part, in Mo. Code Regs. Ann. Tit. 19, § 20-10.040); Mo. Ann. Stat. § 644.051 (separate standards for contaminants in water).  Therefore, dismissal of Plaintiffs' "subpart" negligence *per se* claim is required.

**Plaintiffs' "Subpart" Strict Liability Claim.**  Plaintiffs' strict liability "subpart" claim must be dismissed because, contrary to the federal PAA standard of care, in a Missouri strict liability claim, "the defendant may be found liable without regard to his knowledge or conduct." *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 107 (Mo. Ct. App. 2006); Am. Compl. ¶¶ 129–131 (alleging that defendants should be liable for "fail[ing] to eliminate the risk of harm caused by their handling, storing, and/or disposing of radioactive waste.").  Because this standard is also inconsistent with the federal PAA standard of care, Plaintiffs' "subpart" strict liability claim likewise fails as a matter of law.

**Plaintiffs' "Subpart" Civil Conspiracy Claim.**  Under Missouri law, the tort of civil conspiracy does not "exist in its own right."  *Williams v. Bayer Corp.*, 541 S.W.3d 594, 612 (Mo. Ct. App. 2017) (civil conspiracy is "an agreement . . . to do an unlawful act, or to use unlawful means to do an act which is lawful.") (quotation omitted).  Instead, a civil conspiracy claim "acts to hold the conspirators jointly and severally liable for the underlying act."  *Id.*  As such, "if the 'tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well.'"  *Id.* (quotation omitted).  Because Plaintiffs' civil conspiracy claim depends on their other state-law claims and duties that are inconsistent with the federal PAA standard of care, this claim, too, must be dismissed.  *See* Am. Compl. ¶ 146.

14

**Plaintiffs' "Subpart" Punitive Damages Claim.** Plaintiffs' "punitive damages" claim should be dismissed because, in Missouri, as under the PAA, punitive damages are a remedy rather than an independent claim. *Landum v. Livingston*, 394 S.W.2d 573, 578 (Mo. App. 1965) ("Punitive damages can not constitute an independent cause of action."); 42 U.S.C. § 2210(s).

At bottom, Plaintiffs' purported state-law "subpart" claims all should be dismissed with prejudice as inconsistent with their PAA claim. *See McClurg I*, 933 F. Supp. 2d at 1186–87 (dismissing state-law claims under PAA); *Matthews*, 15 F.4th at 721 (same); *Steward*, 469 F. Supp. 3d at 880 (same); *Adkins*, 960 F. Supp. 2d at 772–73 (same); *McMunn*, 131 F. Supp. 3d at 365–66, *aff'd*, 869 F.3d 246 (same).

## CONCLUSION

For these reasons, Cotter respectfully requests that the Court grant its motion to dismiss Plaintiffs' Amended Complaint.

Dated: March 3, 2023          Respectfully submitted,

*/s/ Brian O. Watson*
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
docketdept@rshc-law.com

Jennifer Steeve, #308082CA
RILEY SAFER HOLMES & CANCILA LLP
100 Spectrum Center Drive, Suite 440
Irvine, CA 92618
Phone: (949) 359-5515
Fax: (312) 471-8701
jsteeve@rshc-law.com

docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)**

## **CERTIFICATE OF SERVICE**

I certify that on March 3, 2023, these papers were filed through the CM/ECF system, which will automatically serve an electronic copy upon all counsel of record.

        Respectfully submitted,

        */s/ Brian O. Watson*
        Brian O. Watson, #68678MO