**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| NIKKI STEINER MAZZOCCHIO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COTTER CORPORATION et al.,<br><br>Defendants. | Case No. 4:22-cv-00292-MTS |

**DEFENDANT COMMONWEALTH EDISON COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

Riley Safer Holmes & Cancila LLP
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
docketdept@rshc-law.com

Riley Safer Holmes & Cancila LLP
Jennifer Steeve, #308082CA
100 Spectrum Center Drive, Suite 440
Irvine, CA 92618
(949) 359-5515 (main)
(312) 471-8701 (fax)
jsteeve@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT
COMMONWEALTH EDISON COMPANY**

## **INTRODUCTION**

Plaintiffs' First Amended and Supplemental Complaint ("Amended Complaint") fails to state a claim against Commonwealth Edison Company ("ComEd") for two incurable reasons.

*First*, Plaintiffs fail to sufficiently allege their public liability claim under the Price-Anderson Act ("PAA"), 42 U.S.C. §§ 2210, *et seq.* To state a public liability claim, Plaintiffs must allege, among other things, that (a) ComEd breached the levels of radiation permitted by federal regulations in effect at the time of its alleged conduct (i.e., a breach of the federal standard of care); and (b) Plaintiffs were exposed to this radiation released by ComEd in excess of background levels. Because Plaintiffs allege no such breach or exposure—in fact, because they allege *no conduct by ComEd whatsoever* with the sites or material at issue—their public liability claim under the PAA should be dismissed.

Plaintiffs' Amended Complaint not only fails to allege any conduct by ComEd, but it also violates the clearly established principle that ComEd cannot be held not liable for the acts of a subsidiary. The only allegations that Plaintiffs make against ComEd—that it bought Defendant Cotter Corporation (N.S.L.) ("Cotter") in 1974 and that it "knew about" alleged contamination associated with Cotter's operations—falls far short of stating any claim against ComEd. Plaintiffs' allegations amount to an attempt to hold ComEd liable as an "alter ego" of its former subsidiary Cotter, which is contrary to federal law.

*Second*, Plaintiffs' purported state-law "subpart" claims fail because this entire suit and all claims are exclusively under federal rather than state law. *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 977 n.3 (8th Cir. 2018); *In re Cotter Corp. (N.S.L.)*, 22 F.4th 788, 793 (8th Cir. 2022); *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013) ("*McClurg I*"). As explained by this Court's prior decisions and Cotter's Memorandum in Support of its Motion to Dismiss, which ComEd joins and incorporates, Plaintiffs' purported state-law

1

"subpart" claims should be dismissed with prejudice because Plaintiffs "can sue under the PAA *or not at all*." *McClurg I*, 933 F. Supp. 2d at 1186 (citation omitted and emphasis added), *aff'd*, *Halbrook*, 888 F.3d at 971; *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 721 (6th Cir. 2021) ("for claims arising from a nuclear incident, a plaintiff 'can sue under the Price-Anderson Act, as amended, or not at all.'") (collecting cases).

## BACKGROUND

**I.    Relevant Factual Allegations.**

This lawsuit is one of several arising from alleged contamination by "radioactive waste materials" that were used and/or stored at various sites around St. Louis County over an 80-year period beginning in the 1940s. *See* Am. Compl. ¶¶ 17–19. Plaintiffs Mazzocchio and Krause allege that in early 2018 they developed multiple myeloma after they were exposed to radiation allegedly exceeding "background" levels. *Id.* ¶¶ 10–11. Plaintiffs allege that they were exposed while they lived near Coldwater Creek, which flows near two sites that stored "radioactive waste materials": one located near the Lambert Airport ("SLAPS"), and another located on Latty Avenue in Hazelwood, Missouri ("Latty site"). *Id.* ¶¶ 34–43. Plaintiffs allege that "as a result of Defendants [sic] acts and omissions at the SLAPS and Latty sites, Coldwater Creek is contaminated with hazardous, toxic and radioactive materials." *Id.* ¶ 70.

