## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

NIKKI STEINER MAZZOCCHIO, *et al.*,   )
                                    )
        Plaintiffs,               )
                                    )     No. 4:22-cv-00292-MTS
        v.                    )
                                    )
COTTER CORPORATION, *et al.*,    )
                                    )
        Defendants.          )

### PLAINTIFFS' RESPONSE IN OPPOSITION TO
### DEFENDANT COTTER CORPORATION'S MOTION TO DISMISS

COME NOW Plaintiffs Nikki Steiner Mazzocchio and Angela Steiner Kraus, by and through their undersigned counsel, and for their Response in Opposition to Defendant Cotter Corporation's Motion to Dismiss and Memorandum in Support (ECF 58-59), state as follows:

### INTRODUCTION

Despite Cotter's repeated assertion that a federal Price Anderson Act ("PAA") standard of care preempts state law standards of care in a "public liability action", it is telling that Cotter has not cited any language from the PAA which includes or even references a federal standard of care. The "unusual" preemption provision of the PAA found in 42 U.S.C. § 2014(hh) affords a federal forum when a "nuclear incident" is asserted and provides a modest form of conflict preemption once the case is underway. Based on the plain language of the PAA, normal state law principles continue to govern unless they conflict with the rules found in 42 U.S.C. § 2210. *See Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1095 (10th Cir. 2015) ("*Cook II*"). Cotter fails to point to any provision of Section 2210 that conflicts with Missouri tort standards of care, and its Motion to Dismiss should be denied.

Assuming *arguendo* that the plain language of the PAA is not controlling, and this Court

1

finds that federal regulations preempt state tort standards of care in a "public liability action", Plaintiffs have sufficiently alleged facts to demonstrate that it is plausible Cotter violated federal regulations. Plaintiffs have alleged that Cotter negligently handled radioactive waste materials causing the release of radiation in excess of federal dose standards, that Plaintiffs were exposed to this radiation in excess of normal background, and that Plaintiffs injuries were caused by this exposure. Even Courts that have determined federal regulations establish the standard of care in a "public liability action" have found this is sufficient to deny a Motion to Dismiss. *See McClurg v. Mallinckrodt, Inc*., No. 4:12-CV-00361-AGF, 2017 WL 2929444, at *1 (E.D. Mo. July 7, 2017).

## PROCEDURAL HISTORY

Plaintiffs filed this action in Missouri state court on January 25, 2022, alleging state law causes of action pursuant to Missouri law. Cotter removed to federal court based on a recent decision from the Eighth Circuit which determined that based on plain language "the PAA provides federal court jurisdiction over all 'nuclear incidents,' regardless of whether the defendant had an applicable license or indemnity agreement." *In re Cotter Corp*., (N.S.L.), 22 F.4th 788, 793 (8th Cir.), cert. denied sub nom. *Banks v. Cotter Corp*., 214 L. Ed. 2d 233, 143 S. Ct. 422 (2022)

In April 2022, this matter was stayed pending the United States Supreme Court's decision on whether to grant a Petition for Writ of Certiorari and review the Eight Circuit's decision. Following the Supreme Court's denial of the Writ Petition, and given the Eight Circuit's decision, Plaintiffs filed the Amended Complaint which is the subject of this Motion to Dismiss to affirmatively allege a "public liability action" arising from "nuclear incident."

## LEGAL AUTHORITY

"There is a strong presumption against dismissing an action for failure to state a claim." *Whitehorn v. F.C.C*., 235 F.Supp.2d 1092, 1096 (D. Nev. 2002), *aff'd* 63 Fed.Appx. 346 (9th Cir.

