**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

NIKKI STEINER MAZZOCCHIO, *et al.*,           )
                                              )
        Plaintiffs,                           )
                                              )           No. 4:22-cv-292-MTS
        v.                                    )
                                              )
COTTER CORPORATION, *et al.*,                 )
                                              )
        Defendants.                           )

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANT COMMONWEALTH EDISON'S MOTION TO DISMISS**

COME NOW Plaintiffs Nikki Steiner Mazzocchio and Angela Steiner Kraus, by and through their undersigned counsel, and for their Response in Opposition to Defendant Commonwealth Edison's Motion to Dismiss and Memorandum in Support (ECF 60-61), state as follows:

**INTRODUCTION**

Plaintiffs have sufficiently alleged facts to show that Commonwealth Edison ("ComEd") can be held liable as an "alter ego" of Cotter because ComEd maintained sufficient control over Cotter and used that control to sanction a fraud, promote injustice, or lead to an evasion of legal obligations. More specifically, ComEd used its control over Cotter to perpetuate the fraud that there was no radioactive contamination remaining with respect to Cotter's abandoned operations. As a result of ComEd's improper use of control over Cotter, the Latty Avenue site remained contaminated and the properties where Plaintiffs lived continued to be contaminated with the radioactive materials which caused their cancers.

ComEd's argument that federal regulations establish the standard of care in a "public liability action" ignores the plain language of the PAA which clearly incorporates state law

1

standards of care. Because ComEd fails to point to any provision in 42 U.S.C. § 2210 which conflicts with state law standards of care in a "public liability action", its preemption argument fails. Even if federal regulations are determined to preemptive, they are not applicable to ComEd because they were never an Atomic Energy Commission licensee. Moreover, even if federal regulations are determined to be applicable to ComEd, Plaintiffs have alleged facts to demonstrate that it is plausible that ComEd breached those standards causing Plaintiffs to be exposed to radiation in excess of background.

## PROCEDURAL HISTORY

Plaintiffs filed this action in Missouri state court on January 25, 2022, alleging state law causes of action pursuant to Missouri law. Defendant Cotter Corporation removed to federal court based on a recent decision from the Eighth Circuit which determined that based on plain language "the PAA provides federal court jurisdiction over all 'nuclear incidents,' regardless of whether the defendant had an applicable license or indemnity agreement." *In re Cotter Corp.*, (N.S.L.), 22 F.4th 788, 793 (8th Cir.), cert. denied sub nom. *Banks v. Cotter Corp.*, 214 L. Ed. 2d 233, 143 S. Ct. 422 (2022)

In April 2022, this matter was stayed pending the United States Supreme Court's decision on whether to grant a Petition for Writ of Certiorari and review the Eight Circuit's decision. Following the Supreme Court's denial of the Writ Petition, and given the Eight Circuit's decision, Plaintiffs filed the Amended Complaint which is the subject of this Motion to Dismiss to affirmatively allege a "public liability action" arising from "nuclear incident."

## LEGAL AUTHORITY

"There is a strong presumption against dismissing an action for failure to state a claim." *Whitehorn v. F.C.C.*, 235 F.Supp.2d 1092, 1096 (D. Nev. 2002), *aff'd* 63 Fed.Appx. 346 (9th Cir.

2003), *cert. denied* 541 U.S. 1031, *reh'g denied* 542 U.S. 956 (2004). A complaint will survive a motion to dismiss for failure to state a claim if it "allege[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Omega Genesis Corp. v. Mayo Found. For Med. Educ. & Research*, 851 F.3d 800, 804 (8th Cir. 2017), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, claims filed within the federal courts are governed by Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Again, for a claim to survive a Rule 12(b)(6) motion to dismiss, the claim must sufficiently "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## ARGUMENT AND ANALYSIS

### I. Plaintiffs Have Alleged Sufficient Facts to Establish Liability Against ComEd Under An Alter Ego Theory

Defendant ComEd's discussion on alter ego liability is fraught with errors, misapplication of law, and misleading half-quotes. (See MIS, pp. 9-12). ComEd cites *United States v. Bestfoods* for the proposition that a "parent is directly liable for its own actions" and that this is the end of the equation. 524 U.S. 51, 65 (1998). To that point, ComEd presents the Court with an incorrect statement of law. The Supreme Court in *Bestfoods* went on to state:

> But there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, inter alia, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf.

