**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

NIKKI STEINER MAZZOCCHIO and
ANGELA STEINER KRAUS,

      Plaintiffs,

      v.

COTTER CORPORATION et al.,

      Defendants.

Case No. 4:22-cv-00292-MTS

**DEFENDANT ST. LOUIS AIRPORT AUTHORITY'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant St. Louis Airport Authority ("SLAA"), a Department of the City of St. Louis, by and through their undersigned counsel, and for its Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint and Memorandum in Support (Doc. 62), states as follows:

**ARGUMENT**

**I.  Established Authorities Set Forth Preemption of State Law Causes of Action Involving Price-Anderson Act Claims**

A public liability action ("PLA") under the Price-Anderson Act ("PAA"), 42 U.S.C. section 2011 et seq. is the only cause of action for which Plaintiff can seek recovery.  This is well settled.  In Plaintiffs' First Amended and Supplemental Complaint ("FASC"), Count I is clearly brought as a PLA under the PAA.  Next, Count I of Plaintiff's FASC consists of sub-parts (A) – (E), which impermissibly seek to inject state law claims into Plaintiffs' PAA action.  Defendant SLAA, in its Motion to Dismiss, previously cited numerous federal authorities holding that the PAA is the exclusive federal cause of action for claims that arise from nuclear incidents and how state-tort law claims are preempted by the PAA.  (*See* Doc. 62, pp. 3-5).

1

Plaintiffs, in their opposition pleading, disagree with such authorities and based upon their own interpretation of 42 U.S.C. § 2014(hh), argue that no preemption can exist and that state law governs unless inconsistent with 2210 only. (*See* Plaintiff's Response (Doc. 69), p. 3). As Plaintiffs argue in their opposition pleading, they essentially desire to return to a period of time before the Amendments Act when persons claiming radiation injuries arising from a nuclear incident could pursue state law causes of action that varied among the 50 states. *See Bohrmann v. Maine Yankee Atomic Power Co.*, 926 F. Supp. 211, 216 (D. Me. 1996). Of course, such a situation led to conflict and inconsistencies and in order to prevent this from happening, the Amendments Act preempted and extinguished all existing state law causes of action by: (1) expressly creating a new and exclusive federal cause of action called a "public liability action" ("PLA") and (2) mandate[ed] a unified federal duty of care to be applied in all PLAs. *See 42 U.S.C. § 2014(hh)*; *O'Conner v. Commonwealth Edison*, 13 F.3d 1090, 1101 (7th Cir. 1994); *Roberts*, 146 F.3d at 1308; *In re TMI* , 67 F.3d 1119, 1122 (3rd Cir. 1995); *In re TMI II*, 940 F.2d 832, 857 (3rd Cir. 1991). Plaintiffs' claim is not corroborated by federal case law, which includes a recent decision issued by this very Court where the issue of state law preemption under the PAA was analyzed. *See Dailey v. Bridgeton Landfill, LLC*, 299 F.Supp.3d 1090, 85 ERC 2060 (E.D. Mo. 2017).[1]

As part of the *Dailey* Court's analysis, *Silkwood* is referenced and noted how, in 1984, the Supreme Court examined the PAA in relation to preemption of state-law claims. *Id*. at 1096. At the time when the PAA was enacted in 1957 and later amended in 1966, Congress did not expressly intend to preempt state law remedies. *Id*. This background set the stage for the Supreme Court's ruling in *Silkwood* involving the appellant's argument concerning the availability of a state law remedy for punitive damages. *Id*.

---

[1] The findings from Dailey are relevant to this current matter as they also address the federal standard of care in PAA cases.

