# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

NIKKI STEINER MAZZOCCHIO, *et al.*,

    Plaintiffs,

v.

COTTER CORPORATION et al.,

    Defendants.

Case No. 4:22-cv-00292-MTS

**DEFENDANT COMMONWEALTH EDISON COMPANY'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

Riley Safer Holmes & Cancila LLP
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700
bwatson@rshc-law.com
ljaffe@rshc-law.com
docketdept@rshc-law.com

Riley Safer Holmes & Cancila LLP
Jennifer Steeve, #308082CA
100 Spectrum Center Dr., Ste. 440
Irvine, CA 92618
(949) 359-5515
jsteeve@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT
COMMONWEALTH EDISON COMPANY**

**INTRODUCTION**

Plaintiffs' response confirms that their First Amended and Supplemental Complaint ("Amended Complaint") should be dismissed for failure to state a claim against Commonwealth Edison Company ("ComEd"). Plaintiffs identify no allegations that support any claim against ComEd, the former parent company of Defendant Cotter Corporation (N.S.L.) ("Cotter"). ComEd does not own Cotter now, and ComEd did not even own Cotter when Cotter allegedly released the radioactive materials at issue.

In an attempt to save their Amended Complaint, Plaintiffs turn to an extraordinary alter ego theory. Opp. at 1, 3–6, ECF No. 67. But Plaintiffs have not alleged any of the elements of an alter ego claim against ComEd, let alone supported them with plausible facts. Nothing in the Amended Complaint shows that there was such unity of interest and lack of respect given to the separate identity of Cotter by ComEd that their personalities and assets are indistinct and that adherence to a corporate fiction would sanction a fraud. As Plaintiffs' own allegations show, ComEd, a highly regulated public utility in Illinois, and Cotter, a highly regulated mining and milling company in Colorado, have maintained separate corporate legal formalities, personalities, and assets for decades upon decades, and continuing still today.

Plaintiffs' theory—that ComEd allegedly "conspired to perpetuate the fraud that there was no radioactive contamination remaining with respect to Cotter's abandoned operations"—is also implausible. Opp. at 1, 4–5. Plaintiffs identify no false representations ever made by ComEd, and their allegations show that Cotter, *not ComEd*, applied to terminate its source material license with the Atomic Energy Commission ("AEC") allegedly certifying that the Latty Avenue site was decontaminated. Plaintiffs' cited material further contradicts their fraud theory because the government agency at the time did its own surveys of the Latty Avenue site and

1

found no immediate radiological health hazard to the public and no items of noncompliance against Cotter. There was no twenty-five year "cover up." Opp. at 5.

As for their public liability claim under the Price-Anderson Act ("PAA"), Plaintiffs have failed to show that (1) *ComEd* ever breached the levels of radiation permitted by federal regulations in effect at the time of its alleged conduct (i.e., a breach of the federal standard of care); and (2) Plaintiffs were exposed to this radiation released *by ComEd* in excess of the background level. Because Plaintiffs allege no such breach or exposure—in fact, because they allege no direct conduct at all by ComEd—their claim necessarily fails under the PAA. And contrary to Plaintiffs' arguments (Opp. at 2, 13–14), these well-established elements apply to every PAA claim, regardless of whether ComEd had a license, as this Court and the Circuit and District courts across the nation have held. ComEd therefore should be dismissed.

## ARGUMENT

**I.   Plaintiffs' Amended Complaint Has Not Alleged Sufficient Facts to State an Alter Ego Theory Against ComEd.**

As ComEd's opening brief explained (Mem. at 9–12, ECF No. 59), Plaintiffs have not alleged any sufficient, plausible facts to state an alter ego theory against ComEd. Their allegations satisfy *neither* element of the federal common law standard: "(i) such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) . . . adherence to the corporate fiction [would] sanction a fraud, promote injustice, or lead to an evasion of legal obligations." *N.L.R.B. v. Bolivar-Tees, Inc.*, 551 F.3d 722, 728 (8th Cir. 2008). Because piercing the corporate veil "is an extraordinary measure that should be reserved for exceptional circumstances," *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007), circumstances that are not alleged here, ComEd should be dismissed.

