# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| NIKKI STEINER MAZZOCCHIO and ANGELA STEINER KRAUS,<br><br>   Plaintiffs,<br><br>  v.<br><br>COTTER CORPORATION et al.,<br><br>   Defendants. | Case No. 4:22-cv-00292-MTS |

## DEFENDANT COTTER CORPORATION (N.S.L.)'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

RILEY SAFER HOLMES & CANCILA LLP
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
docketdept@rshc-law.com

RILEY SAFER HOLMES & CANCILA LLP
Jennifer Steeve, #308082CA
100 Spectrum Center Drive, Suite 440
Irvine, CA 92618
(949) 359-5515 (main)
(312) 471-8701 (fax)
jsteeve@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)**

## **INTRODUCTION**

Plaintiffs' response confirms that their First Amended and Supplemental Complaint ("Amended Complaint" or "FAC") fails to allege a "public liability action" under the Price-Anderson Act ("PAA") against Defendant Cotter Corporation (N.S.L.) ("Cotter"). Plaintiffs' purported state-law "subpart" claims also fail because they can sue under the PAA or *not at all*.

Plaintiffs devote most of their response to rehashing, and apparently preserving, arguments that this Court and the overwhelming weight of authority have already rejected. Opp. at 1–14, ECF No. 66. Using a 1984 Supreme Court case interpreting a prior version of the PAA and a fact-bound Tenth Circuit case that does not involve a PAA claim, Plaintiffs argue that the PAA imports state law standards of care into their federal claim. *See* Opp. at 1–14. But Plaintiffs cite no decision that ever accepted this argument. *Id.* Indeed, as the courts have uniformly held when presented with this precise argument, the PAA, as amended in 1988, transforms Plaintiffs' allegations into a federal claim for which federal regulations govern the standard of care. Plaintiffs' counsel are keenly aware of this precedent because they have presented and lost these same arguments in courts across the country.

Plaintiffs misunderstand the PAA's extraordinary preemptive force, which operates in two ways. *First*, under its unique preemption provision, the PAA converts any "public liability action" arising from a "nuclear incident" into a federal claim, for which "the substantive rules for decision . . . shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section." 42 U.S.C. § 2014(hh). *Second*, because the PAA is part of a comprehensive federal regime that preempts states from regulating radiation safety, virtually every court that has reached the issue has held

that state tort law standards of care are "inconsistent with" and thus preempted by the federal regulations.

Accordingly, Plaintiffs' Amended Complaint fails because they have not alleged two essential elements of their PAA claim: (1) Cotter's breach of the levels of radiation permitted by federal regulations in effect at the time of its alleged conduct (i.e., a breach of the federal standard of care); and (2) Plaintiffs' exposure to this radiation specifically released by Cotter in excess of the background level. Nor can Plaintiffs' purported state-law "subpart" claims make up for Plaintiffs' failure to allege their PAA claim because, as this Court has held, Plaintiffs can sue under the PAA or *not at all*. Plaintiffs' Amended Complaint therefore should be dismissed.

## ARGUMENT

I. **The Federal Standard of Care Applies to Plaintiffs' Public Liability Action Under the PAA.**

   A. **The PAA Converts All of Plaintiffs' Claims to Federal Law for the Entire Action, Not Just for Federal Jurisdiction.**

In their Amended Complaint, Plaintiffs "affirmatively allege a 'public liability action' arising from 'nuclear incident'" under the PAA. Opp. at 2. The PAA thus converts their allegations into a federal action. 42 U.S.C. § 2014(hh) ("[a] public liability action *shall be deemed to be an action arising under* section 2210 of this title") (emphasis added). This means, quite simply, that Plaintiffs can only have a federal claim. *See, e.g.*, *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 (1999) (the PAA "transforms into a federal action 'any public liability action arising out of or resulting from a nuclear incident,' § 2210(n)(2)"); *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 974 (8th Cir. 2018) (same); *In re Cotter Corp., (N.S.L.)*, 22 F.4th 788, 793 (8th Cir. 2022), *cert. denied sub nom. Banks v. Cotter Corp.*, 143 S. Ct. 422 (2022) (same, quoting *Halbrook*); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 194 (5th Cir. 2011) (same); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099–1100

2

(7th Cir. 1994), *cert. denied*, 512 U.S. 1222 (1994) ("a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action.").

