UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NIKKI STEINER MAZZOCCHINO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:22-cv-292-MTS |
| | ) | |
| COTTER CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the Court are Defendants'[1] Motions to Dismiss, Docs. [58], [60], [62], Plaintiffs' First Amended Complaint, Doc. [44], pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Price-Anderson Act ("PAA"), 42 U.S.C. §§ 2210, *et seq.* Under the PAA, Plaintiffs bring a "public liability action" arising from a "nuclear incident" against four Defendants for damages allegedly arising from exposure to radioactive materials. *See* Doc. [44]. For the reasons that follow, the Court denies Defendants' Motions to Dismiss.

\* \* \* \* \* \* \* \*

Defendants argue the PAA preempts all state-law standards of care in public liability actions arising out of a "nuclear incident." Specific to this action, Defendants argue federal radiation dose levels set by the Nuclear Regulatory Commission ("NRC"), codified in Title 10 Part 20 of the Code of Federal Regulations ("Part 20"), exclusively establish the standard of care in the public liability actions asserted here. But the PAA's "unusual" preemption provision does not fit neatly here. *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 (1999). Given the facts of this

---

[1] The motions to dismiss at issue in this Memorandum and Order are from Defendants Cotter Corporation, Commonwealth Edison Company ("ComEd"), and St. Louis Airport Authority. While Plaintiffs filed suit against a fourth Defendant, DJR Holdings, Inc., the Court previously denied that motion to dismiss. *See Mazzocchino v. Cotter Corp.*, 4:22-cv-292-MTS, 2023 WL 3995146 (E.D. Mo. June 14, 2023).

case, the Court concludes the federal dosage regulations Defendants seek to import here do not provide the exclusive standard of care.

Defendants read into the PAA a blanket standard of care that is not based on any provisions in the PAA. In fact, requiring a *per se* rule that PAA actions must be based on a breach of federal regulations conflicts with the plain language of the PAA, Atomic Energy Act, and federal regulations and causes consequences seemingly contrary to Congressional intent. Moreover, while cases from the Court of Appeals for the Eighth Circuit are not directly dispositive of the precise question before this Court, the Eighth Circuit's most recent PAA decision undermines Defendants' preemption argument here. *See In re Cotter Corp., (N.S.L.)*, 22 F.4th 788 (8th Cir. 2022). Decisions by other circuit courts similarly cast doubt on whether federal dosage regulations supply the exclusive standard of care in all PAA actions. *See Est. of Ware v. Hosp. of the Univ. of Pa.*, 871 F.3d 273, 285, 278 n.3 (3d Cir. 2017); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). The Court concludes that the standard of care to be used in a PAA action must be made on a case-by-case basis and determined under ordinary preemption principles.

Applying this approach to the facts currently before the Court, Part 20 dosage regulations *could* provide the standard of care in some claims against one Defendant, Defendant Cotter Corporation ("Cotter")—the only Defendant licensed by the NRC[2]—but those dosage regulations may not be the exclusive standard of care given the facts of this case and the specific claims against Cotter. As to the other three Defendants, Part 20 dosage regulations do not apply; rather, state-law standards of care will apply unless Defendants are able to identify federal statutes, regulations, or other binding safety standards that controlled their alleged conduct with respect to the class

---

[2] In 1974, the NRC succeeded the Atomic Energy Commission ("AEC"). Thus, the Court will refer to both commissions interchangeably as the NRC.

properties during the relevant time and also show that those federal laws are in "conflict" with the state standards.

I.    **BACKGROUND**

This case concerns claims by Plaintiffs Nikki Steiner Mazzocchio and Angela Steiner Krause under the PAA against four Defendants for damages allegedly arising from exposure to radioactive materials.   Plaintiffs seek damages "related to the processing, transport, storage, handling, and disposal of hazardous, toxic, and radioactive materials . . . in and around St. Louis County, Missouri."  Doc. [44] ¶ 7.

During World War II, Mallinckrodt LLC ("Mallinckrodt") contracted with the federal government to produce radioactive material for the Manhattan Project.[3]  Mallinckrodt stored waste materials at a site near the St. Louis airport, known as the St. Louis Airport Site ("SLAPS").  In 1973, Defendant St. Louis Airport Authority ("Airport") purchased SLAPS and remains the current owner.   Mallinckrodt eventually moved some waste to another site in Hazelwood, Missouri, known as "Latty Avenue."[4]  Between 1969 and 1973, Defendant Cotter possessed and used nuclear waste at Latty Avenue, under a material source license issued by the federal government.[5]  Cotter is the only named Defendant to have a license issued by the NRC.  Neither SLAPS nor Latty Avenue are alleged to be nuclear plants, facilities regulated by the NRC, or NRC-licensed facilities.  Plaintiffs filed suit against Defendants Cotter, Airport, and two other entities—

---

[3] No Defendant in this action is subject to Mallinckrodt's PAA indemnification agreement.  Doc. [44] ¶ 143.

[4] The radioactive wastes allegedly include (1) pitchblende raffinate, (2) Colorado raffinate, (3) barium sulfate (unleached), (4) barium cake (leached), and (5) miscellaneous residues stored in deteriorated drums.  Doc. [44] ¶ 43.