According to Plaintiffs, Defendants Cotter, DJR Holdings, Inc., and the St. Louis Airport Authority either owned the sites at issue (DJR Holdings, St. Louis Airport), handled the radioactive materials (DJR Holdings, Cotter), or both (DJR Holdings). *Id.* ¶¶ 37–39, 44–50, 63–67. Plaintiffs allege that Cotter handled the radioactive material between 1969 and 1973. *Id.* ¶¶ 44–50. ComEd, however, did none of these things.

As to ComEd, Plaintiffs allege only:

1. That ComEd bought Cotter in 1974, *after* Cotter's last use of the materials in 1973, and owned Cotter as a subsidiary from 1974 to 2000. *Id.* ¶¶ 13–14, 44–40, 55.[1]

2. That, on information and belief, ComEd knew about the radioactive materials at the Latty site before buying Cotter, and that ComEd "knew or should have known substantial waste was in Coldwater Creek as a result of Cotter's operations[.]" *Id.* ¶ 14(B).

3. That an unidentified 1977 communication from the Nuclear Regulatory Commission to Cotter related to "surveys at the Latty Site show[ing] that the site still contained licensable quantities of source material" also went to ComEd. *Id.* ¶ 61; and

4. That a ComEd employee became president of Cotter as of May 1974. *Id.* ¶ 56.

These allegations make clear that Plaintiffs purport to attach liability to ComEd not for its conduct but for activities that were allegedly conducted by Cotter, a separate and distinct entity. *See, e.g., id.* ¶¶ 13–14.

Plaintiffs do not allege that ComEd ever owned or operated the sites; owned or transferred ownership of the material; released any material into the environment; disposed of any material; transacted any business or entered any contracts in Missouri as to the sites or material; visited the sites or material; issued any public notices or communications about the sites or material; cleaned, removed, or otherwise remediated allegedly contaminated property at the sites or material; or entered into any agreements, consent decrees, or other arrangements with any governments—local, state, or federal—related to the sites or material. In short, ComEd has nothing to do with this case.

---

[1] Plaintiffs also allege that as part of the purchase ComEd agreed to indemnify Cotter for certain liabilities, but that it no longer has any indemnification obligation. *Id.* ¶ 14.

3

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

While a court draws all reasonable inferences in the plaintiff's favor, "the tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions." *Id*. Thus, a plaintiff's factual allegations must include more than "labels and conclusions" in order to "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, "'naked assertion[s]' devoid of 'further factual enhancement'" and "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Twombly*, 550 U.S. at 555.

**ARGUMENT**

I.  **Plaintiffs Do Not State a Public Liability Claim under the PAA.**

To state a public liability claim under the PAA, a plaintiff must allege that: (1) the defendant breached the levels permitted by the federal regulations in effect at the time, *i.e.*, a breach of the federal standard of care; (2) the plaintiff was exposed to this radiation in excess of the normal background level of radiation in the environment; (3) the plaintiff has injuries; and (4) radiation was the cause of the plaintiff's injuries. *See In re TMI Litig.*, 67 F.3d 1103, 1119

4

(3d Cir. 1995), *cert. denied*, 516 U.S. 1154 (1996) ("*TMI II*"); *In re TMI Litig.*, 193 F.3d 613, 659 (3d Cir. 1999) ("*TMI III*") (agreeing with these elements); *McClurg I*, 933 F. Supp. 2d at 1187 (same); *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2017 WL 2929444, at *6 (E.D. Mo. July 7, 2017) ("*McClurg III*") (same). Plaintiffs have failed to allege the first two elements against ComEd.

### A. Plaintiffs Do Not Plead That ComEd Breached the Federal Standard of Care.

#### 1. The Federal Standard of Care Applies to Plaintiffs' PAA Claim.[2]

As this Court has held, federal regulations at the time of the alleged conduct define the levels of radiation that would protect members of the public in an unrestricted area from excessive exposure, and thus establish the standard of care. *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2015 WL 867455, at *7 (E.D. Mo. Feb. 27, 2015) ("*McClurg II*") ("an essential element of each Plaintiff's PAA public liability action is a breach of the 500 millirem per year dose limit"), *aff'd*, *Halbrook*, 888 F.3d at 971.