2003), *cert. denied* 541 U.S. 1031, *reh'g denied* 542 U.S. 956 (2004). A complaint will survive a motion to dismiss for failure to state a claim if it "allege[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Omega Genesis Corp. v. Mayo Found. For Med. Educ. & Research*, 851 F.3d 800, 804 (8th Cir. 2017), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, claims filed within the federal courts are governed by Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Again, for a claim to survive a Rule 12(b)(6) motion to dismiss, the claim must sufficiently "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## ARGUMENT AND ANALYSIS

I. **Federal Regulations Do No Preempt State Tort Standards of Care in a "Public Liability Action"**

Based on the plain language of the PAA, state tort standards of care are preempted in a "public liability action" only if they are inconsistent with a provision in 42 U.S.C. §2210. Section 2210 contains no federal regulations, or even a reference to federal regulations, that could provide the standard of care in a "public liability action" or that conflict with or preempt the standard of care under Missouri tort law.

A. **General Principles and Types of Federal Preemption**

The Supreme Court has repeatedly explained that in determining whether (and to what extent) federal law preempts state law, the purpose of Congress is the "ultimate touchstone" of its statutory analysis. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). The Court has further instructed that Congress's intent is discerned "primarily" from a statute's text. *Medtronic, Inc. v. Lohr*, 518 U.S.

470, 486 (1996) (internal quotation marks and citation omitted). In evaluating congressional purpose, the Court has at times employed a canon of construction commonly referred to as the "presumption against preemption," which instructs that federal law should not be read to preempt state law "unless that was the clear and manifest purpose of Congress." *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

The preemption of state laws represents "a serious intrusion into state sovereignty." *Medtronic*, 518 U. S. at 488. "Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law; a litigant must point specifically to 'a constitutional text or a federal statute' that does the displacing or conflicts with state law." *Virginia Uranium, Inc. v. Warren*, 204 L. Ed. 2d 377, 139 S. Ct. 1894, 1901 (2019). "[T]o order preemption based not on the strength of a clear congressional command, or even on the strength of a judicial gloss requiring that much of us, but based only on a doubtful *extension* of a questionable judicial gloss would represent not only a significant federal intrusion into state sovereignty. It would also represent a significant judicial intrusion into Congress's authority to delimit the preemptive effect of its laws." *Id.* at 1904–05.

There are two basic types of preemption. There is express preemption, when a federal statute or regulation contains express preemptive language, and there is implied preemption, when a federal law's structure and purpose implicitly reflect Congress' preemptive intent. *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)). There are two types of implied preemption. There is field preemption, when a pervasive scheme of federal regulation implicitly precludes supplementary state regulation, and there is conflict preemption, when simultaneous compliance with both federal and state regulation is impossible (impossibility preemption) or when state law imposes an obstacle to the full purposes

4

and objectives of Congress (obstacle preemption). *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984).

B.     **The Price Anderson Act Does Not Expressly Preempt State Law Standards of Care**

1.     **The Plain Language of the PAA Incorporates State Law Standards of Care Unless Inconsistent with a Provision of 42 U.S.C. § 2210**

With respect to preemption, the PAA provides that "[a] public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules of decision in such action shall be derived from the law of State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of ***such section***" 42 U.S.C. § 2014(hh) (emphasis added). Critically, the plain language dictates that state law governs unless inconsistent with Section 2210 only.

According to the U.S. Supreme Court, this "unusual" preemption provision "resembles" "complete preemption" and transforms any public liability action arising out of or resulting from a nuclear incident into a federal action and gives a district court original jurisdiction over such a claim. *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 (1999). In analyzing this preemption provision, the Supreme Court reasoned that "Congress expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price–Anderson claim on the merits and for determining whether a claim falls under Price–Anderson when removal is contested." *Id.* at 473.

Taking it a step further, Cotter asserts that *Neztsosie* also determined that federal regulations preempt state law standards of care. Contrary to Cotter's blatant misrepresentation, *Neztsosie* does not determine that "federal standards must control".[1] According to *Neztsosie*, a

---

[1] *See* Cotter MIS of MTD at page 1.

federal "public liability action" is "one decided under substantive state-law rules of decision that do not conflict with the Price-Anderson Act." *Neztsosie*, 526 U.S. at 473.  As stated by now Supreme Court Justice Gorsuch, the PAA "merely affords a federal forum when a nuclear incident is 'assert[ed]' and provides a modest form of conflict preemption once the case is underway: ***normal state law principles continue to govern unless they conflict with the rules found in § 2210***." "*Cook II*", 790 F.3d at 1095 (emphasis added).