*Bestfoods*, 524 U.S. at 62.

3

To pierce the corporate veil here[1] and state an alter ego theory, Plaintiffs simply need allegations supporting the following two-prong federal common law standard: "(i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations." *N.L.R.B. v. Bolivar-Tees, Inc.*, 551 F.3d 722, 728 (8th Cir. 2008). Plaintiffs have clearly alleged several facts supporting ComEd's liability here:

> Cotter was purchased by and became a wholly owned subsidiary of Commonwealth Edison ("ComEd") in 1974. (FAC ¶ 13).

> ComEd owned Cotter at times relevant to this Complaint, and agreed to indemnify Cotter for liabilities associated with the creation, storage, transportation, and processing of hazardous, toxic, carcinogenic, radioactive wastes as alleged herein. (FASC ¶ 14).

> ComEd purchased Cotter with the interest of securing a uranium supply. (FAC ¶ 55).

> Cotter and ComEd knew or should have known substantial waste was in Coldwater Creek as a result of Cotter's operations and on the properties upon which Cotter controlled and had operated and which it knowingly and intentionally abandoned. (FAC ¶ 14).

> ComEd, through its pre-purchase due diligence, knew about the remaining contamination, yet did nothing to mitigate the threat to public health. (FAC ¶ 14).

> After the sale of Cotter to ComEd, they jointly conspired to perpetuate the fraud that there was no radioactive contamination remaining with respect to Cotter's abandoned operations. (FAC ¶ 14).

> Two days after ComEd purchased Cotter, on May 10, 1974, Cotter filed an application with the AEC to terminate its source material license certifying that the Latty Avenue site was decontaminated. (FAC ¶ 57).

> In 1977, surveys at the Latty site showed that the site still contained licensable quantities of source material. Thereafter, the NRC informed Cotter and ComEd that its survey "raised a serious question as to whether statements Cotter Corporation

---

[1] Plaintiffs adopt the position that the PAA, as a federal statute, necessitates a federal common law analysis for alter ego theories.

made in its application for termination of its license, with regard to contamination levels and removal of all licensable materials, were correct and, hence, whether the Commission's action terminating your license was founded on accurate representations by you." (FAC ¶ 61).

ComEd therefore not only controlled the policy and business of Cotter, but also used its control over Cotter to perpetuate the negligent and unlawful contamination in contravention of Plaintiffs' rights. (FAC ¶ 14).

As a result of Cotter and ComEd's acts and omissions at the Latty site, the Latty site remained contaminated, and Coldwater Creek and surrounding properties, including the areas where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked), were contaminated with radioactive materials in excess of background levels. (FAC ¶ 62).

Taken together, Plaintiffs' allegations state that ComEd controlled Cotter's policy and business after the purchase to ignore and to cover up the fact that Cotter had left radioactive contamination. Rather than remediate the mess Cotter left behind, ComEd chose to cover up the existence of radioactive contamination for over twenty-five years while the radiation actively and continuously poisoned nearby residents, including Plaintiffs. Plaintiffs therefore allege facts which, taken as true and given all inferences in their favor, show ComEd and Cotter became indistinct, and that adherence to the corporate fiction of "ComEd and Cotter" specific to the facts of this litigation would promote injustice or lead to an evasion of legal obligations. *Bolivar-Tees, Inc.*, 551 F.3d at 733. This is sufficient.