In 1988, four years after the *Silkwood* decision, "Congress amended the PAA to expressly create federal court jurisdiction to adjudicate public liability actions arising from nuclear incidents. *Id*. at 1097 (citing 42 U.S.C. § 2014(hh); and *O'Conner*, 13 F.3d at 1095). Congress did incorporate state law into the PAA within these amendments **except to the extent that state law is inconsistent with federal law**. *Dailey* at 1097 (emphasis added) (citing 42 U.S.C. § 2014(hh) and *Nieman v. NLO, Inc*., 108 F.3d 1546, 1553 (6th Cir. 1997) (internal quotes omitted).  The Court in *Dailey* addressed when federal preemption of state-law claims for nuclear incidents can be found and provided the following explanation relevant to this matter.  "Although the Eighth Circuit has not ruled on the issue of PAA preemption of state-law claims, other appellate courts have **exhaustively examined** this issue following the 1988 amendments to the PAA, and **they have found federal preemption of state-law claims for nuclear incidents**." *Id*. at 1097 (emphasis added) (citing *In re Berg Litig*., 293 F.3d 1127, 1132 (9th Cir. 2002) (public liability action as "exclusive means" of pursuing a nuclear incident claim); *Roberts v. Florida Power & Light Co*., 146 F.3d 1305, 1306 (11th Cir. 1998) (PAA creates "exclusive" federal cause of action); *Nieman v. NLO, Inc*., 108 F.3d 1546, 1553 (6th Cir. 1997) (PAA preempts state law claims and they "cannot stand as separate causes of action"); *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997) (PAA as the "sole remedy" for claims involving atomic energy production); *O'Conner*, 13 F.3d at 1100 (a federal cause of action for a nuclear safety claim "supplants" the prior state cause of action); *In re TMI Litig. Cases Consol. II* (TMI II), 940 F.2d 832, 854 (3d Cir. 1991) (a nuclear incident claim is "compensable under the [PAA] or it is not compensable at all.").

This Court's decision in *Dailey* and the authorities cited therein expand upon those authorities cited by SLAA in its Motion to Dismiss, which establish that Plaintiffs' state law causes of action are preempted by the PAA.  Furthermore, the existence of a federal standard of care in

3

PAA claims as set forth below seeks to eliminate the inconsistencies that inevitably result when pursuing separate and independent state law causes of action, which Plaintiffs advocate should apply in this matter and would elicit the inconsistencies sought to be avoided as referenced in 42 U.S.C. § 2014(hh).

## II. Established Authorities Set Forth Recognized Federal Standard of Care for Claims Brought Under Price-Anderson Act

A review of Plaintiffs' FASC clearly identifies that Count I is brought as a PLA under the PAA. Next, Count I of Plaintiff's FASC consists of sub-parts (A) – (E), which impermissibly seek to inject state law claims and their corresponding duties of care into Plaintiffs' PAA action. SLAA, in its Motion to Dismiss, previously cited numerous federal authorities holding that the PAA is the exclusive federal cause of action for claims that arise from nuclear incidents and how there is a federal standard of care in such cases. (*See* Doc. 62, pp. 8-10).

Plaintiffs dispute these authorities claiming that all such holdings are incorrectly decided and violate the Supreme Court's holding in the 1984 case of *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984). (*See* Plaintiff's Response (Doc. 69), p. 4). Plaintiffs assert in their opposition pleading that "there is no such thing as a federal PAA standard of care" as a justification for incorporating state law tort theories and standards of care into their FASC. *Id*. Further, by asserting that no federal standard exists, it allows Plaintiffs to argue that state law causes of action do not conflict with the PAA. With respect to Plaintiffs claim that there is no federal PAA standard of care, this assertion is inaccurate and ignores numerous holdings establishing the existence of a federal standard. *See O'Conner v. Commonwealth Edison Co.*, 748 F. Supp. 672, 678 (C.D. Ill. 1990).

Plaintiffs ignore authority recognizing a federal standard of care for radiation limits and, instead, heavily focuses on *Silkwood*, a case decided before the 1988 Amendments Act. *O'Conner*,

4

13 F.3d at 1095; *In re TMI II*, 940 F.2d at 857 ("The Amendments Act creates a federal cause of action which did not exist prior to the Act … and channels all legal liability to the federal courts through that cause of action."). Even though Plaintiffs hold *Silkwood* out as unequivocally standing against a federal standard of care for the PLA, in truth *Silkwood* was solely focused on whether or not a state-authorized award of punitive damages was available. *Silkwood*, 464 U.S. 238-255. In fact, by finding that state-law remedies were available to those injured by nuclear incidents, the Supreme Court in *Silkwood* repeatedly emphasized that states are precluded from regulating the safety aspects of nuclear energy. *Id*. at 240-241, 249-252. The Supreme Court observed in *Silkwood* that "Congress' decision to prohibit the states from regulating the safety aspects of nuclear development was premised on its belief that the Commission was more qualified to determine what type of **safety standards** should be enacted in this complex area." *Id*. at 250 (emphasis added). Although "the technical safety considerations are of such complexity that it is not likely that any State would be prepared to deal with them during the foreseeable future" the Supreme Court found sufficient evidence that Congress did not intend to forbid states from providing remedies. *Id*. at 251 (internal quotations omitted).