2

### A. Plaintiffs Have Not Alleged that ComEd and Cotter Are Indistinct.

Plaintiffs' Amended Complaint has not even alleged the bare elements for an alter ego claim against ComEd. *Compare* Opp. at 4–6 with *Bolivar-Tees*, 551 F.3d at 728. Nowhere have Plaintiffs alleged that the corporate legal formalities have not been maintained or that the corporate assets and affairs have been commingled. *Id*. Nor have they alleged any of the factors for an alter ego claim. *Id.* (outlining factors of "(1) whether the corporation is operated as a separate entity; (2) the commingling of funds and other assets; (3) the failure to maintain adequate corporate records; (4) the nature of the corporation's ownership and control; (5) the availability and use of corporate assets, the absence of same, or under capitalization; (6) the use of the corporate form as a mere shell, instrumentality or conduit of an individual or another corporation; (7) disregard of corporate legal formalities and the failure to maintain an arm's-length relationship among related entities; (8) diversion of the corporate funds or assets to noncorporate purposes; and . . . (9) transfer or disposal of corporate assets without fair consideration").[1]

In fact, Plaintiffs' allegations show that ComEd and Cotter *are* distinct. As Plaintiffs admit, ComEd has been properly incorporated in Illinois with its headquarters in Illinois, and Cotter has been properly incorporated in Colorado with its own separate headquarters in Colorado. Am. Compl. ¶¶ 13–14, ECF No. 44. ComEd has operated as a highly regulated public utility in its name; Cotter has operated as a highly regulated mining and milling company in its own name, including its operations at the Latty Avenue site. *Id.* ¶¶ 13, 14, 44–53. ComEd

---

[1] Plaintiffs' failure is especially telling because their attorneys sought, and obtained, jurisdictional discovery from Cotter and ComEd on these issues in the related case of *Banks v. Cotter Corporation (N.S.L.)*, No. 4:20-cv-01227-JAR (E.D. Mo.). *See* Order, *Banks v. Cotter Corporation (N.S.L.)*, No. 18SL-CC00617-02 (Mo. Cir. Ct. Oct. 12, 2021), attached as **Exhibit 1**.

3

is (and has been) owned by its parent company, Exelon Corporation. *Id.* ¶ 14. Cotter is (and has been) owned by a separate parent company, General Atomics. *Id.* ¶ 13. ComEd and Cotter have distinct corporate officers and boards, and while they shared an officer for a time with George Rifakes, there has never been complete domination or control of their officers and directors. *Id.* ¶ 56. All told, ComEd and Cotter have maintained their own separate corporate legal formalities, personalities, and assets for decades upon decades such that each operated as separate legal entities long before ComEd acquired Cotter in an arm's-length transaction in 1974, while ComEd owned Cotter as a subsidiary from 1974 and 2000, and after ComEd sold Cotter in an arm's-length transaction to General Atomics in 2000. *Id.* ¶¶ 13–14, 44–53.

Although Plaintiffs argue in their brief that they "have clearly alleged several facts supporting ComEd's liability" (Opp. at 4–5), their block-quoted allegations do nothing to support their alter ego theory:

| PLAINTIFFS' ALLEGATIONS | LEGAL EFFECT |
|---|---|
| Cotter was purchased by and became a wholly owned subsidiary of Commonwealth Edison ("ComEd") in 1974. (Am. Compl. ¶ 13). | **None.** *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."). |
| ComEd owned Cotter at times relevant to this Complaint, and agreed to indemnify Cotter for liabilities associated with the creation, storage, transportation, and processing of hazardous, toxic, carcinogenic, radioactive wastes as alleged herein. (Am. Compl. ¶ 14). | **None.** *Id.* at 61; *Mages v. Johanns*, 431 F.3d 1132, 1143 (8th Cir. 2005) ("The mere fact an individual enters a valid and enforceable contract with a corporation does not . . . make the corporation his alter ego."); *U.S. for Use & Benefit of Glob. Bldg. Supply, Inc. v. WNH Ltd. P'ship*, 995 F.2d 515, 521 (4th Cir. 1993) ("Corporate forms exist to limit liability"; "relations were governed by a valid and enforceable contract," including indemnification). |