Contrary to Plaintiffs' arguments (Opp. at 5–6), the "extraordinary" nature of the PAA's preemption provision does not stop at jurisdiction. *See Neztsosie*, 526 U.S. at 485 n.6; *O'Conner*, 13 F.3d at 1098–99. Rather, because Plaintiffs have attempted to state a federal PAA *claim*, they must proceed with that claim under the PAA or not at all. *See Halbrook*, 888 F.3d at 974 ("Congress created a federal cause of action for public-liability claims concerning nuclear incidents"); *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 721 (6th Cir. 2021) ("the Act leaves 'no room' for state law causes of action arising from a nuclear incident"; "a plaintiff 'can sue under the Price-Anderson Act, as amended, or not at all'" (citation omitted)).

### B. The PAA Preempts All "Inconsistent" State Substantive Rules for Decision, Including State Regulation of the Health and Safety Aspects of Radiation.

As mentioned above, the PAA expressly preempts inconsistent state law. 42 U.S.C. § 2014(hh); *see also O'Conner*, 13 F.3d at 1100 ("State law serves as the basis for the cause of action only as long as state law is consistent with the other parts of the Act."). By creating this federal PAA claim, Congress specifically "ensured that all claims resulting from a given nuclear incident would be governed by the same law[.]" *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 856–57 (3d Cir. 1991) ("*TMI I*").

The PAA is also part of a comprehensive and exclusive federal regime that preempts states from regulating nuclear safety. *See, e.g.*, *Pac. Gas & Elec. Co. v. State Energy Res. Conserv.*, 461 U.S. 190, 205, 208, 212 (1983) ("the safety of nuclear technology was the

3

exclusive business of the federal government").[1] That federal regime occupies "the entire field of nuclear safety concerns." *TMI I*, 940 F.2d at 858; *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) ("'state regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law'" (quoting *O'Conner*, 13 F.3d at 1105)). And that federal regime avoids "put[ting] juries in charge of deciding the permissible levels of radiation exposure . . . — issues that have explicitly been reserved to the federal government." *In re Hanford Nuclear Reserv. Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008) (quotations omitted).

Among other things, the "federal nuclear safety regulations are part of this statutory scheme." *O'Conner*, 13 F.3d at 1105; *see also TMI I*, 940 F.2d at 856–60. The Atomic Energy Commission ("AEC") and later the Nuclear Regulatory Commission ("NRC") developed these federal regulations "to establish standards for the protection of [nuclear plant] licensees, their employees, *and the general public* against radiation hazards." *In re TMI*, 67 F.3d 1103, 1110 (3d Cir. 1995), *cert. denied*, 516 U.S. 1154 (1996) ("*TMI II*") (emphasis added). These federal regulations, which the AEC and NRC have amended multiple times, are "based upon extensive scientific and technical investigation," *id.* (quoting 25 Fed. Reg. 8595, 8595 (1960)), and "represent the considered judgment of the relevant regulatory bodies—the Federal Radiation Council, EPA, AEC, and NRC—on the appropriate levels of radiation to which the general public may be exposed." *Id.* at 1113–14.

Despite Plaintiffs' effort to confine the PAA with more limited common law preemption nomenclature, Opp. at 3–5, 8–10, the Supreme Court has explained that the PAA's statutory preemption provision is extraordinarily unique and resembles complete preemption. *Neztsosie*,

---

[1] Plaintiffs argue that Cotter overstates the significance of holding in *Pac. Gas & Elec. Co.* in light of *Cook* and *Silkwood*. Opp. at 8–9. Cotter addresses *Cook* and *Silkwood* in Sections I(D) & (E), below.