[5] Plaintiffs allege Cotter never maintained financial protection pursuant to the PAA nor did it have an indemnification agreement pursuant to the PAA.  Doc. [44] ¶ 46.  Further, Cotter never conducted any activities related to Mallinckrodt's contract, or any other contract, with the Government.  *Id.* ¶ 51.  Plaintiffs also allege Cotter terminated its license under false pretenses by misrepresenting that Latty Avenue was decontaminated and "conspired" with Defendant ComEd "to perpetuate the fraud that there was no radioactive contamination remaining."  *Id.* ¶¶ 14, 57–61.

but not Mallinckrodt—alleging nuclear waste materials from the various St. Louis sites leaked into Coldwater Creek and its 100-year floodplain in St. Louis County, damaging their health.

Plaintiffs originally filed this action in Missouri state court alleging state law causes of action pursuant to Missouri law.  Cotter removed to federal court, Doc. [1], based on a recent decision from the Eighth Circuit that determined that based on the statute's plain language "the PAA provides federal question jurisdiction over all 'nuclear incidents,' regardless of whether the defendant had an applicable license or indemnity agreement." *In re Cotter*, 22 F.4th at 793.  In April 2022, the Court stayed this action pending the Supreme Court's decision on whether to grant a Petition for Writ of Certiorari and review the Eighth Circuit's decision. Doc. [27].  Following the Supreme Court's denial of the Writ Petition, 143 S. Ct. 422, and given the Eighth Circuit's decision, Plaintiffs filed the Amended Complaint ("Complaint"), which is the subject of these Motions to Dismiss, to affirmatively allege a "public liability action" arising from a "nuclear incident" under the PAA. *See* Doc. [44].  In the instant Motions, Defendants seek to dismiss the entire action against them for failure to state a claim under the PAA.[6]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  For a pleading to state a claim for relief it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The complaint must contain facts sufficient to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570  (2007). A claim has "facial plausibility" when the plaintiff pleads factual content that allows the court to

---

[6] The Court notes Defendant ComEd makes an additional argument in its motion to dismiss: that Plaintiffs improperly seek to hold ComEd liable for Cotter's conduct solely because of ComEd's status as Cotter's parent company.  Doc. [61] at 9–12; Doc. [80] at 2–7.  The Court concludes Plaintiffs bring allegations against ComEd outside of its parent status, and therefore, the Court concludes, at this stage of the litigation, Plaintiffs stated claims against ComEd.

draw the "reasonable inference" that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and makes all reasonable inferences in favor of the nonmoving party. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). However, the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## III.    DISCUSSION

Before the Court begins its analysis, some procedural background is necessary, given the "unusual" framework of the PAA. *Neztsosie*, 526 U.S. at 484. In 1957, Congress, as part of the Atomic Energy Act ("AEA"), enacted the PAA "to encourage private commercial nuclear research and energy production," *In re Cotter*, 22 F.4th at 794 (citing *Neztsosie*, 526 U.S. at 476), and spread "potential liability among private insurance, the federal government, and licensees," *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 718 (6th Cir. 2021). In 1988, Congress amended the PAA ("1988 Amendments") in response to the Three Mile Island accident and the wave of litigation it prompted. *See* Pub. L. No. 100-408, 102 Stat. 1066 (1988); *Neztsosie*, 526 U.S. at 477. Because that accident did not fit within the PAA's definition of an "extraordinary nuclear occurrence" ("ENO"), there was no mechanism to consolidate the cases in federal court. *Neztsosie*, 526 U.S. at 477 (citing S. Rep. 100-218, at 13 (1987)). Congress therefore amended the PAA to provide federal "district courts original and removal jurisdiction" over not just ENOs, but for "any

5

public liability actions arising out of or resulting from a nuclear incident."[7]  *Neztsosie*, 526 U.S. at 477 (citing 42 U.S.C. §§ 2210(n)(2), 2014(hh)).   While the 1988 Amendments "expressed an unmistakable preference for a federal forum," *Neztsosie*, 526 U.S. at 484 (citing 42 U.S.C. § 2210(n)(2)), Congress required those actions to be based on "the law of the State in which the nuclear incident involved occurs," 42 U.S.C. § 2014(hh) & Pub. L. No. 100-408, 102 Stat. 1066 (1988) ("amended by adding . . . 'hh. . . . substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs.'").   Essentially, the "clear purpose of the 1988 Amendments" was "to broaden federal jurisdiction to encompass lawsuits arising from nuclear accidents that are not ENOs." *In re Cotter*, 22 F.4th at 795.

Here, Plaintiffs assert a public liability action arising from a "nuclear incident" under the PAA.  A chain of definitions defines this term.  A "public liability action" is "any suit asserting public liability." 42 U.S.C. § 2014(hh).  "Public liability" means "any legal liability arising out of or resulting from a nuclear incident." *Id.* § 2014(w).  "Nuclear incident," in turn, means "any occurrence, including an extraordinary nuclear occurrence," ("ENO") causing "bodily injury" or property damage and arising out of "radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." *Id.* § 2014(q).  Because the PAA did not define "occurrence," as used in the definition of "nuclear incident," *see* 42 U.S.C. § 2014(q), the Eighth Circuit applied the term's "ordinary meaning" and held that "occurrence" means "something that takes place" or "happens." *In re Cotter*, 22 F.4th at 794, 796; *see also Est. of Ware v. Hosp. of the Univ. of Pa.*, 871 F.3d 273, 281 (3d Cir. 2017) (adopting same interpretation); *Matthews*, 15 F.4th at 722–23 (same).  The definition of "nuclear incident" is "facially quite broad." *In re Cotter*, 22 F.4th at 794 (quoting *Est. of Ware*, 871 F.3d at 280).