"[E]very Circuit Court that has [decided this issue], the Third, Sixth, Seventh, Ninth, Tenth, and Eleventh, ha[s] concluded that the maximum permissible radiation dose levels set by federal safety standards establish the duty of care for radiation injuries, and that imposing a non-federal duty would conflict with federal law." *McClurg I*, 933 F. Supp. 2d at 1187. In other words, "[e]very federal circuit that has considered the appropriate standard of care under the PAA has concluded that [defendants] are not liable *unless they breach federally-imposed dose limits.*" *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008) (emphasis added and collecting cases).

---

[2] In the interest of avoiding duplication between ComEd's brief and Cotter's, ComEd has streamlined Sections I(A)(1) and I(B). For more fulsome arguments, ComEd directs the Court to Sections I(A) and I(B) of Cotter's brief, which ComEd incorporates.

5

## 2. The Federal Standard of Care Applies to ComEd.

Plaintiffs seek to circumvent the federal standard of care by alleging that because ComEd was not licensed by the Atomic Energy Commission, ComEd is subject to state law standards. *See* Am. Compl. ¶¶ 85–89; *see also id.* ¶¶ 102–106, 117–121, 129–131 (presenting at least four separate state standards of care to which Plaintiffs seek to hold ComEd for the same alleged conduct). But the PAA applies a federal standard, regardless of whether a defendant had a license. *See In re Cotter*, 22 F.4th at 79; *see also Halbrook*, 888 F.3d at 977 n.3.

Plaintiffs' theory contradicts the PAA and the conclusions reached by this Court, as well as every Federal Court of Appeals to have considered the PAA standard of care. *See, e.g.*, *McClurg I*, 933 F. Supp. 2d at 1187 ("imposing a non-federal duty would conflict with federal law"); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d at 1003 (applying a state standard of care "would undermine the purpose of a comprehensive and exclusive federal scheme for nuclear incident liability"); *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 856–57 (3d Cir. 1991) ("*TMI I*") ("Under the terms of the Amendments Act, the 'public liability action' encompasses '*any* legal liability' of any 'person who *may* be liable' on account of a nuclear incident."); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994) ("[S]tates are preempted from imposing a non-federal duty in tort because any state duty would infringe upon pervasive federal safety regulations in the field of nuclear safety, and thus would conflict with federal law."); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) ("'[F]ederal regulations must provide the sole measure of the defendants' duty in a public liability cause of action. This is because any state duty would infringe upon pervasive federal

6

regulation in the field of nuclear safety, and thus would conflict with federal law."); *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 772–73 (E.D. Tenn. 2012) (same, and collecting cases).

Moreover, Plaintiffs' exact argument has been rejected by at least one district court. *McGlone v. Centrus Energy Corp.*, No. 2:19-cv-02196, 2020 WL 4431482, at *4 (S.D. Ohio July 31, 2020). In *McGlone*, plaintiffs argued that federal regulatory limits governing radioactive exposure did not apply to several defendants sued under the PAA because those defendants were not "licensees" under the federal regulations. *Id.* at *4 ("Plaintiffs maintain that these Defendants can be held strictly liable under Ohio law for their radiation emissions"). In considering this argument, the court noted that the plaintiffs could "supply no case law suggesting that non-licensees in a Price-Anderson Act suit are held to a different standard than licensees." *Id.* The court held that there was "no basis to hold defendants to a more onerous standard than what" federal regulations require. *Id.*; *see also Lassair v. New Orleans City*, CV 19-11377, 2020 WL 777291, at *5 (E.D. La. Feb. 18, 2020) (applying federal standard of care to non-licensee defendants because "federal law completely occupies the field of nuclear safety" and plaintiffs failed to rebut caselaw that "federal regulations must provide the sole measure of the defendants' duty in a public liability cause of action" (quoting *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1101 (7th Cir. 1994)).

Because the PAA requires application of a federal standard of care regardless of license, the federal standard of care applies to ComEd.

### 3. Plaintiffs Fail to Allege That ComEd Breached the Standard of Care or Did Any Conduct at All Related to the Sites or Material.