Another case relied on by Cotter acknowledges the "jurisdictional nature" of the PAA's preemption provision and determined that "[b]y incorporating state law into the federal action, the Act does not entirely displace state law, making the Act unlike other instances of complete preemption." *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 721 (6th Cir. 2021). "The Act instead allows for a federal Price-Anderson claim, with state law providing the 'substantive rules for decision' 'unless such law is inconsistent' with 42 U.S.C. § 2210, which provides for indemnification and limitation of liability for federal licensees of nuclear power plants." *Id*. at 721.

Consistent with the unusual preemption provision in § 2014(hh), Plaintiffs filed the Amended Complaint at issue here in federal court as a "public liability action" incorporating state-law standards of care.[2] As such, the issue is not whether independent state law causes of action are preempted,[3] the issue is what the standard of liability is for a "public liability action". Based on the plain language of the PAA, a "public liability action" incorporates state law standards of care unless they are inconsistent with a provision of 42 U.S.C. § 2210.

If Congress intended the Atomic Energy Act or federal regulations to preempt state law

---

[2] See Amended Complaint ¶ 101. ("Under the umbrella of Plaintiffs' 'public liability action', Plaintiffs assert the following causes of action").
[3] Plaintiffs only plead subparts (A)-(C) as independent state law causes of action if there has been no nuclear incident. *See* Amended Complaint footnote 2 at page 19. Cotter has conceded that a nuclear incident has been plead. As such, subparts (A)-(C) only constitute the theories of liability under Plaintiffs' "public liability action".

standards of liability in a "public liability action", it would have stated that substantive rules are derived from state law unless inconsistent with the provisions of "this chapter" or "federal regulations." However, the language chosen was "inconsistent with the provisions of [section 2210]." 42 U.S.C. § 2014(hh). "In this, as in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write." *Virginia Uranium, Inc.*, 139 S. Ct. at 1900. The PAA clearly stakes out the boundaries of the preempted field in a "public liability action", i.e., laws that are inconsistent with a provision of 42 U.S.C. § 2210. This Court has no license to expand those boundaries.

### 2. State Law Standards of Care are Consistent with 42 U.S.C. § 2210, Which Contains No Standards of Care

Critically, Cotter does not point to a single provision of § 2210 which conflicts with state law standards of care. This is so because § 2210 primarily addresses the indemnification and limitation of liability components of the PAA ,and contains no federal safety standards that could provide the standard of care in a PAA action. In other words, there is no such thing as a "federal PAA standard of care" as Cotter claims. As such, there is no PAA standard of care which could conflict with or preempt the standard of care under state law. Because Missouri state law standards of care do not conflict with any provisions of § 2210, there is no preemption of Missouri standards of liability, even strict liability.

As the advocate of preemption, Cotter bears the burden of showing that a provision of section 2210 is inconsistent with state law standards of care. *Cook v. Rockwell Int'l Corp*., 618 F.3d 1127, 1143 (10th Cir. 2010) (citing *Silkwood*, 464 U.S. at 255).  Here, Cotter has failed to point to any provision of section 2210 which is inconsistent with state law standards of care. This failure is fatal to Cotter's argument that a "PAA standard of care" preempts state law standards of care.

**C.   Supreme Court Precedent Demonstrates No Implied Preemption – The Atomic Energy Act Does Not Preempt State Tort Standards of Care**

While not explicitly stated by Cotter, what it really argues is that the Atomic Energy Act preempts state law standards of care even though the Atomic Energy Act has no preemption provision. See *Virginia Uranium, Inc.*, 139 S. Ct. at 1902. Thus, the only potential source of preemption left for Cotter is implied preemption. This argument fails because it is contrary to Supreme Court precedent.