ComEd also cites *Boughton* as dispositive. It is not. "In this case, alleging torts under Colorado law, the question of piercing the corporate veil must be determined by Colorado law as well." *Boughton v. Cotter Corp.*, 65 F.3d 823, 835 (10th Cir. 1995) (emphasis added). In fact, the ten factors analyzed in Boughton originated from *Fish v. East*, 114 F.2d 177, 191 (10th Cir. 1940), another case operating under CO law. Further, the court in *Boughton* was examining the facts presented in light of the *motion for summary judgment standard* – not a motion to dismiss. *Boughton*, 65 F.3d at 835-36. The *Boughton* court was therefore examining the "ComEd and

Cotter" alter ego issue under different rules, different law, at a different location, and for a different set of facts. The case is not dispositive.

Even so, *Boughton's* facts may be relevant to the present federal common law analysis (in addition to the facts pled by Plaintiffs). In *Boughton*, the court specifically found that evidence of "parent financing", "taking direction from parent", "that the parent pays salaries, expenses or losses of the subsidiary", "that the parent was required to reimburse Cotter for expenses incurred", "parent ownership", "interlocking boards", "substantially no business except with the parent", and "subsidiary is referred to as such in papers of parent" either partially or entirely shown and present. *Boughton*, 65 F.3d at 838. In the end, after analyzing the factors under Colorado law, the *Boughton* decision determined that the corporate form was not used to defeat public convenience, or to justify or protect wrong, fraud or crime. *Boughton v. Cotter Corp.*, 65 F.3d 823, 838 (10th Cir. 1995). While that may true under the facts presented in the *Boughton* case, ***the same cannot be said here*** where ComEd used its control to "perpetuate the fraud that there was no radioactive contamination remaining with respect to Cotter's abandoned operations." (FAC ¶ 14). At the Motion to Dismiss stage, Plaintiffs are not required to allege more.

## II. Federal Regulations Do No Preempt State Tort Standards of Care in a "Public Liability Action"[2]

### A. The Plain Language of the PAA Incorporates State Law Standards of Care Unless Inconsistent with a Provision of 42 U.S.C. § 2210

With respect to preemption, the PAA provides that "[a] public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules of decision in such action shall be derived from the law of State in which the nuclear incident involved occurs,

---

[2] In the interest of avoiding duplication between Plaintiffs' oppositions to ComEd's and Cotter's Motions to Dismiss, Plaintiffs have streamlined Section II. For more fulsome arguments, Plaintiffs direct the Court to Section I of Plaintiffs' opposition to Cotter's Motion to Dismiss.

unless such law is inconsistent with the provisions of ***such section***" 42 U.S.C. § 2014(hh) (emphasis added). Critically, the plain language dictates that state law governs unless inconsistent with Section 2210 only.

According to the U.S. Supreme Court, this "unusual" preemption provision "resembles" "complete preemption" and transforms any public liability action arising out of or resulting from a nuclear incident into a federal action and gives a district court original jurisdiction over such a claim. *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 (1999).  In analyzing this preemption provision, the Supreme Court reasoned that "Congress expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price–Anderson claim on the merits and for determining whether a claim falls under Price–Anderson when removal is contested." *Id.* at 473. According to *Neztsosie*, a federal "public liability action" is "one decided under substantive state-law rules of decision that do not conflict with the Price-Anderson Act." *Neztsosie*, 526 U.S. at 473.  As stated by now Supreme Court Justice Gorsuch, the PAA "merely affords a federal forum when a nuclear incident is 'assert[ed]' and provides a modest form of conflict preemption once the case is underway: ***normal state law principles continue to govern unless they conflict with the rules found in § 2210***." "*Cook II*", 790 F.3d at 1095 (emphasis added).

Consistent with the unusual preemption provision in § 2014(hh), Plaintiffs filed the Amended Complaint at issue here in federal court as a "public liability action" incorporating state-law standards of care.[3] As such, the issue is not whether independent state law causes of action are preempted,[4] the issue is what the standard of liability is for a "public liability action". Based on

---

[3] See Amended Complaint ¶ 101. ("Under the umbrella of Plaintiffs' 'public liability action', Plaintiffs assert the following causes of action").