Setting aside the fact that even *Silkwood* seems to contemplate that individual state duties of care are inappropriate for setting the safety standard for radiation limits, Plaintiffs appear to advocate for a return to a time when claims for radiation injuries arising from a nuclear incident were pursued as state law causes of action that varied among the 50 states. *See Bohrmann*, 926 F. Supp. At 216. However, the Amendments Act preempted and extinguished all existing state law causes of action by mandating a unified federal duty of care to be applied in all PLAs. *See 42 U.S.C. § 2014(hh)*; *O'Con*ner, 13 F.3d at 1101; *Roberts*, 146 F.3d at 1308; *In re TMI* , 67 F.3d 1119, 1122 (3rd Cir. 1995); *In re TMI II*, 940 F.2d at 857.

5

By passing the Amendments Act, the Seventh Circuit held that "Congress clearly intended to supplant all possible state causes of action when the factual prerequisite [sic] of [Price-Anderson] are met[.]" *O'Conner*, 13 F.3d at 1101.  Here, the state-law tort theories of recovery that Plaintiffs allege in Count I sub-parts (A) – (E) are inconsistent and directly conflict with the well-recognized federal standard of care.  As previously set forth within SLAA's Motion to Dismiss, the NRC carefully calibrates the standard of care "based upon the national and international scientific consensus as to the hypothetical risk from exposure" to low levels of radiation that are "not expected to cause appreciable bodily injury to people at any time during his lifetime." *O'Conner* at 677 (internal citation omitted).  While the NRC-established exposure limits expressly apply to persons, exceedance of these limits is required for any PAA claim, whether the claim alleges physical injury and/or property damage. *See Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 811 (N.D. Ill. 1999) (dismissing property damage claims for failure to present evidence of exposure "in excess of the NRC dose limits.").

This is the federal standard of care and it is well recognized.  Further evidencing this, when bringing a PLA claim under the PAA, a plaintiff must plead exposures that exceed the NRC-defined limits and the failure to do so is a basis for dismissal. *See McGlone v. Centrus*, Case No. 18-cv-2196, 2020 WL 4431482, at *2 (S.D. Ohio July 21, 2020).  Specifically, "[t]o prevail on a claim under the [PAA], [p]laintiffs must establish four elements: (1) [d]efendants released radiation into the environment **in excess of federal regulatory limits**; (2) [p]laintiffs were exposed to this radiation; (3) [p]laintiffs have injuries; and (4) radiation was the cause of those injuries. *See McGlone*, 2020 WL 4431482 at *3-5 (emphasis added) (citing *In re TMI*, 67 F.3d 1103, 1119 (3d Cir. 1995)).  This means that a plaintiff must plausibly allege that she was exposed to radiation in excess of these dose limits. *See, e.g., Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 772-773 769

(E.D. Tenn. 2012) (dismissing public liability action where plaintiffs failed to allege breach of dose limits); *Roberts*, 146 F.3d at 1308 (affirming dismissal of a public liability action for failure to state a claim when plaintiffs "failed to allege that FBP breached its duty of care by exposing Bertram Roberts to an amount of radiation in excess of the maximum permissible amount allowed by federal regulation"); G*assie v. SMH Swiss Corp. for Microelectric & Watchmaking Indus*., No. 97-3557, 1998 U.S. Dist. LEXIS 4193, at *16 (E.D. La. Mar. 30, 1998) (dismissing Price-Anderson Act claim under Rule 12(b)(6) because plaintiffs failed to adequately plead exceedance of governing NRC regulation), rev'd on other grounds, 1998 U.S. App. LEXIS 39055 (5th Cir. 1998).

In addition to this federal standard of care being well recognized in other federal courts, this Court in *Dailey* directly addressed and affirmed a federal duty of care.  In *Dailey*, the parties similarly disputed what standard of care was applicable to a claim brought under the PAA and what elements must be plead for a PAA claim to survive dismissal.  *Dailey* at 1099.  The defendants argued that plaintiffs' PAA claim should be dismissed since plaintiffs "failed to allege exposure to radiation exceeding the applicable Atomic Energy Commission ("AEC") or Nuclear Regulatory Commission ("NRC") radiation dose limits and have not identified any relevant federal nuclear safety standards that [d]efendants may have breached."  *Id*.