4

| PLAINTIFFS' ALLEGATIONS | LEGAL EFFECT |
|---|---|
| ComEd purchased Cotter with the interest of securing a uranium supply. (Am. Compl. ¶ 55). | **None.** *Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 266 (7th Cir. 1996) (no alter ago even though "Superior engages in the same line of business as Soffit"); *New York State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 650 (2d Cir. 2005) (no alter ego even though the parties "were engaged in different, though related, lines of business within the freight transportation industry"). |
| Cotter and ComEd knew or should have known substantial waste was in Coldwater Creek as a result of Cotter's operations and on the properties upon which Cotter controlled and had operated and which it knowingly and intentionally abandoned. (Am. Compl. ¶ 14). | **None.** *Bestfoods*, 524 U.S. at 61 ("a corporation which chooses to facilitate the operation of its business by employment of another corporation as a subsidiary will not be penalized by a judicial determination of liability for the legal obligations of the subsidiary"). |
| ComEd, through its pre-purchase due diligence, knew about the remaining contamination, yet did nothing to mitigate the threat to public health. (Am. Compl. ¶ 14). | **None.** *Id.* |
| After the sale of Cotter to ComEd, they jointly conspired to perpetuate the fraud that there was no radioactive contamination remaining with respect to Cotter's abandoned operations. (Am. Compl. ¶ 14). | **None.** *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 898 (8th Cir. 1999) ("as a matter of law a parent corporation and its wholly owned subsidiaries are legally incapable of forming a conspiracy with one another"); *Palm Beach Polo, Inc. v. Dickinson Fin. Corp.*, 221 F.3d 1343 (8th Cir. 2000) (same); *Davidson & Schaaff, Inc. v. Liberty Nat. Fire Ins. Co.*, 69 F.3d 868, 871 (8th Cir. 1995) (same). |
| Two days after ComEd purchased Cotter, on May 10, 1974, Cotter filed an application with the AEC to terminate its source material license certifying that the Latty Avenue site was decontaminated. (Am. Compl. ¶ 57). | **None.** *Bestfoods*, 524 U.S. at 61 ("a corporation which chooses to facilitate the operation of its business by employment of another corporation as a subsidiary will not be penalized by a judicial determination of liability for the legal obligations of the subsidiary"). |

| **PLAINTIFFS' ALLEGATIONS** | **LEGAL EFFECT** |
|---|---|
| In 1977, surveys at the Latty site showed that the site still contained licensable quantities of source material. Thereafter, the NRC informed Cotter and ComEd that its survey "raised a serious question as to whether statements Cotter Corporation made in its application for termination of its license, with regard to contamination levels and removal of all licensable materials, were correct and, hence, whether the Commission's action terminating your license was founded on accurate representations by you. (Am. Compl. ¶ 61). | **None.** *Id.* |
| ComEd therefore not only controlled the policy and business of Cotter, but also used its control over Cotter to perpetuate the negligent and unlawful contamination in contravention of Plaintiffs' rights. (Am. Compl. ¶ 14). | **None.** *Id.*; see also *id.* at 70 ("it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the facility"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("'naked assertion' devoid of 'further factual enhancement'" and "formulaic recitation of the elements of a cause of action will not do" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007))). |
| As a result of Cotter and ComEd's acts and omissions at the Latty site, the Latty site remained contaminated, and Coldwater Creek and surrounding properties, including the areas where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked), were contaminated with radioactive materials in excess of background levels. (Am. Compl. ¶ 62). | **None.** *Bestfoods*, 524 U.S. at 61, 70; *Iqbal*, 556 U.S. at 678 ("'naked assertion' devoid of 'further factual enhancement'" and "formulaic recitation of the elements of a cause of action will not do" (quoting *Twombly*, 550 U.S. at 557)). |

On top of all these shortcomings, the Tenth Circuit has reviewed and rejected this exact alter ego theory about these exact parties. *Boughton v. Cotter Corp.*, 65 F.3d 823, 835–38 (10th Cir. 1995). As the Tenth Circuit held after a detailed review, "there is nothing to suggest that the formal separateness of the corporations was disregarded" between Cotter and ComEd, and piercing the corporate veil of Cotter to reach ComEd was unwarranted as a matter of law. *Id.* at 838. Plaintiffs fail to distinguish the Tenth Circuit's comprehensive decision, except to point out

6

that it was decided at summary judgment on a complete record. Opp. at 5–6. That complete record makes the facts and outcome more persuasive, not less. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (allowing "summary judgment, after adequate time for discovery and upon motion"); *Larsen v. Gen. Motors Corp.*, 391 F.2d 495, 497 (8th Cir. 1968) (reviewing summary judgment, "we will take the well pled allegations in the complaint at their face value . . . . Then if there are no issues or any discernible theory on which the losing party could recover, a summary judgment is proper."). Accordingly, there is no question that Plaintiffs have not satisfied the first element to allege an alter ego claim against ComEd.