4

526 U.S. at 484 n.6 (noting the PAA's "unusual preemption provision" and "extraordinary" preemptive force resembling "complete pre-emption") (quotation omitted); *see also TMI I*, 940 F.2d at 859 ("any state duty would infringe upon pervasive federal regulation in the *field* of nuclear safety, and thus *conflict* with federal law") (emphasis added); *O'Conner*, 13 F.3d at 1105 (same).

   C. **State Law Standards Are Inconsistent with the PAA.**

  Plaintiffs argue that the Missouri state law standards associated with their purported "subpart" claims—from negligence to disparate state statutes to strict liability—are properly imported into their federal PAA claim by 42 U.S.C. § 2014(hh). *See, e.g.*, Opp. at 3–14. They are mistaken. One clear consequence of the PAA and the "pervasive federal regulation in the field of nuclear safety" is that Plaintiffs' "rights will necessarily be determined, in part, by reference to federal law, namely the federal statutes and regulations governing the safety and operation of nuclear facilities." *TMI I*, 940 F.2d at 860.

  As noted above, the overwhelming weight of authority—including virtually every Circuit Court of Appeals to decide this issue—has held that state law standards are inconsistent with the PAA and that federal regulations provide the standard of care in PAA actions:

- **Third Circuit:** "After reviewing the regulations, the reasons behind their promulgation, and the relevant case law, we hold that §§ 20.105 and 20.106 constitute the federal standard of care." *TMI II*, 67 F.3d at 1113; *accord TMI I*, 940 F.2d at 859 ("states are preempted from imposing a non-federal duty in tort").

- **Fifth Circuit:** Plaintiffs' "claims under Texas law are inconsistent with the PAA, and they cannot establish public liability, as they must in order to prevail in their public liability action." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 197 (5th Cir. 2011).

- **Sixth Circuit:** "[B]ecause we agree with the analyses of preemption in *O'Conner* and *TMI II*, we hold that the Price–Anderson Act preempts Nieman's state law claims; the state law claims cannot stand as separate causes of action." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997).

5

- **Seventh Circuit:**  The "federal regulations must provide the sole measure of the defendants' duty in a public liability cause of action." *O'Conner*, 13 F.3d at 1105.

- **Eighth Circuit:**  "The Third Circuit and the Seventh Circuit have addressed similar questions and explained *convincingly* why claims under the Act are claims under federal rather than state law." *Halbrook*, 888 F.3d at 977 (citing *TMI I*, 940 F.2d at 855, and *O'Conner*, 13 F.3d at 1099) (emphasis added).[2]

- **Ninth Circuit:**  "Every federal circuit that has considered the appropriate standard of care under the PAA has concluded that nuclear operators are not liable unless they breach federally-imposed dose limits." *In re Hanford*, 534 F.3d at 1003; *accord Golden v. CH2M Hill Hanford Grp., Inc.*, 528 F.3d 681, 683 (9th Cir. 2008) ("the Price-Anderson Act . . . preempts all state-law claims for injury resulting from nuclear incidents").

- **Tenth Circuit:**  The "state attempts to regulate in this area are preempted." *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1503 (10th Cir. 1997).

- **Eleventh Circuit:**  The "federal safety regulations conclusively establish the duty of care owed in a public liability action." *Roberts*, 146 F.3d at 1308.