---

[7] The PAA now provides the mechanics for consolidating such actions, 42 U.S.C. § 2210(n)(2), for managing them once consolidated, *id.* § 2210(n)(3), and for distributing limited compensatory funds, *id.* § 2210(*o*).

The structure of the PAA has been described as "complicated," "interlocking," and "us[ing]" words in unintuitive ways." *Est. of Ware*, 871 F.3d at 280. So, it is no surprise the Supreme Court described the PAA as containing an "unusual preemption provision." *Neztsosie*, 526 U.S. at 484. Nowhere does the PAA expressly preempt state law. Rather, courts have interpreted two provisions in the PAA to affect preemption. *See* 42 U.S.C. § 2014(hh) & 42 U.S.C. § 2210(n)(2).[8] As explained below, the PAA preempts state law in two different respects.

First, the PAA preempts state law causes of action that fit the definition of a "public liability action."[9] *See* 42 U.S.C. §§ 2014(hh),[10] 2210(n)(2);[11] *cf. Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 974, 977 (8th Cir. 2018) ("Congress spoke clearly when stating such 'action shall be deemed to be an action arising under' federal law" and thus, "created a federal cause of action for public-liability claims concerning nuclear incidents"). Essentially, the PAA "transforms into a federal action 'any public liability action arising out of or resulting from a nuclear incident.'" *Neztsosie*, 526 U.S. at 484 (citing 42 U.S.C. § 2210(n)(2)). In other words, "for claims arising from a nuclear incident, a plaintiff 'can sue under the Price-Anderson Act, as amended, or not at all.'" *Matthews*, 15 F.4th at 721; *accord In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2007) ("The PAA is the exclusive means of compensating victims for any and all claims arising

---

[8] But, the Court notes Section 2210(n)(2) does <u>not</u> preempt state law, and such characterization is "a seemingly misleading classification given the jurisdictional nature of the doctrine." *Matthews*, 15 F.4th at 720–21.

[9] The Eighth Circuit has not expressly held the PAA is the exclusive means of bringing state-law claims for a "nuclear incident," such that the PAA preempts state law claims. But the parties agree on this point, and other circuit courts have held so too. *See, e.g., Matthews*, 15 F.4th at 721; *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2007); *Pinares v. United Techs. Corp.*, 973 F.3d 1254, 1260 (11th Cir. 2020); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

[10] 42 U.S.C. § 2014(hh) ("A public liability action shall be deemed to be an action arising under section 2210 of this title.").

[11] 42 U.S.C. § 2210(n)(2) ("With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction. . . . [A]ny such action pending in any State court . . . shall be removed or transferred to the United States district court having venue under this subsection.").

out of nuclear incidents.").   The parties agree on this point—meaning, that assuming Plaintiffs' action is one arising out of a "nuclear incident,"[12] as defined in 42 U.S.C. § 2014(q), the PAA preempts Plaintiffs' state law claims.

Second, the PAA preempts substantive state law, but *only* to the extent it is "inconsistent" with Section 2210.  *See* 42 U.S.C. § 2014(hh) ("A public liability action shall be deemed to be an action arising *under section 2210 of this title*, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of *such section*." (emphasis added)).   Notably, a public liability action is "one decided under substantive state-law rules."  *Neztsosie*, 526 U.S. at 485 n.6; *accord Halbrook*, 888 F.3d at 974 (explaining a public liability action is a "federal cause of action" that "incorporates substantive state-law standards for liability").

Defendants mention a third type of preemption: complete preemption.[13]   While the PAA may "resemble" complete preemption, *Neztsosie*, 526 U.S. at 484 n.6, the Supreme Court distinguished the PAA from those "complete preemption" statutes because federal law does not provide the "exclusive cause of action" in the PAA.  *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).   Quite to the contrary, the PAA preserves state rules of decision, *see* 42 U.S.C. § 2014(hh), unlike in true complete preemption statutes where federal law "wholly displaces the state-law cause of action."[14]   *Anderson*, 539 U.S. at 8.  This nuance is mirrored throughout circuit

---

[12] The parties here do not argue Plaintiffs failed to plead a "public liability action" arising out of a "nuclear incident," as defined by the PAA.

[13] "Complete preemption is [] quite rare." *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 248 (8th Cir. 2012).  The Supreme Court has found complete preemption in just three statutory settings: the Labor Management Relations Act (LMRA), *see Avco Corp. v. Machinists*, 390 U.S. 557 (1968), the Employee Retirement Income Security Act (ERISA), *see Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987), and the National Bank Act, *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) (discussing complete preemption).

[14] The Court notes that during the 1988 Amendments, when Congress amended the jurisdictional grant in 42 U.S.C. § 2210(n)(2) to apply to all "nuclear incidents," it also added the substantive state-law clause in Section § 2104(hh).

courts.  *See Matthews*, 15 F.4th at 721 ("At first blush, the Price-Anderson Act would seem to fit the mold of complete preemption . . . . [but] [b]y incorporating state law into the federal action, the Act does not entirely displace state law, making the Act unlike other instances of complete preemption."); *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1097 (10th Cir. 2015) (Gorsuch, J.) (explaining the PAA is not a "complete preemption" statute because "while the Act provides a federal forum it also does much to preserve state rules of decision").  Given this structure, the Supreme Court noted the PAA is "unusual" compared to true complete preemption statutes.  *See Neztsosie*, 526 U.S. at 484 n.6 (citing 42 U.S.C. § 2014(hh)).