Plaintiffs' allegations do nothing to show that ComEd ever breached any federal standard of care owed to Plaintiffs. *See McClurg I*, 933 F. Supp. 2d at 1187. Plaintiffs make no allegations showing any conduct by ComEd at the sites or materials at issue or any activity

7

alleged to have caused any release of radiation.  The reason for this is simple: *ComEd was not involved at the sites or with the material*.[3]

Plaintiffs do not allege that ComEd ever owned or operated the sites, or owned, transferred ownership of, handled, disposed of, or released into the environment any radioactive material.  Plaintiffs do not allege that ComEd transacted any business related to the sites or material, or that ComEd was involved in any cleanup, remediation, or public relations communications related to the site or the material.  *See generally* Am. Compl.  Plaintiffs' efforts to lump ComEd into the actions of Cotter and, more generically, "Defendants," do not show any conduct on the part of ComEd.  *See United States v. Bestfoods*, 524 U.S. 51, 65 (1998) (a "parent [company] is directly liable for *its own* actions" (emphasis added)); *see also Tatone v. SunTrust Mortg., Inc.*, 857 F.Supp.2d 821, 831–32 (D. Minn. 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief"); *Boggs v. Am. Optical Co.*, No. 4:14–CV–1434–CEJ, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015) (dismissing complaint for "shotgun" or "kitchen sink" pleading).

In fact, ComEd did not purchase Cotter until *after* Cotter ceased handling the radioactive material at the Latty site, Am. Compl. ¶¶ 13–14, 44–50, 55, so ComEd could not have caused any release of material into the environment.  *See Bestfoods*, 524 U.S. at 68–69 ("the question [of direct liability] is not whether the parent operates the subsidiary, but rather whether it operates the [polluting] facility.").  Even accepting Plaintiffs' allegation on "information and belief" that ComEd knew about the contamination before purchasing Cotter, Am. Compl. ¶ 14(B),

---

[3] For the reasons in Sections I(A)(1) and (2), the federal standard of care applies to ComEd.  Because Plaintiffs do not and cannot allege that ComEd ever released radioactive materials into the environment, however, Plaintiffs fail to and cannot allege breach even under state-law standards of care.

knowledge of Cotter's past actions does not establish any federal standard of care allegedly owed to Plaintiffs by ComEd, or any alleged breach of that standard by ComEd. *See TMI II*, 67 F.3d at 1119; *TMI III*, 193 F.3d at 659; *McClurg I*, 933 F. Supp. 2d at 1187; *McClurg III*, 2017 WL 2929444, at *6.

Nor are Plaintiffs' generalized allegations that "Defendants" released unspecified amounts of radiation sufficient to show any release by *ComEd*. *See* Am. Compl. ¶¶ 81–84, 121; *see also Twombly*, 550 U.S. at 555 ("'naked assertion[s]' devoid of 'further factual enhancement'" and "formulaic recitation of the elements of a cause of action will not do."); *Adkins*, 960 F. Supp. 2d at 772–73 (PAA claim dismissed for conclusory pleading of PAA standard of care); *McClurg I*, 933 F. Supp. 2d at 1187 (PAA claim insufficient for conclusory pleading of PAA standard of care); *Tatone*, 857 F.Supp.2d at 831–32 (dismissing complaint for "shotgun pleading"); *Boggs*, 2015 WL 300509, at *2 (same). Plaintiffs have therefore failed to meet the first element of their PAA claim against ComEd.

### 4. Plaintiffs Cannot Maintain a PAA Claim Against ComEd as the "Alter Ego" of Cotter.

To the extent that Plaintiffs assert that ComEd should be held liable for conduct attributable to Cotter because of its status as Cotter's parent company from 1974 to 2000, the Court should reject that theory. As an initial matter, ComEd became a parent company of Cotter in 1974, after Cotter's alleged conduct between 1969 and 1973. Thus, there is no conduct for which ComEd could be held vicariously liable.

Moreover, "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61. Indeed, "it is hornbook law that the exercise of the 'control' which stock ownership gives to

9

the stockholders . . . will not create liability beyond the assets of the subsidiary." *Id.* at 61–62 (internal quotation marks omitted).