**1.   Cotter Overstates Field Preemption Expressed in *Pac. Gas & Elec.Co.* as Determined in *Silkwood***

Cotter cites to *Pac. Gas & Elec.Co. v. State Energy Res. Conserv. & Dev. Comm'n,*[4] to assert that "the PAA ensures that states are preempted from regulating the health and safety aspects of radiation."[5] *Pac. Gas & Elec.Co.* analyzed the Atomic Energy Act and held that a California statute which imposed a moratorium on the certification of new power plants was not preempted by the Atomic Energy Act. While *Pac. Gas & Elec.Co.* did reason that only the federal government can *directly* regulate nuclear safety, it does not address whether state tort standards of care, which may have some indirect effect on nuclear safety, are preempted by federal law. "*Cook I",* 618 F.3d at 1143.

Less than a year after *Pac. Gas & Elec.Co.,* the Supreme Court did address the issue and further elaborated on Atomic Energy Act preemption in *Silkwood,* 464 U.S. 238. In *Silkwood*, the Supreme Court upheld a jury verdict that held the defendant strictly liable and awarded punitive damages. Relying on *Pac. Gas & Elec.Co.*, the defendant argued that state authorized punitive damage awards punished and deterred conduct related to radiation hazards and fell within the prohibited field established by *Pac. Gas & Elec.Co*. The Supreme Court rejected this argument

---

[4] 461 U.S. 190 (1983).
[5] See Cotter MIS of MTD at page 11.

and determined that "the preempted field does not extend as far as [defendant] would have it." *Silkwood*, 464 U.S. at 249. As stated by the Supreme Court, "insofar as damages for radiation injuries are concerned, preemption should not be judged on the basis that the federal government has so completely occupied the field of safety that state remedies are foreclosed." *Id*. at 239.

In reaching this conclusion, the Supreme Court addressed the Price Anderson Act and determined that "it is clear that in enacting and amending the Price-Anderson Act, Congress assumed that state-law remedies, in whatever form they might take, were available to those injured by nuclear incidents. This was so even though it was well aware of the NRC's exclusive authority to regulate safety matters." *Id*. at 256. The Supreme Court reasoned that "[i]t may be that the award of damages based on the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something that Congress was quite willing to accept." *Id*.  In other words, "state tort law…fell beyond any fair understanding of the NRC's reach under the AEA." *Virginia Uranium, Inc.*, 139 S. Ct. at 1905.

## 2.    *Silkwood* Also Found No Conflict Preemption

In *Silkwood*, as amicus curiae, the United States argued that the award of punitive damages based on strict liability is preempted because it conflicts with the federal remedial scheme. The Supreme Court disagreed and determined that compliance with state law standards and compliance with federal regulations "would not appear to be physically impossible" and does not "frustrate any purpose of the federal remedial scheme." *Silkwood*, 464 U.S. at 257.

Lastly, the Supreme Court addressed and rejected the defendant's argument that an award of punitive damages based on strict liability would frustrate Congress' desire to encourage participation in the development and utilization of atomic energy for peaceful purposes. *Id*. at 257-

258. The Supreme Court noted that "the promotion of nuclear power is not to be accomplished at all costs" and held that the award of punitive damages based on strict liability does not hinder the accomplishment of Congress' stated purpose. *Id.*

"The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." *Wyeth*, 555 U.S. at 575 (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166–167 (1989) (internal quotation marks omitted)).