[4] Plaintiffs only plead subparts (A)-(C) as independent state law causes of action if there has been no nuclear incident. *See* First Amended and Supplemental Complaint footnote 2 at page 19. ComEd has conceded that a nuclear incident

the plain language of the PAA, a "public liability action" incorporates state law standards of care unless they are inconsistent with a provision of 42 U.S.C. § 2210.

### B. State Law Standards of Care are Consistent with 42 U.S.C. § 2210, Which Contains No Standards of Care

Critically, ComEd does not point to a single provision of § 2210 which conflicts with state law standards of care. This is so because § 2210 primarily addresses the indemnification and limitation of liability components of the PAA and contains no federal safety standards that could provide the standard of care in a PAA action. In other words, there is no such thing as a federal PAA standard of care. As such, there is no PAA standard of care which could conflict with or preempt the standard of care under state law. Because Missouri state law standards of care do not conflict with any provisions of § 2210, there is no preemption of Missouri standards of liability, even strict liability.

As the advocate of preemption, ComEd bears the burden of showing that a provision of section 2210 is inconsistent with state law standards of care. *Cook v. Rockwell Int'l Corp*., 618 F.3d 1127, 1143 (10th Cir. 2010) (citing *Silkwood v. Kerr-McGee Corp*., 464 U.S. 238, 255 (1984)). Here, ComEd has failed to point to any provision of section 2210 which is inconsistent with state law standards of care. This failure is fatal to ComEd's argument that a PAA standard of care preempts state law standards of care.

### C. The Atomic Energy Act Does Not Preempt State Tort Standards of Care

While not explicitly stated by ComEd, what it really argues is that the Atomic Energy Act preempts state law standards of care even though the Atomic Energy Act has no preemption provision. See *Virginia Uranium, Inc. v. Warren*, 204 L. Ed. 2d 377, 139 S. Ct. 1894, 1902 (2019).

---

has been plead. As such, subparts (A)-(C) only constitute the theories of liability under Plaintiffs' "public liability action".

This argument fails because it is contrary to Supreme Court precedent.

The Supreme Court addressed Atomic Energy Act preemption in *Silkwood,* 464 U.S. 238. In *Silkwood*, the Supreme Court upheld a jury verdict that held the defendant strictly liable and awarded punitive damages. Relying on *Pac. Gas & Elec.Co.*, the defendant argued that state authorized punitive damage awards punished and deterred conduct related to radiation hazards and fell within the prohibited field established by *Pac. Gas & Elec.Co*. The Supreme Court rejected this argument and determined that "the preempted field does not extend as far as [defendant] would have it." *Silkwood*, 464 U.S. at 249. As stated by the Supreme Court, "insofar as damages for radiation injuries are concerned, preemption should not be judged on the basis that the federal government has so completely occupied the field of safety that state remedies are foreclosed." *Id*. at 239.

In reaching this conclusion, the Supreme Court addressed the Price Anderson Act and determined that "it is clear that in enacting and amending the Price-Anderson Act, Congress assumed that state-law remedies, in whatever form they might take, were available to those injured by nuclear incidents. This was so even though it was well aware of the NRC's exclusive authority to regulate safety matters." *Id*. at 256. The Supreme Court reasoned that "[i]t may be that the award of damages based on the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something that Congress was quite willing to accept." *Id*.  In other words, "state tort law…fell beyond any fair understanding of the NRC's reach under the AEA." *Virginia Uranium, Inc.*, 139 S. Ct. at 1905.

In *Silkwood*, as amicus curiae, the United States argued that the award of punitive damages based on strict liability is preempted because it conflicts with the federal remedial scheme. The

Supreme Court disagreed and determined that compliance with state law standards and compliance with federal regulations "would not appear to be physically impossible" and does not "frustrate any purpose of the federal remedial scheme." *Silkwood*, 464 U.S. at 257.