Addressing these arguments, the Court in *Dailey* identified the following with respect to a federal duty of care "[n]uclear safety standards have changed over the years but under the current NRC (the AEC's successor) guidelines, the annual permissible dose limit for individual members of the general public exposed to radiation as a result of activities at NRC-licensed operations is not to exceed 0.1 rem (1mSv). 10 C.F.R. § 20.1301(a)(1)." *Id.; see also McGlone,* 2020 WL 4431482, at *2 ("The federal regulatory limits applicable to this case can be found in 10 C.F.R. §

7

1301.") (citing *Adkins*, 960 F. Supp. 2d at 769 ("The permissible dose limits are found at 10 C.F.R. § 20.1301.")); *TNS, Inc. v. Nat'l Labor Relations Bd.*, 296 F.3d 384, 398 (6th Cir. 2002) ("[T]he Sixth Circuit has joined with almost every other circuit in holding that NRC safety regulations conclusively establish the duty of care owed by defendants in radiation safety personal injury cases governed by the 1998 amendments to the Price-Anderson Act.").

The plaintiffs in *Dailey* disputed application of such a federal standard and, among other arguments, claimed that "they have pled a valid PAA claim and that the PAA does not state that a dosing limit is required for a public liability action (PLA) to proceed." *Id*. at 1099-1100. The plaintiffs in *Dailey* also argued that NRC regulations were not applicable because defendant entity was not an NRC-licensed facility. *Id*. Plaintiffs in the current action take a nearly identical position, making the Court's findings in *Dailey* instructive.

In *Dailey*, despite the plaintiffs' contention that no federal standard of care exists in PAA cases and plaintiffs' outright dismissal of the authorities cited by defendant, the Court recognized the authorities relied upon by defendants and noted how "[m]any federal circuit courts have found that any public liability action brought under the PAA must apply federal nuclear safety regulations as the applicable standard of care." *Id*. at 1100 (citing *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986,1003 (9th Cir. 2008) (nuclear operator liability for strict liability claim brought for personal injuries requires breach of federally-imposed dose limits); *Roberts*, 146 F.3d at 1308 ("federal safety regulations conclusively establish the duty of care owed in a public liability action" brought for personal injuries resulting from exposure to radiation); *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995) (duty of care for personal injuries claims from radiation exposure is measured by whether defendants released radiation in excess of levels permitted by federal exposure

regulations); *O'Conner*, 13 F.3d at 1105 (federal regulations must provide the measure of a defendant's duty in a public liability action for personal injuries arising from radiation exposure).

Furthermore, the Court in *Dailey* identified how "[a] previous case in this district…also held that federal dose limits establish the duty of care for a PAA claim brought for personal injuries sustained as a result of exposure to radioactive substances." *Id*. (citing *McClurg v. MI Holdings, Inc.*, 933 F.Supp.2d 1179, 1187 (E.D. Mo. 2013)).  Likewise, the Sixth Circuit summarized its same position as having "joined with almost every other circuit in holding that NRC safety regulations conclusively establish the duty of care owed by the defendants in radiation safety personal injury cases governed by the 1998 amendments to the Price–Anderson Act." *Id*. (citing *TNS, Inc.*, 296 F.3d at 398 (citing *Nieman*, 108 F.3d at 1552–53).

The Court in *Dailey* found that "application of a specific federal dosing standard of care at this stage of the litigation is premature," but that such a standard might be found applicable at a later stage in the litigation. *Id.* 1101. This finding was driven by the Court's observation that the long line of authorities it had identified in *Dailey* supporting federal dose limits as the established duty of care for a PAA claim were all **personal injury cases** whereas the plaintiffs in *Dailey* had only alleged property damage. *Id.* 1100-01. In the instant case, Plaintiffs do allege personal injuries damages.

Despite Plaintiffs' unsubstantiated claims that all the aforementioned holdings were incorrectly decided since they are incongruent with *Silkwood*, Plaintiffs' only support for this position is *Silkwood* itself. This ignores the holdings of this Court and other federal courts clearly showing how a federal duty of care exists for claims brought under the PAA.

**III.     Federal Regulations Apply to Both Licensees and Non-Licensees**

Plaintiffs concede in their opposition pleading how this Court has determined that the applicable federal standard of care regulations are found in 10 CFR §§ 20.105 and 20.106 (1961). (*See* Plaintiff's Opposition, (Doc. 69) p. 10 (citing *McClung v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2017 WL 2929444 at *5 (E.D.Mo. July 7, 2017)). However, Plaintiffs assert that while such federal regulations apply to co-defendant Cotter, they cannot apply to SLAA as a non-licensee. (*See* Plaintiff's Opposition (Doc. 69), p. 10).