### B.  Plaintiffs Have Not Alleged that Adherence to a Corporate Distinction Would Sanction a Fraud by ComEd.

Plaintiffs' Amended Complaint also has not alleged the second element for an alter ego claim, which requires showing that adherence to a corporate distinction between ComEd and Cotter would "sanction a fraud, promote injustice, or lead to an evasion of legal obligations." *Compare* Opp. at 4–6 *with Bolivar-Tees*, 551 F.3d at 728. Because Plaintiffs try to assert their claim based on fraud (Opp. at 1, 5–6), they must also state their allegations with particularity. *Se. Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) ("'When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to FED. R. CIV. P. 9(b)'" (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002))).

Nowhere have Plaintiffs alleged against ComEd any "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). They have not identified any of the "'who, what, where, when, and how' of the alleged fraud." *Id.*

7

And their "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy Rule 9(b)." *Id.* at 557.

Plaintiffs' one conclusory allegation—that "[a]fter the sale of Cotter to ComEd, they jointly conspired to perpetuate the fraud that there was no radioactive contamination remaining with respect to Cotter's abandoned operations"—falls far short of stating a fraud. Opp. at 4 (quoting Am. Compl. ¶ 14)). That allegation meets none of Rule 9(b)'s requirements. *Luke's Hosp.*, 441 F.3d at 556. And the allegation is flat-out wrong because "as a matter of law a parent corporation and its wholly owned subsidiaries are legally incapable of forming a conspiracy with one another." *Fogie*, 190 F.3d at 898.

Plaintiffs' allegations also cannot support a fraud against ComEd because they show that Cotter, *not ComEd*, allegedly "filed an application with the AEC to terminate its source material license certifying that the Latty Avenue site was decontaminated." Opp. at 4 (quoting Am. Compl. ¶ 57).[2] They have alleged no false representations ever made by ComEd or during ComEd's ownership of Cotter. And worse yet, Plaintiffs' cited material directly contradicts their allegation because the government agency at the time conducted its own, independent surveys of the Latty Avenue site, finding no "immediate radiological health hazard to the public" and "no items of noncompliance." Opp. at 4–5 (quoting Am. Compl. ¶ 61 and citing NRC, IE Investigation Report No. 76-01 (1977), attached as **Exhibit 2**); *see also Brown v. Medtronic, Inc.*, 628 F.3d 451, 459–60 (8th Cir. 2010) (material "incorporated within a complaint are considered part of the pleadings, and courts may look at such documents 'for all purposes'" (citing Fed. R. Civ. P. 10(c))); *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d

---

[2] In fact, ComEd did not acquire Cotter on May 8, 1974, as Plaintiffs allege. Am. Compl. ¶ 57. ComEd entered into the agreement on May 8, 1974, and then closed on the agreement and acquired Cotter on July 31, 1974.

8

449, 454 (7th Cir. 1998) (when referenced documents "contradict the allegations of the complaint, the document controls").

At bottom, because Plaintiffs' Amended Complaint has alleged neither element of an alter ego claim against ComEd and because piercing the corporate veil is a drastic approach authorized only in the most extreme situations, ComEd should be dismissed. *See Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975) ("piercing the corporate veil . . . is a drastic approach authorized only in the most extreme situations"); *HOK Sport, Inc.*, 495 F.3d at 935 ("Disregarding the entity's corporate form under either the alter ego doctrine or the remedy of piercing the corporate veil is an extraordinary measure that should be reserved for exceptional circumstances."); *Bestfoods*, 524 U.S. at 61 ("Limited liability is the rule, not the exception.").

## II. Plaintiffs' Amended Complaint Has Not Alleged Sufficient Facts to State a Public Liability Claim Under the PAA Against ComEd.

As ComEd's opening brief also explains (Mem. at 4–12), Plaintiffs have failed to allege a public liability claim under the PAA against ComEd.[3] Plaintiffs have not alleged that (1) ComEd ever breached the levels of radiation permitted by federal regulations in effect at the time of its alleged conduct (i.e., a breach of the federal standard of care); and (2) Plaintiffs were exposed to this radiation released by ComEd in excess of the background level.

### A. The Federal Standard of Care Applies to ComEd.

In response, Plaintiffs mistakenly argue that federal regulations cannot define the federal standard of care as to ComEd. Opp. at 13–14. Yet they fail to address, and thus concede, all the cited cases by this Court, every circuit court that has considered the issue, and district courts

---

[3] In the interest of avoiding duplication between ComEd's reply brief and Cotter's, ComEd has streamlined Section II(A). For more fulsome arguments, ComEd directs the Court to Section I of Cotter's reply brief, which ComEd incorporates.