Contrary to Plaintiffs' contention, Opp. at 1, 5–7, which every Court mentioned above also rejected, the PAA—particularly 42 U.S.C. § 2210—need not contain text that categorizes the statute's supremacy over every minute facet of state law. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 216–17 (2004) ("The existence of a comprehensive remedial scheme can demonstrate an 'overpowering federal policy' that determines the interpretation of a statutory provision designed to save state law from being pre-empted."). In *Aetna Health*, for example, the plaintiffs attempted to avoid the preemptive force of ERISA by seeking remedies authorized by a state statute that were not expressly addressed in ERISA. *Id.* at 214–15.  The Supreme Court rejected the plaintiffs' attempt in light of ERISA's "comprehensive remedial scheme." *Id.*

---

[2] Although Plaintiffs cite *Halbrook* for the proposition that § 2014(hh) "incorporates substantive state-law standards for liability," Opp. at 12–13 (quoting *Halbrook*, 888 F.3d at 974), this proposition is incomplete.  As *Halbrook* notes, § 2014(hh) incorporates state-law standards "unless such law is inconsistent with the provisions" of the PAA. *Halbrook*, 888 F.3d at 974.

6

at 216–17.³  Here, too, the PAA's comprehensive remedial scheme around nuclear safety—a scheme which includes the federal regulations—demonstrates an overpowering federal policy that requires application of the federal standards.  *See* above § (I)(B); *see also In re Hanford*, 534 F.3d at 1003; *Roberts*, 146 F.3d at 1308; *O'Conner*, 13 F.3d at 1105.

Indeed, as noted above, this Court, when faced with the precise question at issue here—and the precise material, and Plaintiffs' precise argument against Cotter—followed the "clear majority opinion on the issue," that "imposing a non-federal duty [of care] would conflict with federal law."  *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1187 (E.D. Mo. 2013) ("*McClurg I*").  *McClurg* involved hundreds of PAA plaintiffs alleging that Cotter (among others) released the same radioactive materials involved in this case.  *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AFG, 2017 WL 2929444, at *1 (E.D. Mo. July 7, 2017) ("*McClurg III*"); *McClurg I*, 933 F. Supp. 2d at 1181–84.  This Court dismissed all of the plaintiffs' state law claims, struck dozens of the plaintiffs' claims for failure to plead "breach of the applicable federal dose limit," *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2015 WL 867455, at *7 (E.D. Mo. Feb. 27, 2015), *aff'd*, *Halbrook*, 888 F.3d at 971 ("*McClurg II*"), and confirmed that 10 C.F.R. §§ 20.105 and 20.106 must provide the standard of care relevant to Cotter's alleged conduct between 1969 and 1973.  *McClurg III*, 2017 WL 2929444, at *5–6; *see also McClurg I*, 933 F. Supp. 2d at 1187 (collecting cases, and finding that the district courts "overwhelmingly hold that an essential element of a public liability action is that each plaintiff's exposure exceeded the federal dose limits").  As this Court summed up in dismissing the

---

³ Contrary to Plaintiffs' position, *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894 (2019), which holds that the PAA does not and never intended to regulate mining, *id.* at 1901–02, has no bearing on the exclusivity of the PAA's regulation of radiation safety standards.  There is no mine, let alone state mining laws, at issue here.  *See* Opp. at 4, 7–9.

7

plaintiffs' state law claims, a "plaintiff who asserts any claim arising out of a 'nuclear incident' as defined in the PAA, 42 U.S.C. § 2014(q), can sue under the PAA or not at all." *McClurg I*, 933 F. Supp. 2d at 1186 (citations omitted).

For these reasons and the specific conflicts noted in Cotter's opening brief (Mem. at 12–14), state law standards are inconsistent with, and preempted by, the PAA and federal safety regulations, and thus cannot apply to Plaintiffs' public liability action.

### D. *Cook*, an Idiosyncratic Case that Ultimately Does Not Involve a Nuclear Incident Under the PAA, Is Inapposite.

Plaintiffs insist that the Court should rely on *Cook* rather than the decisive weight of authority described above. Opp. at 1, 6–7 (citing *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127 (10th Cir. 2010) ("*Cook I*"), and *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1092 (10th Cir. 2015) ("*Cook II*")). But the *Cook* line of cases not only recognizes that it cuts against every other circuit court to decide this issue, *Cook I*, 618 F.3d at 1144 n.19, but it is also distinguishable legally and factually given the "curious tactical decision" of the defendants. *Cook II*, 790 F.3d at 1090.