The Eighth Circuit's most recent PAA decision supplies additional precedent for analyzing issues within the PAA framework.  In *In re Cotter* the Eighth Circuit considered whether the PAA applied to a plaintiffs' claims where the defendant was not part of an indemnity agreement related to its use of radioactive materials.  The Eighth Circuit concluded the PAA applied and held there can be a "nuclear incident," as defined in 42 U.S.C. § 2014(q), "regardless of whether the defendant had an applicable license or indemnity agreement."[15]  *In re Cotter*, 22 F.4th at 793.[16] In making this conclusion, the Eighth Circuit pointed to the PAA's definition of "nuclear incident," which is defined as "any occurrence," which includes an ENO, *see* 42 U.S.C. § 2014(q). Emphasizing the plain language of the statute, the Eighth Circuit noted this style of draftsmanship required distinct meanings for the two terms.  Because *only* the definition of ENO discussed

---

[15] The Eighth Circuit expressly rejected, *In re Cotter*, 22 F.4th at 796 n.2, the holdings in other courts that held there could not be a "nuclear incident" under the PAA where the defendant lacked a license for radioactive materials or an applicable indemnity agreement.  *See Strong v. Republic Services, Inc.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017); *Kitchin v. Bridgeton Landfill, LLC*, 389 F. Supp. 3d 600, 611 (E.D. Mo. 2019), *rev'd and remanded*, 3 F.4th 1089 (8th Cir. 2021); *Banks v. Cotter Corp.*, 4:18-cv-00624-JAR, 2019 WL 1426259 (E.D. Mo. Mar. 29, 2019).

[16] The Eighth Circuit analyzed this issue in regard to jurisdiction of the PAA, and not the merits of PAA claim. *In re Cotter*, 22 F.4th at 793 (holding "the PAA provides federal question jurisdiction over all 'nuclear incidents,' regardless of whether the defendant had an applicable license or indemnity agreement).  The Court notes the jurisdictional grant relies on the same definitions at issue here and those that the Eighth Circuit discussed in *In Re Cotter*.

indemnity agreements, *see id.* § 2014(j), the Eighth Circuit concluded the "indemnity agreement element [] does not apply beyond the meaning of an ENO," and the "absence of [ENO] requirements from the express definition of 'nuclear incident' reflects an intent to not impose them there." *In re Cotter*, 22 F.4th at 795. Such an "interpretation incorrectly imports limiting concepts from" one section and seeks to apply them into other areas of the statute to which Congress did not intend.[17] *Id.*

This holding is significant for three reasons. First, the Eighth Circuit mandates any action arising from a "nuclear incident," 42 U.S.C. § 2014(q), asserted against any defendant, regardless of licensee or indemnification status, is a claim under the PAA. Second, the Eighth Circuit broadly defined "nuclear incident" as "something that happens [or takes place] within the United States, causing bodily injury or property damage and arising out of nuclear material." *In re Cotter Corp*, 22 F.4th at 796. Third, the Eighth Circuit emphasized the distinction between "nuclear incidents" based on an ENO and a non-ENO (i.e.: arising from "any occurrence") noting "the PAA applies broadly to *any* event causing bodily or property damage from nuclear material, rather than a narrow category of nuclear catastrophes," as in the case of an ENO.[18] *Id.* at 795 (emphasis added).

To practically understand the Eighth Circuit's holding, there are three[19] potential types of public liability actions based on a "nuclear incident": (1) a non-ENO licensee/indemnification action, (2) a non-ENO non-licensee/indemnification action, and (3) an ENO

---

[17] The other two circuit courts to confront the question in *In Re Cotter* reached the same conclusion as the Eighth Circuit. *Acuna*, 200 F.3d at 339; *Est. of Ware*, 871 F.3d at 283.

[18] The Eighth Circuit has emphasized this nuance—ENO versus non-ENO— and the different rules and consequences of alleging a public liability action for a "nuclear incident" arising from an ENO or arising from a non-ENO. *See In re Cotter*, 22 F.4th at 794; *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 974–75 (8th Cir. 2018).

[19] The reason there is not a fourth type of action—an ENO non-licensee/indemnification action—is based on the definition of ENO, which limits ENOs to only those discharges that happen "offsite," and "offsite" means "away from 'the location' or 'the contract location' as defined in the applicable . . . indemnity agreement." *See* 42 U.S.C. § 2014(j).

licensee/indemnification action.   Depending on the type of action alleged, different rules may apply.  *See In re Cotter*, 22 F.4th at 794; *Halbrook*, 888 F.3d at 974–75.  As one example, "suits arising from an ENO are subject to a statute of limitations and . . . for a non-ENO 'nuclear incident,' . . . state substantive . . . limitations periods apply."  *See In re Cotter*, 22 F.4th at 794.  And in actions arising from an ENO, a strict liability claim may be the only cause of action,  *see* 42 U.S.C. § 2210(n)(1) (mandating normally-available defenses be waived in the cases of an ENO), but there is "no limitation or waiver-of-defense provisions for 'regular,' non-ENO claims," *Halbrook*, 888 F.3d at 974.