To pierce the corporate veil between ComEd and Cotter, Plaintiffs would have to allege (1) that there was "such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct," and (2) "adherence to the corporate fiction [would] sanction a fraud, promote injustice, or lead to an evasion of legal obligations." *N.L.R.B. v. Bolivar-Tees, Inc.*, 551 F.3d 722, 728 (8th Cir. 2008).[4]  Plaintiffs cannot do so through threadbare allegations and legal conclusions.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Twombly*, 550 U.S. at 555.

Plaintiffs' allegations do nothing to show that ComEd and Cotter disrespected the corporate form to such an extent that the corporations became "indistinct."  Legal conclusions aside, Plaintiffs' allegations simply describe aspects of a normal parent-subsidiary relationship. *See* Am. Compl. ¶¶ 13–14, 56, 61.  For example, that Cotter and ComEd shared an employee, George Rifakes, is of no moment, as "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *Bestfoods*, 524 U.S. at 69 ("it is 'normal' for a parent and subsidiary to 'have identical directors and officers'") (quotation omitted).  Dual employees are entitled to a presumption that, when acting for a subsidiary, they "are wearing their 'subsidiary hats.'" *Id.* (quotation omitted).  Plaintiffs allege nothing to

---

[4] The Supreme Court has noted "significant disagreement among courts and commentators over whether" to apply state or federal law in federal question cases. *Bestfoods*, 524 U.S. at 64 n.9 (CERCLA context).  The Eighth Circuit follows a federal standard for piercing the corporate veil in federal question cases.  *N.L.R.B.*, 551 F.3d at 728.

10

overcome the presumption that Mr. Rifakes acted properly in the interests of Cotter while wearing his "subsidiary hat." *See* Am. Compl. ¶ 56.  And even if ComEd knew or should have known, as Plaintiffs allege, about Cotter's conduct with respect to the Latty site and radioactive materials, that allegation does not give rise to liability.  *See id.* ¶¶ 14, 61; *see also Bestfoods*, 524 U.S. at 70 (more than knowledge, "it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the facility"); *Goellner-Grant v. Platinum Equity LLC*, 341 F. Supp. 3d 1022, 1029–30 (E.D. Mo. 2018) (more than knowledge, "macro-management" of subsidiary's business strategy by parent was insufficient to pierce corporate veil); *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 376 (Mo. Ct. App. 2014) (more than knowledge, "identity of shareholders, directors, or officers between two corporations is insufficient to find an identity of interests between the two entities to pierce the corporate veil.").

Worse yet, Plaintiffs are not the first to attempt to pierce the corporate veil between Cotter and ComEd, and the Tenth Circuit has already held as a matter of law that piercing the corporate veil of Cotter to reach ComEd was not warranted.  *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995).  In *Boughton*, as here, the plaintiffs claimed damage allegedly arising from exposure to radioactive materials.  *Id.* at 825.  As here, the plaintiffs in *Boughton* sought damages from the purported actions of Cotter and sought to pierce the corporate veil to also reach ComEd.  *Id.* at 825, 835.  However, because Cotter existed independently for years before it was bought by ComEd and the companies scrupulously observed corporate formalities (among other reasons), the Tenth Circuit refused to pierce the corporate veil to reach ComEd.  *Id.* at 837–38.  The Tenth Circuit declined to pierce the corporate veil even though ComEd wholly owned Cotter, the two companies had interlocking boards, Cotter's primary business in Colorado was with ComEd, and the corporate books referred to Cotter as a subsidiary of ComEd.  *Id.*

11

The same factors that weighed against piercing the veil in *Boughton* weigh against piercing the veil here. Plaintiffs allege no facts that justify piercing the corporate veil to hold ComEd responsible for Cotter's conduct. Therefore, because none of the allegations related to Cotter's conduct can support the assertion of a public liability claim under the PAA against ComEd and because Plaintiffs fail to state plausible, factual allegations that show ComEd ever owed or breached any federal standard of care to Plaintiffs, Plaintiffs' Amended Complaint should be dismissed.