### D.    The 1988 Amendments to the PAA Reaffirm *Silkwood*'s Relevant Analysis

After addressing each potential avenues of preemption, the Supreme Court held that the award of punitive damages based on strict liability "is not preempted by federal law." *Silkwood*, 464 U.S. at 258. While *Silkwood* does not address 2014(hh) and the 1988 amendments, it does establish two things: 1) the Atomic Energy Act does not preempt state law standards of care, and 2) the PAA did not preempt state law standards of care prior to the 1988 amendments. Thus, in order for the state law standards of care to be preempted as Cotter proposes, there must be something in the 1988 amendments to demonstrate that state law standards of care are preempted by the PAA.

With the 1988 amendments Congress responded to litigation that followed the Three Mile Island accident[6] by adding 42 U.S.C. § 2210(n)(2) which declared that for any "public liability action" arising out of or resulting from a "nuclear incident", the United States district court…shall have original jurisdiction." Congress then defined a "public liability action" as "an action arising under section 2210 of this title" and stated that "the substantive rules for decision in such action

---

[6] *See* S. REP. 100-218, 13, 1988 U.S.C.C.A.N. 1476, 1488

shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of ***such section***." 42 U.S.C. § 2014(hh).

Additionally, Congress responded to *Silkwood* with the 1988 amendments by adding 42 U.S.C. § 2210(s) prohibiting punitive damages "against a person on behalf of whom the United States is obligated to make payments under an agreement of indemnification."[7] *Id.* Critically, Congress did not reverse *Silkwood* and declare that federal regulations preempt state law standards of care in a "public liability action". In fact, they did the opposite and reaffirmed *Silkwood* by incorporating state law standards unless inconsistent with a provision of section 2210. See 42 U.S.C. § 2014(hh).

Consistent with these amendments, Plaintiffs bring this lawsuit in federal court as a federal "public liability action" incorporating state law standards of care. As discussed above, there is no provision of section 2210 which could potentially preempt state law standards of care.

### E.   Legislative History Demonstrates Congress' Intent to Leave State Law Standards of Care in Place

Plaintiffs' position is consistent with Congress' intent as expressed in the legislative history of the PAA:

> Since its enactment by Congress in 1957 one of the cardinal attributes of the Price-Anderson Act has been its minimal interference with State law. Under the Price-Anderson system, the claimant's right to recover from the fund established by the act ***is left to the tort law of the various States***; the only interference with State law is a potential one, in that the limitation of liability feature of the act would come into play in the exceedingly remote contingency of a nuclear incident giving rise to damages in excess of the amount of financial responsibility required together with the amount of the governmental indemnity.

1966 U.S.C.C.A.N. 3201, 3206 (emphasis added).

---

[7] This provision is not applicable here because the United States is not obligated to may payments under an agreement of indemnification on behalf of Cotter. *See Cotter Corp., (N.S.L.) v. United States*, No. 22-414, 2023 WL 2339734 (Fed. Cl. Mar. 3, 2023).

As noted in *Silkwood*, when the Committee outlined the rights of those injured in nuclear incidents which were not extraordinary nuclear occurrences, its reference point was again state law. "Absent ... a determination [that the incident is an 'extraordinary nuclear occurrence'], a claimant would have exactly the same rights that he has today under existing law—***including, perhaps, benefit of a rule of strict liability if applicable State law so provides***." *Silkwood*, 464 U.S. at 254 (citing 1966 U.S.C.C.A.N. 3201, 3212) (emphasis added).

The legislative history of the PAA makes it abundantly clear that it was never Congress' intent to provide a regulatory ceiling to shield nuclear actors from liability. The goal was to remove impediments to private participation in the nuclear industry by setting a cap and providing indemnification for liability which was uninsurable, not to displace state law tort standards of liability. This intent is reflected in the 1988 amendments with definition of "public liability action" and the fact that the PAA does not include or reference any standards of care that might conflict with state law standards, even strict liability.