Lastly, the Supreme Court addressed and rejected the defendant's argument that an award of punitive damages based on strict liability would frustrate Congress' desire to encourage participation in the development and utilization of atomic energy for peaceful purposes. *Id*. at 257-258. The Supreme Court noted that "the promotion of nuclear power is not to be accomplished at all costs" and held that the award of punitive damages based on strict liability does not hinder the accomplishment of Congress' stated purpose. *Id*.

"The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." *Wyeth v. Levine*, 555 U.S. 555, 575 (2009) (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc*., 489 U.S. 141, 166–167 (1989) (internal quotation marks omitted)).

### D.  The 1988 Amendments to the PAA Reaffirm Silkwood's Relevant Analysis

After addressing each potential avenues of preemption, the Supreme Court held that the award of punitive damages based on strict liability "is not preempted by federal law." *Silkwood*, 464 U.S. at 258. While *Silkwood* does not address 2014(hh) and the 1988 amendments, it does establish two things: 1) the Atomic Energy Act does not preempt state law standards of care, and 2) the PAA did not preempt state law standards of care prior to the 1988 amendments. Thus, in order for the state law standards of care to be preempted, there must be something in the 1988 amendments to demonstrate that state law standards of care are preempted by the PAA.

With the 1988 amendments Congress responded to litigation that followed the Three Mile

Island accident[5] by adding 42 U.S.C. § 2210(n)(2) which declared that for any "public liability action" arising out of or resulting from a "nuclear incident", the United States district court…shall have original jurisdiction." Congress then defined a "public liability action" as "an action arising under section 2210 of this title" and stated that "the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of *such section*." 42 U.S.C. § 2014(hh).

Additionally, Congress responded to *Silkwood* with the 1988 amendments by adding 42 U.S.C. § 2210(s) prohibiting punitive damages "against a person on behalf of whom the United States is obligated to make payments under an agreement of indemnification."[6] *Id*. Critically, Congress did not reverse *Silkwood* and declare that federal regulations preempt state law standards of care in a "public liability action". In fact, they did the opposite and reaffirmed *Silkwood* by incorporating state law standards unless inconsistent with a provision of section 2210. See 42 U.S.C. § 2014(hh).

Consistent with these amendments, Plaintiffs bring this lawsuit in federal court as a federal "public liability action" incorporating state law standards of care. As discussed above, there is no provision of section 2210 which could potentially preempt state law standards of care.

### E.  Eighth Circuit Precedent Does Not Support ComEd's Position

This Court should ignore ComEd's attempt to assert that the Eight Circuit has decided that federal regulations preempt state law standards of care in a "public liability action". *In re Cotter* analyzes the jurisdictional provision of the PAA and does not address the preemption of state law standards of care. It simply determined that the PAA provides original jurisdiction for all nuclear

---

[5] *See* S. REP. 100-218, 13, 1988 U.S.C.C.A.N. 1476, 1488
[6] This provision is not applicable here because the United States is not obligated to may payments under an agreement of indemnification on behalf of ComEd.

incidents regardless of whether the defendant has an applicable license or indemnity agreement. *In re Cotter Corp., (N.S.L.),* 22 F.4th at 793. Moreover, *Halbrook*'s holdings relate primarily to the statute of limitations under the PAA and explicitly states that a public liability action "incorporates substantive state-law standards for liability." *Halbrook v. Mallinckrodt, LLC,* 888 F.3d 971, 974 (8th Cir. 2018). Consistent with these decisions, this action is brought in federal court as a "public liability action" incorporating substantive state-law standards of liability.

### F. In Relying on *TMI I*, *McClurg* and Other Circuits Ignore Plain Language and Misinterpret Supreme Court Precedent

In *McClurg I*, this Court determined that federal regulations establish the standard of care in a public liability action. No independent analysis is provided, instead *McClurg I* cites to an opinion from the Eastern District of Tennessee that noted every Circuit that has considered the issue has concluded that radiation dose levels set by federal regulations establish the duty of care for radiation injuries. *McClurg v. MI Holdings, Inc.,* 933 F. Supp. 2d 1179, 1187 (E.D. Mo. 2013) (citing *Adkins v. Chevron Corp.,* 960 F. Supp. 2d 761 (E.D. Tenn. 2012)). A review of *Adkins,* and the opinions it cites, demonstrates that the referenced Circuit Court decisions all trace back to a single opinion by the Third Circuit issued after the Three Mile and Island Accident. *See In re TMI Litig. Cases Consol. II*, 940 F.2d 832 (3d Cir. 1991) ("*TMI I*").