Plaintiffs' basis for their contention is "the plain language of 10 C.F.R., Part 20", which is entitled "*Scope*." *Id*. Looking at 10 C.F.R. § 20.1002, it provides that "[t]he regulations in this part apply to persons ***licensed*** by the Commission to receive, possess, use, transfer, or dispose of byproduct, source, or special nuclear material or to operate a production or utilization facility under parts 30 through 36, 39, 40, 50, 52, 60, 61, 63, 70, or 72 of this chapter, and in accordance with 10 CFR 76.60 to persons required to obtain a certificate of compliance or an approved compliance plan under part 76 of this chapter." (Emphasis added). Plaintiffs contend that since SLAA is not a licensee, that the aforementioned federal regulations cannot apply to SLAA. However, no specific authority is cited by Plaintiffs in support of this contention.

Plaintiffs do reference *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008) but that case is neither relevant nor applicable since it does not address the issue of federal regulations to licensees or non-licensees. However, Plaintiffs contention has been raised before and was denied by another district court. *See McGlone*, 2020 WL 4431482 at *4 (S.D. Ohio 2020). In *McGlone*, Plaintiffs argued that the federal regulatory limits set forth in 10 C.F.R. § 20.1301 did not apply because the "[d]efendants were not licensed by the Nuclear Regulatory Commission." *Id*. Plaintiffs in *McGlone* instead claimed that the defendants should be held strictly

10

liable under Ohio law for their radiation emissions. *Id*. Just like in the instant action, the plaintiffs in *McGlone* provided "no case law suggesting that non-licensees in a Price-Anderson Act suit are held to a different standard than licensees." *Id*. Notwithstanding the plaintiffs unsupported and unsubstantiated claims, the Court in *McGlone* dismissed plaintiffs' argument that federal regulations did not apply to non-licensees and found "no basis to hold [d]efendants to a more onerous standard than what § 20.1301 requires," which confirmed that federal regulations could apply against non-licensees. *Id*.

Additionally, it bears highlighting that, in *Dailey*, a non-NRC licensed facility was the defendant entity in that case. *Dailey*, 299 F.Supp.3d at 1101. Although this Court in *Dailey* found that dismissal on the grounds that Plaintiffs had not referred to the federal dose limits as the standard of care was premature because only property damages were at issue, the fact that defendant was a non-licensee was not the focus based on the extensive authority relied upon by the Court. *Id*. at 1100-01.

Accordingly, there is no basis to support Plaintiffs' contention that federal regulations do not apply against SLAA and relevant case law has directly contradicted Plaintiffs' claim on this point. Likewise, this Court should find in accordance with the Court in *McGlone* that the federal regulations do apply against SLAA.

### IV.     Plaintiffs Allegations are Insufficient to Establish Beach and Causation by SLAA

Plaintiffs attempt to establish that they have made sufficient allegations that SLAA has breached the applicable standard and to satisfy causation by listing the blanket assertions directed to all defendants as a group. As noted in SLAA's motion to dismiss, the Complaint contains a single allegation specifically leveled at SLAA in that it allegedly "did nothing to prevent continued dispersal and runoff of hazardous, toxic, carcinogenic, radioactive wastes into Coldwater Creek."

11

FASC, ¶ 38. Even by state law standards, the allegations are threadbare and insufficient to adequately state a claim against SLAA.

## CONCLUSION

For the reasons set forth above, Plaintiffs have failed to state a claim under the Price-Anderson Act, and Count One, Subparts (A) – (E) of the FASC must be dismissed.

                ARMSTRONG TEASDALE LLP

                By: */s/ Corey A.-T. Stegeman*
                    Laura A. Bentele, ##64727MO
                    Corey A.-T. Stegeman, #66828MO
                    7700 Forsyth Blvd., Suite 1800
                    St. Louis, Missouri 63105
                    Telephone:  314.621.5070
                    Fax:  314.621.5065
                    lbentele@atllp.com
                    cstegeman@atllp.com

                ATTORNEYS FOR DEFENDANT
                ST. LOUIS AIRPORT AUTHORITY, A
                DEPARTMENT OF THE CITY OF ST. LOUIS.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2023, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Corey A.-T. Stegeman*