9

across the country that federal regulations at the time of the alleged conduct define the levels of radiation that would protect members of the public from excessive exposure, and thus establish the standard of care under the PAA. And they fail to address, and likewise concede, all the cited cases that federal regulations must define the standard of care, regardless of whether a defendant had a license. *Compare* Mem. at 6–7 *with* Opp. at 13–14; *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude, as did the district court, that the [plaintiffs] concede"); *Bonhomme Inv. Partners, LLC v. Hayes*, No. 4:13CV475 CDP, 2015 WL 2383475, at *2 (E.D. Mo. May 19, 2015) ("plaintiffs fail to address these arguments and so they are presumed to have conceded them").[4]

Plaintiffs also misapprehend that federal regulations define the standard of care because of preemption, not licensure. As this Court has held, and Plaintiffs overlook, "pervasive federal regulation . . . occupied the entire field of nuclear safety concerns," and "any state duty would infringe upon pervasive federal regulation in the field of nuclear safety, and thus would conflict with federal law." *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2015 WL 867455, at *6 (E.D. Mo. Feb. 27, 2015) ("*McClurg II*"), *aff'd*, Halbrook v. Mallinckrodt, LLC, 888 F.3d 971 (8th Cir. 2018) (quoting *In re TMI*, 940 F.2d 832, 854 (3d Cir. 1991); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099–1100 (7th Cir. 1994); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998)).

---

[4] In two of these cases, the courts rejected the same arguments made here by Plaintiffs' own counsel. *McGlone v. Centrus Energy Corp.*, No. 2:19-CV-02196, 2020 WL 4431482, at *4 (S.D. Ohio July 31, 2020); *Steward v. Honeywell Int'l, Inc.*, 469 F. Supp. 3d 872, 877 (S.D. Ill. 2020).

Indeed, as the Ninth Circuit also explained in a case cited by Plaintiffs (Opp. at 14), "'[t]he safety of nuclear technology is the exclusive business of the Federal Government,' which has 'occupied the entire field of nuclear safety concerns.'" *In re Hanford*, 534 F.3d 986, 1003 (9th Cir. 2008) (citations and bracket omitted).  Thus, "federal law preempts states from imposing a more stringent standard of care than federal safety standards," and "liability may not be imposed for [radioactive] releases within federally-authorized limits, because any federal authorization would preempt state-derived standards of care." *Id.*  Any other "result would undermine the purpose of a comprehensive and exclusive federal scheme for nuclear incident liability." *Id.*

The Ninth Circuit explained that these "comprehensive, federal standards govern[ed] emission levels on which Defendants could rely to relieve them from liability for harm they caused." *Id.* at 1004.  In other words, there was a "federal machinery to promulgate legal standards on which Defendants could have reasonably relied to insulate them from liability." *Id.*  Thus, whether or not ComEd had a license (which it did, contrary to Plaintiffs' argument), ComEd was entitled to rely on the considered judgment of federal regulators about the levels of radiation to which the general public may be exposed, and it cannot be held liable unless it breached those federally-authorized standards.  *Id.* ("Every federal circuit that has considered the appropriate standard of care under the PAA has concluded that nuclear operators are not liable unless they breach federally-imposed dose limits."); *see also O'Conner*, 13 F.3d at 1103 (applying federal regulations specifically to ComEd as the standard of care under the PAA).

      **B.**    **Plaintiffs Have Not Alleged that ComEd Ever Breached the Standard of Care or Had Any Conduct at All Related to the Sites or Material.**

Under the PAA, Plaintiffs' Amended Complaint has necessarily failed to state a claim against ComEd because they have not alleged, or shown with any plausible facts, that ComEd

11

ever breached any federal standard of care owed to them. *Compare* Opp. at 14–15 *with* Mem. at 7–9. Instead, Plaintiffs point to generalized allegations against the "Defendants." None of these allegations state any facts specific to ComEd, however. Opp. at 14–15 (quoting Am. Compl. ¶¶ 10, 11, 19, 20, 21, 22, 112).