In *Cook*, the defendants made that "curious tactical decision" to appeal an adverse PAA jury verdict by arguing that the case did *not* involve a nuclear incident under the PAA. *Cook II*, 790 F.3d at 1090. The Tenth Circuit agreed that the plaintiffs had failed to prove their PAA claim and remanded. *Cook I*, 618 F.3d at 1132–33, 1139–40, 1142. The *Cook* defendants also argued that federal nuclear safety standards should have applied to the plaintiffs' action, but the defendants never identified "particular federal regulations or statutes Defendants believe actually conflict with any applicable state tort standards of care during the relevant periods." *Id.* at 1143–44. Thus, despite the authority of five circuit courts to the contrary, the Tenth Circuit chose not to address the district court's ruling of whether state standards of care applied. *Id.* at 1144. On

8

remand, the Tenth Circuit instructed the defendants to identify, and the district court to assess, "the particular federal regulations or statutes they believe preempt state law." *Id.*

In *Cook II*, the Tenth Circuit was faced with another appeal after the plaintiffs accepted the defendants' position that the case did not involve a nuclear incident after all under the PAA, and the plaintiffs disavowed their PAA claim in the district court. *Cook II*, 618 F.3d at 1091. Since all parties had agreed that the case did not involve a nuclear incident, the Tenth Circuit never addressed "what happens in the event of a nuclear incident." *Id.* at 1098. The Tenth Circuit also explained that given the defendants' "curious" position, they had waived their express, implied, conflict, and field preemption arguments. *Id.* at 1092–93 ("the only preemption argument . . . is the suggestion that the Price-Anderson Act expressly preempts . . . the field of claims that assert but fail to prove a nuclear incident" yet "the defendants forfeited any contention along these lines"); *id.* at 1092 (defendants "fail to invoke implied preemption doctrine and even appear to disclaim reliance on it"); *id.* ("Neither do the companies depend on more modest conflict preemption principles"); *id.* at 1094 (defendants "forfeited any field preemption argument long ago"). Therefore, *Cook II* stands for the unremarkable proposition that when the parties agree that the PAA does *not* apply and waive any preemption arguments, the PAA cannot preempt state law claims for relief. *Id.*

Here, unlike in *Cook*, Plaintiffs do "affirmatively allege a 'public liability action' arising from 'nuclear incident'" under the PAA, Opp. at 2, and Cotter unquestionably has raised preemption and identified the applicable federal regulations that are inconsistent with, and thus preempt, state law standards. *See Matthews*, 15 F.4th at 724–25 ("Plaintiffs' claims *do* stem from a nuclear incident, meaning they are preempted. In other words, unlike in *Cook II*, where

9

the Act's preemptive scope over a 'nuclear incident' was a 'beside-the-point point,' here it is the entire point.") (emphasis added).

Courts around the country have also repeatedly rejected Plaintiffs' argument—including by Plaintiffs' own counsel—that, pursuant to *Cook*, state tort law governs public liability actions for nuclear incidents. *See, e.g.*, *Steward v. Honeywell Int'l Corp.*, 469 F. Supp. 3d 872, 879 (S.D. Ill. 2020) (rejecting argument by same counsel as Plaintiffs here that "state tort law can govern lesser nuclear occurrences."); *McGlone v. Centrus Energy Corp.*, No. 2:19-CV-02196, 2020 WL 4431482, at *5 (S.D. Ohio July 31, 2020) (same, and dismissing state-law claims plaintiffs purportedly asserted in the alternative to their PAA claim); *McGlone* v. *Centrus Energy Corp.*, No. 2:19-cv-02196, 2022 WL 974381, at *7 (S.D. Ohio Mar. 31, 2022) (same); *see also Moistner v. Aerojet Rocketdyne Inc.*, 585 F. Supp. 3d 1233, 1236–38 (C.D. Cal. 2022); *Pinares v. United Techs. Corp.*, No. 10-80883-CIV, 2018 WL 10502426, at *4 (S.D. Fla. Nov. 14, 2018), *aff'd*, 973 F.3d 1254 (11th Cir. 2020) ("*Cook* only addresses injuries not cognizable under the PAA," and "did not hold that a plaintiff can pursue both a PAA and state law claim simultaneously"); *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 770–71 (E.D. Tenn. 2012).