\* \* \* \* \* \* \* \*

Against the backdrop of this complex statutory and legal framework, the Court turns to Defendants' argument.  Defendants argue the PAA entirely preempts state law standards of care. Specifically, Defendants argue federal radiation dose levels set by the NRC, codified in Title 10 Part 20 of the Code of Federal Regulations ("Part 20"),[20] exclusively establish the standard of care in all public liability actions arising from a "nuclear incident."   While this interpretation lacks authority from the Supreme Court, Eighth Circuit, and provisions of the PAA, Defendants make this argument because every circuit court to address this issue has concluded federal dosage regulations exclusively supply the standard of care in PAA public liability actions.[21]  For reasons

---

[20] Defendants argue the specific Part 20 regulation applicable to this case is 10 C.F.R. § 20.1301 ("Dose limits for individual members of the public.").

[21] The Court of Appeals for the Third Circuit was the first circuit court to hold that in a PAA public liability claim "federal law preempts state tort law on the standard of care." *In re TMI*, 67 F.3d 1103, 1107 (3d Cir. 1995) (citing *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 860 (3d Cir. 1991)).  The Court of Appeals for the Sixth, Seventh, Ninth, and Eleventh Circuit followed suit.  *See O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) (holding a PAA plaintiff must show "an amount of radiation in excess of the maximum permissible amount allowed by federal regulation"); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997) (agreeing with *TM II* and *O'Conner*); *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008).

discussed below, Defendants' position conflicts with binding Eighth Circuit precedent and the plain language of the PAA, Atomic Energy Act, and federal regulations.

1. ***The text of the PAA does not support a standard of care based solely on federal dosage regulations.***

While the Eighth Circuit has not decided whether federal law or state law provides the standard of care in a PAA public liability action, it consistently analyzes issues arising under the PAA by emphasizing the plain language of the statute. *See In re Cotter*, 22 F.4th at 794–96; *see also Halbrook*, 888 F.3d at 977 n.3 (holding PAA claims are claims "under federal law" and while the Third and Seventh Circuit both reached the same conclusion, the Eighth Circuit found "it unnecessary to rely on th[o]se cases or repeat their analyses" because the Eighth Circuit, unlike those circuits, was "persuaded by the plain language of the Act" itself). Analyzing the PAA issues currently before it through the lens of the Eighth Circuit, the Court concludes Defendants' exclusive standard-of-care argument conflicts with the plain language of the PAA.

Defendants argue the PAA preempts state law standards of care because they are inherently "inconsistent" with federal dosage regulations. Defendants rely on Section 2014(hh) for support, but that provision lends no support for Defendants' argument. *See* 42 U.S.C. § 2014(hh) (stating "substantive rules" in a public liability action shall be derived from state law "unless such law is *inconsistent* with the provisions of such section" (emphasis added)). Defendants' interpretation ignores the plain language of Section 2014(hh), which preempts substantive state law *only when it is inconsistent with Section 2210*.[22] *See id.* Thus, Defendants' interpretation of Section

---

[22] Several circuit courts agree with the Court's interpretation of Section 2014(hh). *See Matthews*, 15 F.4th at 719 (interpreting Section 2014(hh) to mean "the 'substantive rules for decision . . . derived' from state law, 'unless such law is inconsistent' with § 2210" (quoting 42 U.S.C. § 2014(hh))); *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1144 (10th Cir. 2010) (explaining Section 2014(hh) "merely provides that the PAA itself does not displace state law, unless there is a conflict with § 2210"); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 206 (5th Cir. 2011) (Dennis, J., concurring in part and dissenting in part) ("I would instead hold that those remaining claims must be adjudicated in accordance with the substantive rules for decision derived from state law, because the defendants have failed to show that the rules for decision of those claims are inconsistent with § 2210.").

2014(hh)—that state law is preempted when inconsistent with federal regulations *generally*—is at odds with the plain language of the text.

Instead, Section 2014(hh) dictates the PAA preempts state law when inconsistent with Section 2210 *only*. Defendants point to no specific text of Section 2210 that is inconsistent with state law standards of care. Nor do Defendants cite to a provision of Section 2210 that even alludes to a federal safety standard that could provide the standard of care in a PAA action. Rather, Section 2210 provides for indemnification and limitation of liability for federal licensees and contractors. *See generally* 42 U.S.C. § 2210 (titled "Indemnification and limitation of liability"). To the extent federal dosage regulations provide the sole standard of care in public liability actions, that requirement surely does not derive from the plain language of Section 2014(hh). Through a plain reading of the statute, the Court concludes applying state law standards of care is not "inconsistent" with Section 2210, as meant in 42 U.S.C. § 2014(hh), and thus, is not preempted by the PAA on that basis.

Moreover, interpretating the PAA to require all claims to be based only on a breach of federal dosage regulations will produce consequences in conflict with the plain language of Section 2014(hh). Exclusive use of federal dosage regulations virtually limits the types of claims that may be brought in a public liability action, essentially providing an ordinary preemption defense against all state-law tort claims. Had Congress intended to limit PAA claims to actions based exclusively on breaching federal dosage regulations, it could have done so, as Congress plainly and expressly did when it excluded certain types of claims. *See* 42 U.S.C. § 2014(w) (excluding three types of claims from public liability actions: workers' compensation claims, act of war claims, and certain types of property claims). Nothing in the text of the PAA or Section 2210 immunizes Defendants from liability for all claims except those based on a breach of federal dosage limits.

Quite to the contrary, with the 1988 Amendments, Congress chose to specifically preserve state tort law in PAA public liability actions, *see* 42 U.S.C. § 2014(hh); *see also* H.R.Rep. No. 100-104, pt. 1, at 20 (1987) ("the policy of only interfering with state tort law to the minimum extent necessary [is] a principle which has been embodied in the Price-Anderson Act for the last 30 years."), notably, at the same time it *expanded federal jurisdiction* over such actions, 42 U.S.C. § 2210(n)(2). "The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." *Wyeth v. Levine*, 555 U.S. 555, 575 (2009) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166–167 (1989)). Despite this plain language that Congress did *not* regard state tort law as an obstacle to achieving its purposes, Defendants seek to preempt all state-law on that exact basis.