> **B.     Plaintiffs Fail to Plead Exposure Above Background Levels to Excessive Radiation Released by ComEd.**

Not only does Plaintiffs' PAA claim fail to allege any conduct by ComEd such that ComEd ever owed or breached any federal standard of care (*Finestone*, 272 F. App'x at 768; *In re Hanford*, 534 F.3d at 1003; *McClurg I*, 933 F. Supp. 2d at 1187), but it also fails to allege any facts showing that Plaintiffs were exposed to excessive radiation *released by ComEd* above background levels. *TMI III*, 193 F.3d at 659; *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 131 F. Supp. 3d 352, 365–66 (W.D. Pa. 2015), *aff'd*, 869 F.3d 246 (3d Cir. 2017). The only relevant allegations are against Cotter and the other Defendants, and ComEd did not even own Cotter at the time of any alleged release. *See* Am. Compl. ¶¶ 10–11 (alleging that plaintiffs suffered exposure above background as a result of all defendants' "acts and omissions described in the Complaint"); ¶¶ 19–22, 80, 126 (same); ¶ 62 (alleging that Cotter and ComEd's actions and omissions caused properties allegedly associated with Plaintiffs to be contaminated above background); *see also McMunn*, 131 F. Supp. 3d at 397 (citing *TMI III*, 193 F.3d at 659) (plaintiffs must show exposure above background to radiation released by defendant's facility); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

For this reason, too, Plaintiff's Amended Complaint fails to state a public liability claim against ComEd under the PAA and should be dismissed.

## II.     The PAA Preempts Plaintiffs' Purported State-Law "Subpart" Claims.

ComEd joins and incorporates Section II of Cotter's Motion to Dismiss with respect to Plaintiffs' purported state-law "subpart" claims.[5]  As Cotter's motion explains, each of these purported claims should be dismissed with prejudice as inconsistent with Plaintiffs' PAA claim. *See McClurg I*, 933 F. Supp. 2d at 1186–87 (dismissing state-law claims under PAA); *Matthews*, 15 F.4th at 728 (same); *Steward*, 469 F. Supp. 3d at 880 (same); *Adkins*, 960 F. Supp. 2d at 772–73 (same); *McMunn*, 131 F. Supp. 3d at 365–66, *aff'd*, 869 F.3d 246 (same).[6]

## CONCLUSION

For these reasons, ComEd respectfully requests that the Court grant its motion to dismiss Plaintiffs' Amended Complaint.

---

[5] Because Plaintiffs allege nothing against ComEd to show any legal duty or standard of care owed to Plaintiffs by ComEd, or any breach of that legal duty or standard by ComEd, Plaintiffs fail to, and cannot, allege any purported "sub-part" claim even under state law.

[6] ComEd understands that Plaintiffs allege their state-law claims as purported "subparts" of their PAA claim and that the PAA includes a nationwide service provision, creating nationwide personal jurisdiction.  42 U.S.C. § 2210(n)(2); *In re Federal Fountain, Inc.*, 165 F.3d 600, 601–02 (8th Cir. 1999).  Should Plaintiffs seek at any point to argue that they are entitled to pursue state-law claims against ComEd, those claims would fail for lack of personal jurisdiction as previously raised by ComEd.  ECF Nos. 14–15.  ComEd therefore preserves the right to raise any jurisdictional defense, including lack of personal jurisdiction, if Plaintiffs seek to assert any state-law claim against ComEd.  *Id.*

13

| | |
|---|---|
| Dated: March 3, 2023 | Respectfully submitted, |

/s/ Brian O. Watson
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
docketdept@rshc-law.com

Jennifer Steeve, #308082CA
RILEY SAFER HOLMES & CANCILA LLP
100 Spectrum Center Drive, Suite 440
Irvine, CA 92618
Phone: (949) 359-5515
Fax: (312) 471-8701
jsteeve@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT
COMMONWEALTH EDISON COMPANY**

## CERTIFICATE OF SERVICE

I certify that on March 3, 2023, these papers were filed through the CM/ECF system, which will automatically serve an electronic copy upon all counsel of record.

        Respectfully submitted,

        */s/ Brian O. Watson*
        Brian O. Watson, #68678MO