## F.     Eighth Circuit Precedent Does Not Support Cotter's Position

This Court should ignore Cotter's attempt to assert that the Eight Circuit has decided that federal regulations preempt state law standards of care in a "public liability action". *In re Cotter* analyzes the jurisdictional provision of the PAA and does not address the preemption of state law standards of care. It simply determined that the PAA provides original jurisdiction for all nuclear incidents regardless of whether the defendant has an applicable license or indemnity agreement. *In re Cotter Corp., (N.S.L.),* 22 F.4th at 793. Moreover, *Halbrook*'s holdings relate primarily to the statute of limitations under the PAA and explicitly states that a public liability action "incorporates substantive state-law standards for liability." *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 974 (8th Cir. 2018). Consistent with these decisions, this action is brought in federal court as a "public

liability action" incorporating substantive state-law standards of liability.

G.    **In Relying on *TMI I*, McClurg and Other Circuits Ignore Plain Language and Misinterpret Supreme Court Precedent**

In *McClurg I*, this Court determined that federal regulations establish the standard of care in a public liability action. No independent analysis is provided, instead *McClurg I* cites to an opinion from the Eastern District of Tennessee that noted every Circuit that has considered the issue has concluded that radiation dose levels set by federal regulations establish the duty of care for radiation injuries. *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1187 (E.D. Mo. 2013) (citing *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761 (E.D. Tenn. 2012)). A review of *Adkins,* and the opinions it cites, demonstrates that the referenced Circuit Court decisions all trace back to a single opinion by the Third Circuit issued after the Three Mile and Island Accident. *See In re TMI Litig. Cases Consol. II*, 940 F.2d 832 (3d Cir. 1991) ("*TMI I*").

Claiming reliance on *Silkwood*, the *TMI I* decision determined that "the basis of the public liability action no longer stems from state law." *Id.* at 858. In addition to completely ignoring the plain language of the definition "public liability action", this determination is clearly contrary to the Supreme Court's decision in *Silkwood*, which found no field or conflict preemption of state law standards of liability. The Supreme Court was clear when it determined that "preemption should not be judged on the basis that the federal government has so completely occupied the field." *Silkwood*, 464 U.S. at 256. It was also clear when it determined that damages based on strict liability would not impose an obstacle to the full purposes and objectives of Congress. *Id.* at 257-258.  As noted above, *Silkwood*'s analysis was reaffirmed with the language chosen by Congress with the 1988 amendments, language which the *TMI I* decision completely ignores.

*McClurg I* and other decisions that find federal regulations preempt state law standards of liability in a "public liability action" should be scrutinized carefully to avoid an interpretation that

is contrary to Supreme Court authority and the plain language of the PAA. The notion that the 1988 amendments changed the Supreme Court's determination that damages pursuant to state law strict liability were not preempted is simply not supported by the language chosen by Congress when it defined "public liability action".

## II. Assuming *Arguendo* That Plain Language is Not Controlling, Plaintiffs Have Alleged Sufficient Facts to Establish a Breach of Federal Regulations

Despite the fact that the PAA does not include any elements by which liability is established, [8] Cotter argues that Plaintiffs have failed to plead the "necessary elements" of a "public liability action." More specifically, Cotter claims that Plaintiffs have failed to allege a breach of federal regulations and that Plaintiffs have failed to allege exposure to radiation in excess of background.

Assuming *arguendo* that federal regulations provide the standard of care in a "public liability action", this Court has determined the following elements must be established: "(1) the defendants released radiation into the environment in excess of the levels permitted by federal regulations in effect [at the time of the alleged nuclear incident]; (2) the plaintiffs were exposed to this radiation (although not necessarily at levels prohibited by those regulations); (3) the plaintiffs have injuries; and (4) radiation was the cause of those injuries." *McClurg*, 2017 WL 2929444 at *6 (citing *In re TMI Litig.*, 193 F.3d 613, 659 (3d Cir. 1999) (citations omitted), amended, 199 F.3d 158 (3d Cir. 2000)). A review of the First Amended Complaint demonstrates that Plaintiffs have "alleged sufficient facts to state a claim comprised of these elements that is plausible on its face." *Id.* at *6.