Claiming reliance on *Silkwood*, the *TMI I* decision determined that "the basis of the public liability action no longer stems from state law." *Id.* at 858. In addition to completely ignoring the plain language of the definition "public liability action", this determination is clearly contrary to the Supreme Court's decision in *Silkwood*, which found no field or conflict preemption of state law standards of liability. The Supreme Court was clear when it determined that "preemption should not be judged on the basis that the federal government has so completely occupied the field." *Silkwood*, 464 U.S. at 256. It was also clear when it determined that damages based on strict

12

liability would not impose an obstacle to the full purposes and objectives of Congress. *Id*. at 257-258.  As noted above, *Silkwood*'s analysis was reaffirmed with the language chosen by Congress with the 1988 amendments, language which the *TMI I* decision completely ignores.

*McClurg I* and other decisions that find federal regulations preempt state law standards of liability in a "public liability action" should be scrutinized carefully to avoid an interpretation that is contrary to Supreme Court authority and the plain language of the PAA. The notion that the 1988 amendments changed the Supreme Court's determination that damages pursuant to state law strict liability were not preempted is simply not supported by the language chosen by Congress when it defined "public liability action".

## III.    Federal Regulations Are Not Applicable to ComEd

Despite the fact that the PAA does not include any elements by which liability is established, ComEd argues that Plaintiffs have failed to plead the necessary elements of a public liability action. More specifically, ComEd claims that Plaintiffs have failed to allege a breach of federal regulations and that Plaintiffs have failed to allege exposure to radiation in excess of background.

Assuming arguendo that federal regulations preempt state law standards of care in a "public liability action", this Court determined that the applicable regulations are found in 10 C.F.R. § 20.105 and 20.106. *McClurg v. Mallinckrodt, Inc*., No. 4:12-CV-00361-AGF, 2017 WL 2929444, at *5 (E.D. Mo. July 7, 2017). While this may be true with respect to Cotter, who was an Atomic Energy Commission licensee, the same cannot be said for ComEd who was never a licensee with respect to operations at Latty Avenue. (FASC ¶ 89).

Based on the plain language of 10 C.F.R. Part 20, in the section labeled "scope", it clearly states that "[t]he regulations in this part apply to all person who receive, possess, use or transfer

byproduct material, source material, or special nuclear material ***under a general or specific license issued by the Commission*** pursuant to the regulations in Part 30, 40, or 70 of this chapter." 10 C.F.R. § 20.2, 25 Fed. Reg. 10914 (Nov. 17, 1960) (emphasis added). Thus, these regulations were not and are not applicable to ComEd who never held a general or specific license for Latty operations. As such, these regulations did not carry the force of law with respect to ComEd and cannot preempt state law standards of care. See *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008) (finding that tolerance doses "did not carry the force of law and thus cannot provide the basis for a safe harbor from liability"). Simply put, there are no federal regulations applicable to ComEd which could preempt state law standards of care.

## IV.    Even if Federal Regulations Preempt and They Are Applicable to ComEd, Plaintiffs Have Alleged Sufficient Facts to Establish a Breach of Federal Regulations[7]

ComEd argues that Plaintiffs fail to allege a release of radiation in excess of federal regulations and that Plaintiffs failed to allege exposure in excess of background. Even if it is determined that federal regulations are applicable to ComEd despite not being a licensee, a review of the First Amended Complaint demonstrates that Plaintiffs have "alleged sufficient facts to state a claim comprised of these elements that is plausible on its face." *McClurg* 2017 WL 2929444, at *6.