As this Court has made clear, generalized allegations cannot state a plausible claim for relief because "'by merely lumping defendants into a group and providing no factual basis to distinguish their conduct, plaintiff has failed to give any named defendant fair notice of the grounds for the claims made,' resulting in 'a pleading that fails to comply with' Fed. R. Civ. P. 8(a)." *Reavis v. St. Louis Cnty.*, No. 4:19-CV-02916-MTS, 2020 WL 6822571, at *3 (E.D. Mo. Nov. 20, 2020) (Schelp, J.) (quoting *Dewalt v. Brauner*, No. 4:19-cv-46-JCH, 2020 WL 1888796, at *6 (E.D. Mo. Apr. 16, 2020)). Nor do these allegations "contain the necessary 'factual content' to 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## C. Plaintiffs Have Not Alleged Exposure Above Background Levels to Radiation Released by ComEd.

Not only have Plaintiffs failed to allege any conduct by ComEd showing that it breached any federal standard of care owed to Plaintiffs, but also they have failed to allege that Plaintiffs were ever exposed to this radiation released *by ComEd* above the normal background level of radiation in the environment. *Compare* Opp. at 15 *with* Mem. at 12. Again, Plaintiffs point to their generalized allegations against the "Defendants." Opp. at 15 (quoting Am. Compl. ¶¶ 20–22). Those formulaic, threadbare allegations "will not do." *Iqbal*, 556 U.S. at 678.

Plaintiffs' response also appears to misunderstand the PAA exposure standard. The PAA requires that Plaintiffs plead and prove exposure to the radiation released by *each* defendant in excess of the normal background level. *McMunn v. Babcock & Wilcox Power Generation Grp.*,

12

131 F. Supp. 3d 352, 397 (W.D. Pa. 2015), *aff'd*, 869 F.3d 246 (3d Cir. 2017) (citing *In re TMI Litig.*, 193 F.3d 613, 659 (3d Cir. 1999)).  That requirement exists because, unlike exposures to other substances, "[e]very person is exposed daily to background radiation from various sources, both natural and man-made." *Id.*; *Butler v. Mallinckrodt LLC*, No. 4:18-CV-01701-AGF, 2022 WL 4598531, at *8 (E.D. Mo. Sept. 30, 2022) ("'Unlike with PCBs, asbestos or tobacco byproducts, we are constantly exposed to radiation on a daily basis.  We are exposed from numerous natural sources including the sun, or naturally occurring radioactive elements such as radon in the ground surrounding our homes.'" (quoting *McMunn*, 869 F.3d at 277)).

Therefore, because Plaintiffs must show that they were exposed to radiation specifically released by ComEd above the normal background amount in the environment, and because they allege no such exposure specifically attributed to ComEd, their Amended Complaint should be dismissed for failure to state a claim.

**III.    The PAA and Federal Regulations Preempt Plaintiffs' Purported State-Law Claims.**

ComEd joins and incorporates Cotter's arguments as to Plaintiffs' preemption arguments and purported state-law claims.  As Cotter explains, the PAA and federal regulations preempt all of Plaintiffs' claims.  *See, e.g.*, *Halbrook*, 888 F.3d at 974 ("Congress created a federal cause of action for public-liability claims concerning nuclear incidents"); *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 721 (6th Cir. 2021) ("the Act leaves 'no room' for state law causes of action arising from a nuclear incident"; "a plaintiff 'can sue under the Price-Anderson Act, as amended, or not at all'" (citation omitted)); *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013) ("*McClurg I*") (same).

Moreover, because Plaintiffs have alleged nothing against ComEd to show any legal duty or standard of care owed to Plaintiffs by ComEd—or any breach of that legal duty or standard by ComEd—Plaintiffs have not stated any claim under any law, state or federal.

13

## CONCLUSION

For these reasons, Plaintiffs' First Amended and Supplemental Complaint should be dismissed for failure to state a claim against Defendant Commonwealth Edison Company.

Dated: May 12, 2023

Respectfully submitted,

*/s/ Brian O. Watson*
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700
bwatson@rshc-law.com
ljaffe@rshc-law.com
docketdept@rshc-law.com

Jennifer Steeve, #308082CA
RILEY SAFER HOLMES & CANCILA LLP
100 Spectrum Center Drive, Suite 440
Irvine, CA 92618
(949) 359-5515
jsteeve@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT COMMONWEALTH EDISON COMPANY**

**CERTIFICATE OF SERVICE**

      I certify that on May 12, 2023, these papers were filed through the CM/ECF system, which will automatically serve an electronic copy upon all counsel of record.

      Respectfully submitted,

      */s/ Brian O. Watson*
      Brian O. Watson, #68678MO