Because *Cook* has been consistently distinguished and rejected by circuit and district courts, and Plaintiffs have cited no case bolstering it, the Court should reject the Plaintiffs' arguments based entirely on it.

E. *Silkwood* Addressed Neither the PAA's Standard of Care Nor Its Preemption Provision, Which Was Enacted Years Later.

Plaintiffs also mistakenly argue that *Silkwood*, a Supreme Court opinion from 1984, "establish[es] two things: 1) the Atomic Energy Act does not preempt state law standards of care, and 2) the PAA did not preempt state law standards of care prior to the 1988 amendments."

10

Opp. at 8–10. But *Silkwood*, which analyzed whether the 1984 PAA allowed punitive damages, addressed neither the standard of care nor the PAA's 1988 preemption provision.

As the Eighth Circuit has made clear, *Silkwood* is irrelevant because it was decided before the 1988 PAA Amendments and, critically, 42 U.S.C. § 2014(hh). *See, e.g.*, Opp. At 10 (conceding that "*Silkwood* does not address 2014(hh) and the 1988 amendments"); *In re Cotter*, 22 F.4th at 796 ("*Silkwood* was decided in 1984, four years before the 1988 PAA Amendments"); *see also Matthews*, 15 F.4th at 721 ("*Silkwood*, for one, was decided before Congress amended the Act in 1988 to extend the Act's scope to cover 'public liability actions' like this one").

Contrary to Plaintiffs' contention, § 2014(hh) also did not "reaffirm *Silkwood*," Opp. at 11. Rather, it "placed an overlay of federal law upon the rights and remedies previously available under state law." *O'Conner*, 13 F.3d at 1101. And through these changes, the 1988 PAA "Amendments Act makes pointedly clear that any tension between federal standards and state liability standards is to be resolved so as to avoid inconsistency with the Price–Anderson Act." *Id.* at 1105 n.13.

Moreover, even assuming *Silkwood* has some residual value after the 1988 PAA amendments, *Silkwood* was a damages case that is silent about the standard of care in a PAA action. *See* Opp. at 9–10 (quoting *Silkwood* references to "damages" and "remedies," 464 U.S. at 239, 256–58). According to *Silkwood*, since the PAA did not "provide a federal remedy," *Silkwood*, 464 U.S. at 251, it allowed both compensatory and punitive damages. *Id.* at 257–58. *Silkwood*'s damages opinion establishes nothing with respect to the standard of care, a distinct element of a PAA claim. *O'Conner*, 13 F.3d at 1104 ("In *Silkwood*, the Court distinguished state standards for nuclear safety from state tort remedies"); *See also TMI II*, 67 F.3d at 1119

11

(elements of PAA claim); *In re TMI Litig.*, 193 F.3d 613, 659 ("*TMI III*") (same); *McClurg I*, 933 F. Supp.2d at 1187 (same); *McClurg III*, 2017 WL 2929444, at *6 (same).