Defendants' proposed preemption is also undermined by the text of the Atomic Energy Act ("AEA"). The AEA allows the federal government to enter into agreements with states allowing *the states* to regulate certain radioactive and nuclear materials. *See* 42 U.S.C. § 2021; *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1902 (2019) (Section 2021 "allow[s] the NRC to devolve certain of its regulatory powers to the States"). For example, the NRC may enter into agreements with states allowing them to regulate "source," "special nuclear," and "byproduct" materials in the NRC's stead. *See* 42 U.S.C. § 2021(b); *see also Va. Uranium*, 139 S. Ct. at 1902 ("under § 2021(b) the NRC may now, by agreement, pass to the States some of its preexisting authorities to regulate various nuclear materials 'for the protection of the public health and safety from radiation hazards.'"); *Est. of Ware*, 871 F.3d at 283–84 (noting Section 2021 "gives the NRC authority to enter into agreements with states allowing them to issue licenses in the NRC's stead").

14

Notably, these are the exact nuclear materials encompassed in the PAA's definition of "nuclear incident." *See* 42 U.S.C. § 2014(q).  States may also formulate their *own* "standards for protection against hazards of radiation" as long as "coordinated and compatible" with federal standards.  *See* 42 U.S.C. §§ 2021(g), (k); *see, e.g.*, Mo. Code Regs. tit. 19, §§ 20-10 (2023) (state of Missouri "Protection Against Ionizing Radiation" regulations).[23]  If the Court were to accept Defendants' proposed preemption here, even in a situation where the nuclear material was licensed and governed by state law, as in *Estate of Ware*, 871 F.3d at 283–84,[24] federal dosage limits would solely determine liability, effectively preempting any other applicable law and completely ignoring liability based on a breach of the governing law.  This outcome is nonsensical, especially when Defendants' argument is not grounded in the plain language of the statute and is contrary to congressional direction that states may regulate in this area.  *Cf. Acuna*, 200 F.3d at 339 ("There is nothing in the definition of 'nuclear incident' which suggests it should be contingent on whether the *occurrence took place in a state which regulates its own [nuclear material]* under NRC guidelines or whether the facility is covered under the separate indemnification portions of the [PAA]." (emphasis added)).

2.  ***Defendants' one-size-fits-all standard-of-care argument is at odds with the Eighth Circuit's opinion in*** In Re Cotter.

Defendants' argument that federal dosage regulations exclusively supply the standard of care in all public liability actions is undermined by advocating for a blanket standard without considering (1) the licensee/indemnification status of the defendant or (2) the type of "nuclear

---

[23] Plaintiffs actually allege Defendants violated these exact Missouri regulations.  *See* Doc. [44] ¶ 117.

[24] There, the nuclear license at issue "was issued by the Pennsylvania Department of Environmental Protection Bureau of Radiation Protection, which exercises delegated authority from the NRC per . . . 42 U.S.C. § 2021." *Est. of Ware*, 871 F.3d at 283–84.  The Third Circuit concluded that if possession of a license is required for PAA applicability, the state license would satisfy that requirement and rejected the argument that the PAA only applied to a defendant with an NRC license.  *Id.*

incident" alleged.  While Eighth Circuit cases are not directly dispositive of the precise question before the Court, they do indicate that the Eighth Circuit would likely not accept this argument at face value.

First, Part 20 dosage regulations as the exclusive standard of care is discordant with *In re Cotter* and fatal to Defendants' standard-of-care argument.  Defendants argue the sole standard of care in the PAA claims here are the federal dose regulations promulgated by the NRC in Part 20. Yet, these regulations apply only to NRC-licensed entities or facilities.  *See* 10 C.F.R. § 20.1001 ("The regulations in part [20] establish standards for protection against ionizing radiation resulting from activities conducted *under licenses issued by the Nuclear Regulatory Commission*." (emphasis added)); 10 C.F.R. § 20.1301 (regulating a "licensee," which is defined in Part 20's definitions, § 20.1003, as the "*holder* of a *license*" issued under NRC regulations (emphasis added)); *Morris v. U.S. Nuclear Regul. Comm'n*, 598 F.3d 677, 687–88 (10th Cir. 2010) ("The clear language of [10 C.F.R. § 20.1301(a)(1)] supports the NRC's decision to focus only on the licensed operation," as the "NRC has now specifically linked the relevant measured dose to the 'licensed operation,'" such that "dose limit[s] apply only to the operation being licensed").[25]  In other words, the federal dosage regulations Defendants seek to import as the exclusive standard of care here are regulations imposed *only* on NRC-licensees.

In *In Re Cotter*, the Eighth Circuit held public liability actions based on a "nuclear incident" encompass claims against licensees and non-licensees alike.  *In re Cotter*, 22 F.4th at 793. Contrary to this precedent, Defendants argue regulations that impose a duty on NRC licensees *only* exclusively supply the standard of care in <u>all</u> public liability actions.  Surely, the Court cannot hold

---

[25] The Court also doubts whether the specific Part 20 regulation Defendants seeks to require here, 10 C.F.R. § 20.1301, is even applicable (even as to Defendant Cotter) given that the two sites at issue in this action are <u>not</u> alleged to be NRC-licensed facilities or nuclear plants governed by the NRC.  *See, e.g.*, *Morris v. U.S. Nuclear Regul. Comm'n*, 598 F.3d 677, 687–88 (10th Cir. 2010).