---

[8] See 42 U.S.C. § 2210.

A.    **Plaintiffs Allege Facts to Demonstrate it is Plausible Cotter Breached Federal Regulations**

With respect to the first element, this Court determined that 10 C.F.R. §§ 20.105 and 20.106 are the applicable federal regulations. *McClurg*, 2017 WL 2929444 at *5. These regulations regulate releases above thresholds in "unrestricted areas", they do not regulate exposures to individuals.

Contrary to Cotter's assertion that Plaintiffs must allege exposure to radiation in excess of these regulations,[9] this Court determined that the language of these regulations "does not suggest that a breach occurs only when persons are exposed to excessive radiation. Instead, the regulations provide that a breach occurs whenever excessive radiation is released, whether or not anyone is present in the area exposed." *Id*. at *6. In other words, Plaintiffs are not required to "plead actual exposure in a specific amount." *Id*. Here, Plaintiffs make numerous allegations which plausibly demonstrate that Cotter released radiation in excess of 10 C.F.R. §§ 20.105 and 20.106.

Plaintiffs allege that: "Each of these Defendants were lawfully accountable for the property on which the RWM was stored and/or they were responsible for managing the RWM. All of the Defendants failed in this regard, causing the release of hazardous, toxic, and radioactive substances which have now been physically deposited on surrounding properties by various means including wind, soil, surface water, and groundwater transmission." FAC ¶ 19;  "Cotter dried and loaded the RWM onto railcars next to Coldwater Creek at a rate of approximately 400 tons per day." FAC ¶ 47; "The AEC expressed concerns about a dust problem." FAC ¶ 48(A); "The AEC cited Cotter because sample surveys were "totally inadequate to determine concentrations of radioactive materials to which person are exposed pursuant to 10 CFR 20." FAC ¶ 48(B); "The St. Louis County Health Department noted violations related to the restriction of emission of visible air

---

[9] See Cotter MIS of MTD at page 9.

contaminants." FAC ¶ 48(C); "Health and environmental experts expressed concerns and noted violations of AEC regulations." FAC ¶ 48(D); "RWM was washed down under the fence, which was a violation of AEC regulations." FAC ¶ 48(E); "settling ponds were in a state of disrepair." FAC ¶ 48(F); "the drying equipment was in a state of disrepair." FAC ¶ 48(G). "At some point during Cotter's operations at Latty Avenue, its dryer broke down. Thereafter, the site was not secured and appeared to be abandoned." FAC ¶ 49

Plaintiffs further allege that: "As a result of Cotter's acts and omissions at the Latty site, Cotter released radiation into unrestricted areas in the environment in excess of the levels permitted by federal regulations in effect at the time, including but not limited to, 10 C.F.R. §§ 20.105 and 20.106." FAC ¶ 52; "As a result of Defendants' acts and omissions described in this Complaint, Defendants released radiation into unrestricted areas in the environment in excess of the levels permitted by federal regulations in effect at the time of their operations." FAC ¶¶ 10, 11; Defendants' negligence throughout the history of the mishandling and improper dumping of hazardous, toxic, carcinogenic, radioactive wastes has resulted in repeated releases of radioactive materials and other hazardous materials onto surrounding property, including the properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked), in disregard of applicable regulations and Plaintiffs' rights." FAC ¶ 112.

Additionally, Plaintiffs allege that "on November 13, 1974, the AEC terminated Cotter's source material license." FAC ¶ 59. At this point, the Latty Site became an "unrestricted area" which was defined as "any area access to which is not controlled by the licensee for purposes of protection of individuals from exposure to radiation and radioactive materials." 10 CFR 20.3(a)(17). Plaintiffs further allege that "[i]n 1977, surveys at the Latty site showed that the site still contained licensable quantities of source material" and that surveys conducted by the NRC

"raised a serious question as to whether statements Cotter Corporation made in its application for termination of its license, with regard to contamination levels and removal of all licensable materials, were correct and, hence, whether the Commission's action terminating your license was founded on accurate representations by you." FAC ¶ 61. Moreover, Plaintiffs allege that "Cotter's RWM remain on the Latty Avenue site to this day." FAC ¶ 53. The continued presence of Cotter's radioactive wastes at the Latty Site after its license was terminated is also considered a release under 10 CFR 20.105 and 20.106.