In addition to the allegations discussed above, which establish that ComEd can held liable as an "alter ego" of Cotter, Plaintiffs allege that: "Each of these Defendants were lawfully accountable for the property on which the RWM was stored and/or they were responsible for managing the RWM. All of the Defendants failed in this regard, causing the release of hazardous, toxic, and radioactive substances which have now been physically deposited on surrounding

---

[7] In the interest of avoiding duplication between Plaintiffs' oppositions to ComEd's and Cotter's Motions to Dismiss, Plaintiffs have streamlined Section IV. For more fulsome arguments, Plaintiffs direct the Court to Section II of Plaintiffs' opposition to Cotter's Motion to Dismiss.

properties by various means including wind, soil, surface water, and groundwater transmission."
FAC ¶ 19; "As a result of Defendants' acts and omissions described in this Complaint, Defendants

released radiation into unrestricted areas in the environment in excess of the levels permitted by

federal regulations in effect at the time of their operations." FAC ¶¶ 10, 11; Defendants' negligence

throughout the history of the mishandling and improper dumping of hazardous, toxic,

carcinogenic, radioactive wastes has resulted in repeated releases of radioactive materials and other

hazardous materials onto surrounding property, including the properties where Plaintiffs lived,

gardened, and frequented (and where Plaintiff Mazzocchio worked), in disregard of applicable

regulations and Plaintiffs' rights." FAC ¶ 112.

Plaintiffs further allege that: "This deposition of RWM on surrounding properties is above

the background, it's unique, and readily identifiable from naturally occurring Missouri radiation."

FAC ¶ 20; "The properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff

Mazzocchio worked) contained radiation above background to which Plaintiffs were exposed."

FAC ¶ 21; "Plaintiffs' exposure to *this radiation* above background caused or contributed to cause

them to develop cancer.  FAC ¶ 22 (emphasis added).

Taken together, Plaintiffs allege sufficient facts with respect to ComEd to state a public

liability action under the PAA. See *McClurg*, 2017 WL 2929444 at *6. Even if this court does not

find the allegations sufficient, "[o]rdinarily dismissal of a plaintiff's complaint for failure to comply

with Rule 8 should be with leave to amend." *Boggs v. Am. Optical Co*., No. 4:14-CV-1434-CEJ,

2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015).

## CONCLUSION

For the reasons set forth herein, Defendant ComEd's Motion to Dismiss must be denied.

Dated:  April 17, 2023

Respectfully submitted,

KEANE LAW LLC

*/s/ Tanner A. Kirksey*
Ryan A. Keane, #62112
Tanner A. Kirksey, #72882
7711 Bonhomme Ave., Ste. 600
St. Louis, MO 63105
Phone: (314) 391-4700
Fax: (314) 244-3778
ryan@keanelawllc.com
tanner@keanelawllc.com

JOHNSON GRAY, LLC
Anthony D. Gray, #51534
319 North 4th Street, Suite 212
St. Louis, MO 63102
Phone: (314) 385-9500
agray@johnsongraylaw.com

COOPER LAW FIRM, L.L.C.
Barry J. Cooper, Jr., TX #24057527 *PHV pending*
Celeste Brustowicz, LA #16835 *PHV pending*
Victor Cobb LA #36830 *PHV pending*
1525 Religious Street
New Orleans, LA 70130
Phone: (504) 566-1558
ssmith@sch-llc.com
bcooper@sch-llc.com
cbrustowicz@sch-llc.com
vcobb@sch-llc.com

and

Kevin W. Thompson (WV Bar #5062) *PHV pending*
David R. Barney, Jr. (WV Bar #7958) *PHV pending*
2030 Kanawha Boulevard, East
Charleston, WV  25311
Telephone:  304-343-4401
Facsimile:  304-343-4405
Email:  kwthompson@gmail.com

*Attorneys for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record via this court's ECF/PACER electronic filing notification system on April 17, 2023.

*/s/ Tanner A. Kirksey*