Nor can *Silkwood*'s damages analysis extend to the standard of care. While the defendant in *Silkwood* was "unable to point to anything in the legislative history or in the regulations that indicates that punitive damages were not to be allowed," 464 U.S. at 255, the federal regulations set the standard of care for Plaintiffs' PAA action. *See* above § I(C). Although the *Silkwood* Court "found that there was a clear congressional intent to leave state *remedies* intact," 464 U.S. at 624, it also nodded to Congress's intent to preempt state standards of care, *id.* at 240–41 ("Last term, this Court examined the relationship between federal and state authority in the nuclear energy field and concluded that states are precluded from regulating the safety aspects of nuclear energy." (quoting *Pac. Gas & Elec. Co.*, 103 S. Ct. at 1724)).

Because *Silkwood* is both obsolete and inapposite, it has no bearing on the outcome of this case.

II.     **Plaintiffs Have Failed to Allege that Cotter Breached the Federal Standard of Care.**

In their alternative argument, Plaintiffs concede the elements of their federal PAA claim, Opp. at 14, including that they must allege that Cotter breached the governing federal regulations of 10 C.F.R. §§ 20.105 and 20.106. Opp. at 15 (quoting *McClurg III*, 2017 WL 2929444, at *5). But the hodgepodge of allegations that Plaintiffs identify in their response cannot satisfy this element. *See* Opp. at 15–17.

Plaintiffs' allegations identify "various conclusory claims of 'violations' and 'non-compliance,'" that, like in *Adkins*, "totally fail to provide any factual allegations which would support their allegation of the breach of an applicable federal safety standard." 960 F. Supp. 2d at 772–73; Opp. at 15–17 (citing FAC ¶¶ 19, 47–49, 53, 59, 61). None of their allegations, which lump Cotter together with all of the other defendants and their alleged releases, support

12

Plaintiffs' claim that *Cotter* breached the federal standard of care allegedly owed to Plaintiffs. *See* Opp. at 16 (citing FAC ¶¶ 10, 11, 112).  As this Court has held, such allegations that multiple defendants breached a standard in the aggregate "provide[] no factual basis to distinguish their conduct [and] . . . fail[] to comply with Fed. R. Civ. P. 8(a)."  *Reavis v. St. Louis Cnty., MO*, No. 4:19-CV-02916-MTS, 2020 WL 6822571, at *3 (E.D. Mo. Nov. 20, 2020) (Schelp, J.) (quotation omitted).

At best, Plaintiffs are left with paragraph 52 in their Amended Complaint, which states that Cotter's "acts and omissions" violated federal regulations, "including but not limited to" 10 C.F.R. §§ 20.105 and 20.106.  Because this allegation does not commit to a standard of care allegedly owed to Plaintiffs by Cotter, or to any facts supporting the allegation, paragraph 52 is not sufficient to allege a breach of the federal standard of care against Cotter.  *See* Mem. at 7–8 and cases cited therein; *McClurg II*, 2015 WL 867455, at *7 (dismissing 29 plaintiffs for failure to allege breach of federal dose limit); *Roberts*, 146 F.3d at 1308 (affirming dismissal of public liability action because plaintiffs failed to allege breach of federal standard of care); *cf. McClurg III*, 2017 WL 2929444, *4 (declining to dismiss complaint in part because the plaintiffs alleged that Cotter breached a specific numerical federal standard); *Metz v. Mallinckrodt LLC*, No. 4:17-cv-00968, ECF No. 1, ¶¶ 14–21, 61 (complaint at issue in *McClurg III*).

**III.    Plaintiffs Have Failed to Allege Exposure Above the Background Level to Excessive Radiation Released by Cotter.**

Not only have Plaintiffs failed to show that Cotter breached any federal standard of care allegedly owed to Plaintiffs, but they have also failed to allege that Plaintiffs were ever exposed to excessive radiation allegedly released by Cotter above the normal background level in the environment.  *Compare* Opp. at 17–18 *with* Mem. at 9–10.  Plaintiffs point to their group allegations against the "Defendants," Opp. at 17–18 (quoting FAC ¶¶ 20–22), and a general

13

allegation that releases by Cotter invaded *properties* associated with Plaintiffs, not Plaintiffs themselves, *id.* at 18 (quoting FAC ¶ 52).  These formulaic allegations and naked assertions "will not do." *Iqbal*, 556 U.S. at 678.