16

that non-licensees owe a duty of care that is solely imposed on NRC licensees, as dictated by the plain language of the federal regulations. Nor is it persuasive that non-licensees, who are not subject to the regulations, would owe no duty of care and thus, escape liability completely. *See, e.g.*, *Lawson v. Gen. Elec. Co.*, 323 F. Supp. 3d 980, 990–91 (N.D. Ill. 2018).[26] Of course, completely shielding from liability every non-NRC licensee that would otherwise be subject to liability resulting from a "nuclear incident" is in conflict with *In Re Cotter*, which concluded the PAA broadly applies to all claims for a "nuclear incident" and is <u>not</u> dependent on licensee status.

Second, Defendants' argument is also undermined by their failure to distinguish between "nuclear incidents" based on an ENO and a non-ENO, a distinction emphasized by the Eighth Circuit.[27] *See In re Cotter*, 22 F.4th at 794–96; *Halbrook*, 888 F.3d at 974–75. The Eighth Circuit broadly defined "nuclear incident" as "something that happens [or takes place] within the United States, causing bodily injury or property damage and arising out of nuclear material." *In re Cotter*, 22 F.4th at 796. Notably, an ENO and its progeny are absent from the Eighth Circuit's definition, as the PAA's text and structure dictates an ENO as merely a subset of a "nuclear incident." The "PAA applies broadly to any event causing bodily or property damage from nuclear material." *In re Cotter*, 22 F.4th at 795. There is nothing in the definition of "nuclear incident" that suggests it should be contingent on breaching Part 20 dosage regulations promulgated by the NRC.

Similar to the interpretation rejected by the Eighth Circuit in *In Re Cotter*, Defendants here seek to import requirements from one portion of the statute and impose them into others—

---

[26] In *Lawson v. General Electric Co.*, 323 F. Supp. 3d 980, 990–91 (N.D. Ill. 2018), the Court dismissed all claims arising from a "nuclear incident" against a defendant on the basis that the defendant owed no duty of care to the plaintiff because the "sole duty of care" is based on the federal dose limit regulations, which regulations only impose duty on licensees of nuclear power plants, and thus, because defendant was not a licensee, it was not subject to liability.

[27] As previously discussed in this Memorandum and Order and in Footnote 18, Congress explicitly provided different rules and consequences for "nuclear incidents" whether based on an ENO or non-ENO. Thus, contrary to Defendants' argument that the PAA mandates a unified federal standard of care to be applied in all public liability actions for a "nuclear incident," the applicable standard may vary depending on the type of "nuclear incident" involved.

specifically, NRC regulations into all non-ENO "nuclear incidents." Only the term ENO mentions radiation levels deemed problematic by the "Nuclear Regulatory Commission or the Secretary of Energy."[28]  42 U.S.C. § 2014(j).  Similar to the Eighth Circuit's reasoning regarding indemnity agreements, the Court finds the regulatory requirements from those agencies do "not apply beyond the meaning of an ENO" and the "absence of those requirements from the express definition of 'nuclear incident' reflects an intent to not impose them there." *In re Cotter*, 22 F.4th at 795; *see also Matthews*, 15 F.4th at 726 ("the regulatory requirements for a specific type of nuclear incident—an [ENO]—do not necessarily apply to all nuclear incidents in general.").  Importing ENO concepts into the term "nuclear incident" has been described as "faulty statutory interpretation" and "contrary to Congressional intent." *In re Cotter*, 22 F.4th at 795 (citing *Acuna*, 200 F.3d at 339 & *Est. of Ware*, 871 F.3d at 283).  "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).  If Congress sought to impose NRC regulatory requirements for all "nuclear incidents," not just those arising from an ENO, it could have done so.

Notably, Congress has amended the PAA at least three times since 1988, as late as 2005, and it could have required the standard of care to be exclusively based on NRC regulations codified in Part 20 or on any of the Code of Federal Regulations promulgated by the NRC.  But the Court is "hardly free to extend a federal statute to a sphere Congress was well aware of but chose to leave

---

[28] Even then, the definition of ENO does <u>not</u> incorporate or mention the federal dose limits from Part 20 that Defendants seek to import here.  Instead, an ENO is defined as radiation levels declared by the NRC or Secretary of Energy "to be substantial" and established by "criteria in writing setting forth the basis upon which such determination shall be made."  42 U.S.C. § 2014(j); *Halbrook*, 888 F.3d at 974 (explaining the NRC "is authorized to declare a nuclear incident an" ENO (quoting 42 U.S.C. § 2014(j))).  The NRC has promulgated that "criteria" in Part 40 of the federal regulations.  *See* 10 C.F.R. §§ 140.84 and 140.85.

alone. . . . [I]t is our duty to respect not only what Congress wrote but, as importantly, what it didn't write." *Va. Uranium*, 139 S. Ct. at 1900.

3. ***The standard of care applicable in a public liability action must be made on a case-by-case basis***.