Given the numerous factual allegations regarding Cotter's negligent operation at the Latty Site and its improper handling of radioactive materials, Plaintiffs have plead sufficient factual matter, which must be accepted as true, to demonstrate that Cotter breached the applicable federal regulations and to state a claim that is "plausible on its face." *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### B.    Plaintiffs Allege Facts to Demonstrate it is Plausible Their Exposure Was in Excess of Background

This Court previously determined that the "exposure element requires that plaintiffs demonstrate they have been exposed to a greater extent than anyone else, i.e., that their exposure levels exceeded the normal background level." *McClurg*, 2017 WL 2929444 at *6. A review of the FAC demonstrates that Cotter's assertion that Plaintiffs fail to allege exposure in excess of background that was released from Cotter's facility is without merit.

As discussed above, Plaintiffs allege that Cotter's negligent operations caused the release of radioactive material onto surrounding properties. Plaintiffs further allege that: "This deposition of RWM on surrounding properties is above the background, it's unique, and readily identifiable from naturally occurring Missouri radiation." FAC ¶ 20; "The properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked) contained radiation above

background to which Plaintiffs were exposed." FAC ¶ 21; "Plaintiffs' exposure to *this radiation*

above background caused or contributed to cause them to develop cancer.  FAC ¶ 22 (emphasis

added); "As a result of Cotter's acts and omissions at the Latty site and Cotter's releases, Coldwater

Creek and surrounding properties, including the properties where Plaintiffs lived, gardened, and

frequented (and where Plaintiff Mazzocchio worked), were contaminated with radioactive

materials in excess of background levels." FAC ¶ 52. These allegations are more than sufficient to

establish the second element.

**CONCLUSION**

For the reasons set forth herein, Defendant Cotter's Motion to Dismiss must be denied.

Dated:  April 17, 2023                          Respectfully submitted,

                                                KEANE LAW LLC

                                                /s/ *Tanner A. Kirksey*
                                                Ryan A. Keane, #62112
                                                Tanner A. Kirksey, #72882
                                                7711 Bonhomme Ave., Ste. 600
                                                St. Louis, MO 63105
                                                Phone: (314) 391-4700
                                                Fax: (314) 244-3778
                                                ryan@keanelawllc.com
                                                tanner@keanelawllc.com

                                                JOHNSON GRAY, LLC
                                                Anthony D. Gray, #51534
                                                319 North 4th Street, Suite 212
                                                St. Louis, MO 63102
                                                Phone: (314) 385-9500
                                                agray@johnsongraylaw.com

                                                COOPER LAW FIRM, L.L.C.
                                                Barry J. Cooper, Jr., TX #24057527 *PHV pending*
                                                Celeste Brustowicz, LA #16835 *PHV pending*
                                                Victor Cobb LA #36830 *PHV pending*
                                                1525 Religious Street

New Orleans, LA 70130
Phone: (504) 566-1558
ssmith@sch-llc.com
bcooper@sch-llc.com
cbrustowicz@sch-llc.com
vcobb@sch-llc.com

and

Kevin W. Thompson (WV Bar #5062) *PHV pending*
David R. Barney, Jr. (WV Bar #7958) *PHV pending*
2030 Kanawha Boulevard, East
Charleston, WV  25311
Telephone:  304-343-4401
Facsimile:  304-343-4405
Email:  kwthompson@gmail.com

*Attorneys for Plaintiffs*

19

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record via this court's ECF/PACER electronic filing notification system on April 17, 2023.

/s/ Tanner A. Kirksey

20