Plaintiffs also appear to misunderstand the PAA exposure standard.  The PAA requires that Plaintiffs plead and prove exposure to the radiation released by *each* defendant in excess of the normal background level. *McMunn v. Babcock & Wilcox Power Generation Grp.*, 131 F. Supp. 3d 352, 397 (W.D. Pa. 2015), *aff'd*, 869 F.3d 246 (3d Cir. 2017) (citing *TMI III*, 193 F.3d at 659).  This exposure requirement exists because "[e]very person is exposed daily to background radiation from various sources, both natural and man-made." *Id.*; *Butler v. Mallinckrodt LLC*, No. 4:18-CV-01701-AGF, 2022 WL 4598531, at *8 (E.D. Mo. Sept. 30, 2022) ("'Unlike with PCBs, asbestos or tobacco byproducts, we are constantly exposed to radiation on a daily basis.  We are exposed from numerous natural sources including the sun, or naturally occurring radioactive elements such as radon in the ground surrounding our homes.'" (quoting *McMunn*, 869 F.3d at 277)).

Because Plaintiffs have failed to show that they were exposed to radiation—specifically released by Cotter in breach of the federal standards—above the normal background amount, *McMunn*, 131 F. Supp. 3d at 397, their Amended Complaint should be dismissed.

**IV.   The PAA Preempts Plaintiffs' Purported State Law "Subpart" Claims.**

Plaintiffs' purported state law "subpart" claims ultimately fail because they concede in their response that they do not plead their "subpart" claims (A) through (C) for negligence, negligence per se, and strict liability as independent causes of action, and that these "only constitute the theories of liability under Plaintiffs' 'public liability action.'"  Opp. at 6 n.3.  And Plaintiffs do not address, and thus concede, Cotter's arguments with respect to Plaintiffs' punitive damages and civil conspiracy "subpart" claims.  Mem. at 14–15; *Bonhomme Inv.*

14

*Partners, LLC v. Hayes*, No. 4:13CV475 CDP, 2015 WL 2383475, at *2 (E.D. Mo. May 19, 2015) ("plaintiffs fail to address these arguments and so they are presumed to have conceded them").

As described above in Sections I(A) through (C), and in Cotter's opening brief (Mem. at 1–2, 10–14), Plaintiffs' entire suit and all claims must be exclusively brought under federal rather than state law. Because Plaintiffs concede that they have "affirmatively allege[d] a 'public liability action' arising from 'nuclear incident'" under the PAA, Opp. at 2, their claims against Cotter "can be brought under the Act 'or not at all.'" *Matthews*, 15 F.4th at 714, 721, 727–28 (affirming dismissal of state-law claims); *McClurg I*, 933 F. Supp. 2d at 1186 (same, and dismissing state-law claims). For this reason, Plaintiffs' purported state law "subpart" claims should be dismissed with prejudice.

## CONCLUSION

For these reasons, Cotter requests that the Court grant its motion to dismiss Plaintiffs' First Amended and Supplemental Complaint.

Dated: May 12, 2023

Respectfully submitted,

*/s/ Brian O. Watson*
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
docketdept@rshc-law.com

Jennifer Steeve, #308082CA
RILEY SAFER HOLMES & CANCILA LLP
100 Spectrum Center Drive, Suite 440
Irvine, CA 92618
Phone: (949) 359-5515
Fax: (312) 471-8701
jsteeve@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)**

**CERTIFICATE OF SERVICE**

I certify that on May 12, 2023, these papers were filed through the CM/ECF system, which will automatically serve an electronic copy upon all counsel of record.

    Respectfully submitted,

    */s/ Brian O. Watson*
    Brian O. Watson, #68678MO