While every circuit court to consider this issue has held federal law preempts state law standards of care, those cases specifically dealt with entities or facilities licensed by the federal government and did not address the applicability of the PAA beyond that setting. *See, e.g.*, *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008) ("Every federal circuit that has considered the appropriate standard of care under the PAA has concluded that *nuclear operators* are not liable unless they breach federally-imposed dose limits." (emphasis added)); *In re TMI*, 67 F.3d 1103, 1108 & 1114 (3d Cir. 1995) (explaining Part 20 dosage regulations "regulates exposures of radiation to persons on the property of a *nuclear facility*" and "intended to cover persons outside a *nuclear plant's* boundaries" (emphasis added)); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305 (11th Cir. 1998) (applying federal dosage regulations to PAA claims based on injuries from a nuclear plant); *O'Conner v. Commw. Edison Co.*, 13 F.3d 1090, 1093 (7th Cir. 1994) (same). Of course, in those types of actions, exclusive use of federal dosage regulations is strongest based on ordinary preemption principles.[29] But, this preemption does not come from the text of the PAA itself, as detailed in Section(III)(1) of this Memorandum and Order.

Unlike the progeny of federal dosage cases, neither of the two sites at issue in this case is alleged to be an NRC facility, and the majority of the Defendants in this action are not NRC-licensees nor subject to the Part 20 dosage regulations. Even the Third Circuit—the pioneer of the federal dosage standard of care—admittedly left open the question of "whether possession of a license . . . might affect the [PAA's] applicability to a particular case" and doubted whether Part

---

[29] While Defendants allude to field and conflict preemption in their brief, they never develop the issue.

20 dosage limits exclusively supplied the standard of care given the facts there.  *See Est. of Ware*, 871 F.3d at 285, 278 n.3.  Like the Third Circuit, other courts similarly express doubt that federal dosage limits promulgated by the NRC provide the exclusive standard of care in all PAA actions based on the facts there.  *See, e.g.*, *Dailey v. Bridgeton Landfill, LLC*, 299 F. Supp. 3d 1090, 1100–01 (E.D. Mo. 2017) (hesitating to apply Part 20 dosage regulations to a non-NRC licensed facility given that the claim was for property damage and NRC-regulations "on their face" apply to a "licensee" and set the limit of exposure for "individual members of the public"); *Acuna*, 200 F.3d at 339.

Rather than adopting a *per se* rule that federal regulations preempt state law standards of care in every public liability action, the Court finds the applicable standard of care depends on the facts of each case and the claims asserted against each defendant.  Then, by applying ordinary preemption principles, the Court would determine the applicable standard(s) of care.  In other words, if defendants can identify federal statutes, regulations, or other binding safety standards that controlled their alleged conduct with respect to the nuclear properties during the relevant time period, the court would determine whether those federal laws preempt state law, including state-tort law.  When such inquiry is fact-intensive, as is the case here, application of a specific standard of care at the pleading stage is premature.

Considering the facts and claims asserted here, Part 20 dosage regulations *could* provide the standard of care against Defendant Cotter—the only defendant licensed by the NRC—but, not exclusively.[30]  As to the other three Defendants, Part 20 dosage regulations do not apply; rather,

---

[30] Besides the NRC facility issue discussed in Footnote 25, *see, e.g.*, *Morris*, 598 F.3d at 687–88, the Court is also not convinced the Part 20 dosage regulations would provide the exclusive standard of care against Defendant Cotter based on Plaintiffs' allegations.  Certainly, there are other possible sources of federal law that might preempt state law, *see, e.g.*, 10 C.F.R. Part 40 ("Domestic Licensing of Source Material") & 10 C.F.R. § 40.42 ("decommissioning of sites and separate buildings or outdoor areas"), and there are other claims that may not be regulated by federal law at all, *see, e.g.*, *Bohrmann v. Me. Yankee Atomic Power Co.*, 926 F. Supp. 211, 221 (D. Me. 1996) ("There is no reason

state law standards of care will apply unless Defendants identify controlling federal law related to their alleged conduct and the nuclear material at issue and also show that those federal laws preempt Plaintiffs' alleged standards of care.

Maybe some federal safety regulation other than the regulations dealing with numeric dose limits could form the basis of a public liability action. And maybe Part 20 regulations used as the exclusive standard of care makes sense in certain types of "nuclear incident" actions.[31] But Defendants' one-size-fits-all approach is unpersuasive, especially given the facts of the case here. Without some clearer congressional mandate or binding judicial authority suggesting a safe harbor for liability based on federal tolerance doses, the Court declines Defendants' invitation to dismiss Plaintiffs' action on that basis.

* * * * * * * *

The text of the PAA makes clear that a plaintiff pleads a public liability action arising from a "nuclear incident" when something takes place or happens, causing bodily injury or property damage, and arises out of "radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." 42 U.S.C. § 2014(hh), (w), (q); *In re Cotter*, 22 F.4th at 795. Because the parties do not dispute Plaintiffs sufficiently pled a "public liability action" arising out of a "nuclear incident," as defined by the PAA, and because Defendants have not shown Plaintiffs' claims are preempted or subject to Part 20 dosage regulations, the Court concludes Plaintiffs have stated a claim to relief that is plausible on its face.

---

apparent to this Court to believe that Congress intended that a defendant be insulated from liability for its intentional acts or fraud solely by complying with the federal safety standards.").

[31] For example, in an action for radiation injuries against an NRC licensee operating an NRC licensed nuclear plant.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Cotter Corporation's Motion to Dismiss, Doc. [58], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Commonwealth Edison Company's Motion to Dismiss, Doc. [60], is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant St. Louis Airport Authority's Motion to Dismiss, Doc. [62], is **DENIED**.

Dated this 8th day of September, 2023

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE