**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

NIKKI STEINER MAZZOCCHIO, et al.,

       Plaintiff,

   v.

COTTER CORPORATION, et al.,

       Defendant.

No. 4:22-cv-292-MTS

**DEFENDANT COMMONWEALTH EDISON COMPANY'S**
**ANSWER AND AFFIRMATIVE DEFENSES**

Defendant Commonwealth Edison Company ("ComEd") respectfully submits its Answer and Affirmative Defenses in response to the First Amended and Supplemental Complaint, ECF 44 ("Complaint"), of Plaintiffs Nikki Steiner Mazzocchio ("Plaintiff Mazzocchio") and Angela Steiner Kraus ("Plaintiff Kraus") (collectively, "Plaintiffs").

**I.**     **PROCEDURAL HISTORY[1]**

1.     This action was originally filed in Missouri state court in January 2022. Plaintiffs' claims were brought under Missouri law because none of the Defendants had a license or indemnity agreement pursuant to the Price Anderson Act ("PAA"), 42 U.S.C. §2210.

**ANSWER:**  ComEd admits that this action was originally filed in Missouri state Court in January 2022.  The allegations in the second sentence of this paragraph improperly state legal conclusions, and therefore ComEd denies them.  ComEd denies that none of the Defendants  had a license or indemnity agreement pursuant to the PAA.  ComEd denies all remaining allegations in this paragraph.

---

[1] For ease of reference, ComEd reproduces herein the headings included in Plaintiffs' Complaint. To the extent that the headings in the Complaint are construed as factual allegations, ComEd denies the same.

2.       Defendant Cotter Corporation removed arguing the PAA provided federal court jurisdiction because Plaintiffs alleged a "nuclear incident." *See* <u>42 U.S.C. § 2014(q)</u>.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

3.       Defendants Cotter Corporation, Commonwealth Edison and DJR Holdings, Inc. filed Motions to Dismiss asserting that Plaintiffs had failed to allege claims under the PAA.

**ANSWER:**  ComEd admits that it and other defendants filed motions to dismiss Plaintiffs' original complaint for failure to state a claim and denies Plaintiffs' characterization of the motions, which speak for themselves.  ComEd denies all remaining allegations in this paragraph.

4.       Before Plaintiffs responded to Defendants' Motions to Dismiss, in April of 2022, this matter was stayed until the final outcome of the U.S. Supreme Court's decision on a Petition for Writ of Certiorari which was filed in a related case pertaining to the scope of the PAA.  *See Banks, et al. v. Cotter Corporation, et al*., 4:20-cv01227 (E.D. Mo.), *In re Cotter Corp. (N.S.L.)*, <u>22 F.4th 788</u> (8th Cir. Jan. 7, 2022) ("*Banks*").

**ANSWER:**  Admitted.

5.       The Supreme Court denied the Writ of Certiorari on November 14, 2022. *Banks v. Cotter Corp*., <u>143 S. Ct. 422</u> (2022).

**ANSWER:**  Admitted.

6.       Following the Supreme Court's denial of the Writ of Certiorari, Plaintiffs now amend their petition to affirmatively allege a "public liability action" arising from a "nuclear incident" based on the Eighth Circuit's determination that there can be a "nuclear incident" even when a Defendant does not have an applicable license or indemnity agreement pursuant to the PAA.

**ANSWER:**  ComEd admits that Plaintiffs purport to describe the claims that they intend their Complaint to assert.  ComEd denies all remaining allegations in this paragraph.

## II.    INTRODUCTION

7.    Plaintiffs bring this action against Defendants seeking redress for bodily injury suffered by Plaintiffs as a result of Defendants' acts and omissions, including their negligent acts and omissions, related to the processing, transport, storage, handling, and disposal of hazardous, toxic, and radioactive materials in close proximity to residential neighborhoods in and around St. Louis County, Missouri.

**ANSWER:** ComEd admits that Plaintiffs purport to bring this action against Defendants but denies that it has engaged in wrongdoing as to Plaintiffs and denies that Plaintiffs are entitled to any damages or relief whatsoever.  ComEd denies all remaining allegations in this paragraph.

## III.    JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 2210(n)(2), which provides the United States District Court in the district where a nuclear incident takes place shall have original jurisdiction with respect to any public liability action arising out of or resulting from a nuclear incident.

**ANSWER:**  ComEd admits that this Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 2210(n)(2).  ComEd denies that Plaintiffs have adequately alleged a nuclear incident and denies that Plaintiffs can maintain a public liability action under the PAA against ComEd.  ComEd denies all remaining allegations in this paragraph.

9.    Venue is proper in this judicial district pursuant to 42 U.S.C. § 2210(n)(2) because the nuclear incident or incidents giving rise to Plaintiffs' claims took place in this district.

**ANSWER:**  ComEd admits that venue is proper in this judicial district pursuant to 48 U.S.C. § 2210(n)(2).  ComEd denies that Plaintiffs have adequately alleged a nuclear incident and denies that Plaintiffs can maintain a public liability action under the PAA against ComEd. ComEd denies all remaining allegations in this paragraph.

## IV.    PARTIES

### Plaintiffs

10.    Nikki Steiner Mazzocchio lived, worked, gardened, and frequented other areas in very close proximity to Coldwater Creek from 1984 to 2014.  Ms. Mazzocchio

lived in the French Quarter apartments, at 7371C Normandie Ct., in Hazelwood, Missouri, directly abutting Coldwater Creek and in close proximity to the SLAPS and Latty Avenue sites from approximately 1984 until 1986. During those times, Ms. Mazzocchio's apartment would flood with waters from the nearby Coldwater Creek.  In March of 2018, Ms. Mazzocchio was diagnosed with multiple myeloma.  As a result of Defendants' acts and omissions described in this Complaint, Ms. Mazzocchio developed significant and debilitating personal injuries.  As a result of Defendants' acts and omissions described in this Complaint, Ms. Mazzocchio suffered physical injury, pain, and suffering and has incurred medical expenses, and will continue to incur medical expenses for treatment in the future.  As a result of Defendants' acts and omissions described in this Complaint, Defendants released radiation into unrestricted areas in the environment in excess of the levels permitted by federal regulations in effect between at the time of their operations.  As a result of Defendants' acts and omissions described in this Complaint, Ms. Mazzocchio was exposed to some of this radiation, and her exposure levels exceeded background.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first four sentences of this paragraph.  ComEd denies that it has engaged in any wrongdoing, denies that it has caused Plaintiff Mazzocchio any harm, denies that it has released radiation into unrestricted areas in the environment in excess of the levels permitted by the applicable federal regulations, and denies that Ms. Mazzocchio was exposed to any radiation released by ComEd in excess of background levels.  ComEd denies all remaining allegations in this paragraph.

11.    Angela Steiner Kraus also lived, gardened, and frequented other areas in very close proximity to Coldwater Creek from approximately 1997 to 2003.  Ms. Kraus lived in the French Quarter apartments, at 7360F Normandie Ct., in Hazelwood, Missouri, directly abutting Coldwater Creek from approximately 1998 until 2002. During those times, Ms. Kraus's apartment would flood with waters from the nearby Coldwater Creek.  Ms. Kraus also maintained an outdoor garden at the apartment with herbs and tomatoes which she and her sister would eat.  Moreover, during those times, Ms. Kraus would regularly "trail run" in the creek bed— splashing her face with the creek water, and rinsing her mouth out with the creek water.  In May of 2018, Ms. Kraus was diagnosed with multiple myeloma.  As a result of Defendants' acts and omissions described in this Complaint, Ms. Kraus developed significant and debilitating personal injuries.  As a result of Defendants' acts and omissions described in this Complaint, Ms. Kraus suffered physical injury, pain, and suffering and has incurred medical expenses, and will continue to incur medical expenses for treatment in the future.  As a result of Defendants' acts and omissions described in this Complaint, Defendants released radiation into

unrestricted areas in the environment in excess of the levels permitted by federal regulations in effect between at the time of their operations.  As a result of Defendants' acts and omissions described in this Complaint, Ms. Mazzocchio was exposed to some of this radiation, and her exposure levels exceeded background.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first six sentences in this paragraph.  ComEd denies that it has engaged in any wrongdoing, denies that it has caused Plaintiff Kraus any harm, denies that it has released radiation into unrestricted areas in the environment in excess of the levels permitted by the applicable federal regulations, and denies that Ms. Kraus was exposed to any radiation released by ComEd in excess of background levels.  ComEd denies all remaining allegations in this paragraph.

12.    Plaintiffs Mazzocchio and Kraus are sisters.  During the times that they lived at the French Quarter apartments they would visit each other frequently.  They were born 8 years apart from one another, yet their cancer diagnoses occurred within 5 weeks of one another.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

## Defendants

13.    Cotter Corporation ("Cotter") is a Colorado corporation with its principal place of business in Englewood, Colorado, which operates as a subsidiary of General Atomics, Inc., a California corporation.  Cotter was purchased by and became a wholly owned subsidiary of Commonwealth Edison in 1974, immediately prior to announcing that there was no radioactive contamination on the property upon which it operated.  It was then sold to General Atomics in 2000.

A.    Cotter continuously and systematically carried on business activities in the State of Missouri in its own name, and through its parent company ComEd.

B.    This lawsuit arises out of damages that resulted from Cotter's conduct including acts and omissions within the State of Missouri, as well as the acts and omissions of the predecessors of Cotter, which give rise to the personal injuries alleged in this Complaint.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph that do not concern ComEd, and therefore denies the same. ComEd admits that it purchased all outstanding shares of Cotter in 1974, and that through this purchase Cotter became a wholly owned subsidiary of ComEd in 1974. ComEd admits that it sold Cotter to General Atomics in 2000. ComEd denies that it continuously or systematically carried on business activities in the State of Missouri. ComEd denies all remaining allegations in this paragraph, including subparts A and B.

14.     Commonwealth Edison Company ("ComEd") is an Illinois corporation, whose former subsidiary corporation, Cotter, conducted business operations in Missouri. Upon the sale of Cotter, ComEd agreed to indemnify Cotter for certain liabilities associated with these activities. The responsibility to indemnify Cotter was transferred to Exelon Generation Company, LLC when ComEd's parent company, Exelon Corporation, restructured in 2001. Exelon Generation Company, LLC was split from Exelon and is now known as Constellation Energy Generation, LLC.

   A.     ComEd continuously and systematically carried on local business activities in the State of Missouri, both on its own and through its subsidiary Cotter. In addition, ComEd owned Cotter at times relevant to this Complaint, and agreed to indemnify Cotter for liabilities associated with the creation, storage, transportation, and processing of hazardous, toxic, carcinogenic, radioactive wastes as alleged herein.

   B.     When ComEd purchased Cotter, it assumed Cotter's liabilities by its own corporate policies and by law and was obligated to require its subsidiary to comply with the rules and regulations in Missouri and the relevant laws cited in this Complaint. ComEd furthermore assumed the environmental safety and health functions of its subsidiary, Cotter. Cotter and ComEd knew or should have known substantial waste was in Coldwater Creek as a result of Cotter's operations and on the properties upon which Cotter controlled and had operated and which it knowingly and intentionally abandoned. On information and belief, ComEd, through its pre-purchase due diligence, knew about the remaining contamination, yet did nothing to mitigate the threat to public health, such that ComEd is liable as a corporate successor to Cotter.

   C.     After the sale of Cotter to ComEd, they jointly conspired to perpetuate the fraud that there was no radioactive contamination remaining with respect to Cotter's abandoned operations. On information and belief, ComEd controlled the policy and business of Cotter such that Cotter was a mere instrument or alter ego of ComEd.

D.      ComEd used its control over Cotter to perpetuate the negligent and unlawful contamination in contravention of Plaintiffs' rights, and ComEd's control over Cotter is a proximate cause of the contamination that caused or contributed to cause Plaintiffs' injuries.

E.      This lawsuit arises out of damages that resulted from the ComEd's conduct, including acts and omissions within the State of Missouri, as well as the acts and omissions of the predecessors of ComEd, which gave rise to the violations of law and damages alleged in the Complaint.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph that do not concern ComEd, and therefore denies the same.  ComEd admits that it is an Illinois corporation.  ComEd admits that the Stock Purchase Agreement dated January 11, 2000 between Cotter, Commonwealth Edison, and General Atomics included an indemnification provision whereby ComEd agreed to indemnify Cotter and General Atomics for certain liabilities associated with Cotter's business in Missouri.  ComEd denies that Plaintiffs have accurately characterized the terms of the Stock Purchase Agreement.  ComEd admits that the responsibility to indemnify Cotter was transferred to Exelon Generation Company, LLC when ComEd's parent company, Exelon Corporation, restructured in 2001.  ComEd admits that it owned Cotter's stock between 1974 and 2000, which falls within the time period alleged in the Complaint, which ComEd understands to be 1942 to present.  ComEd denies all remaining allegations in this paragraph, including all subparts.

15.      DJR Holdings, Inc., formerly known as Futura Coatings, Inc. ("Futura Coatings") is a Missouri corporation with its principal place of business in Missouri, and whose alter ego is Jarboe Realty & Investments Co., Inc.

**ANSWER:** This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

16.     The St. Louis Airport Authority, which is a department of the City of St. Louis, is now and was at all times herein mentioned a public entity organized and existing pursuant to Article 6, Section 31 of the Missouri Constitution.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

## V.     FACTS

17.     From 1942 to 1957, under contracts with the United States government, the Destrehan Street Refinery and Metal Plant (which later became Mallinckrodt Chemical Works) processed natural uranium into uranium oxide, trioxide, and metal uranium at a facility in downtown St. Louis, Missouri.  This facility became known as the St. Louis Downtown Site ("SLDS").

**ANSWER:**   This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

18.     As detailed herein, the Defendants are individually responsible for radioactive waste materials (hereinafter "RWM") that were generated by Mallinckrodt at the SLDS.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

19.     Each of these Defendants were lawfully accountable for the property on which the RWM was stored and/or they were responsible for managing the RWM.  All of the Defendants failed in this regard, causing the release of hazardous, toxic, and radioactive substances which have now been physically deposited on surrounding properties by various means including wind, soil, surface water, and groundwater transmission.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

20.     This deposition of RWM on surrounding properties is above the background, it's unique, and readily identifiable from naturally occurring Missouri radiation.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

21.     The properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked) contained radiation above background to which Plaintiffs were exposed.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

22.     Plaintiffs' exposure to this radiation above background caused or contributed to cause them to develop cancer.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

23.     The RWM would not be on the properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked), and would not cause or contribute to cause these injuries, but for the acts and omissions of the Defendants.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

**Radioactive Wastes**

24.     The RWM for which Defendants were responsible contain radioactive isotopes including, but not limited to, uranium, thorium, and radium.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

25.     Ounce for ounce, radioactive isotopes are the most toxic materials known to man.

**ANSWER:**   ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

26.     Radiation is a type of energy transmitted over a distance.  Some materials spontaneously emit radiation through a process known as radioactive decay.  As these materials decay they release radiation energy and transform into other radioactive materials which will then also decay by releasing radiation energy and transforming into other materials.

**ANSWER:**   ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

27.     Some radiation energies, including the radiation from the decay of radioactive materials used in nuclear and atomic processes, such as uranium, have the ability to penetrate other material.  When radiation energy interacts with other material, it causes a process called ionization[1] which can damage chemical structures.  When the "other material" that ionizing radiation passes through is human cells, it can cause damage within those cells resulting in mutation in genetic material which can lead to cancer and other detrimental conditions.

**ANSWER:**   ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

28.     People are exposed to radiation in two ways: external exposure from radioactive material in the environment and internal exposure by radioactive material that has entered the body.  Radioactive material can be taken into the body by consuming foodstuffs and liquids with radioactivity in them, by inhaling radioactive gases or aerosol particles, or by absorption through wounds in the skin.  The material taken in will internally threaten the organs and tissues for as long as it remains inside the body.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

29. One characteristic of the impact of exposure to ionizing radiation on the human body through both internal and external exposure is that even if the energy absorbed is low, the biological effects can still be gravely serious. The second characteristic is that there are latent biological effects of radiation.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

30. The injuries resulting from exposure to ionizing radiation can also be separated into two categories: somatic injuries and genetic injuries. Somatic injuries are damages to the individual exposed. This can include damages to the skin, reproductive system, blood forming system, digestive system, central nervous system, and immune system, as well as cancers. Illnesses such as cancers may take a number of years to appear.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

31. Genetic injury is damage to the reproductive cells of the exposed individual in the form of mutation of their genetic cells. As a result, the probability of detrimental effects to the descendants of the exposed persons may greatly increase. These genetic mutations can be passed down to a person's offspring even generations later. These injuries include birth abnormalities and cancer.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

32. One of the most dangerous aspects of radioactive materials is the length of time that radioactive isotopes will persist and accumulate in the environment. As detailed above, radioactive materials decay over time and each radioactive material gives off radiation energy as it decays and transforms into a different material. The rate at which a radioactive isotope decays is measured in half-life. The term "half-life" is defined as the time it takes for one-half of the atoms of a radioactive material to disintegrate. For example, after one half life, there will be one half of the original material, after two half-lives, there will be one fourth the original material, after three half-lives one eight the original sample, and so forth.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

33.     Radioactive isotopes are known human carcinogens and are among the most toxic materials known to man.  When property becomes contaminated with these wastes, the dangers can persist in the environment for thousands of years.  Radioactive wastes should be handled, stored, and disposed of with the utmost safety in mind.  Exposures to radioactive wastes should be as low as is reasonably achievable.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

**Mallinckrodt produced radioactive waste materials which
were transported to and stored at St. Louis Airport Site**

34.     Between 1942 through 1957, under contracts with the United States government, Mallinckrodt processed uranium at a facility located in downtown St. Louis, Missouri.  This site is known as the St. Louis Downtown Site ("SLDS").

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

35.     As part of its operations at SLDS, Mallinckrodt processed uranium ore from the Belgian Congo containing high percentages of uranium.  The elemental composition of the resulting waste material is unique and with proper testing can be easily identified and distinguished from naturally occurring radiation in Missouri.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

36.     Between 1947 and 1957, Mallinckrodt transported RWM from SLDS to a site in North St. Louis County near the Lambert Airport.  This site is located next to Coldwater Creek and is known as the St. Louis Airport Site ("SLAPS").

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd

lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

### The St. Louis Airport Authority purchased SLAPS and failed to prevent continued dispersal of radioactive materials

37.     In 1973, the SLAPS site was sold to the St. Louis Airport Authority, a department of the City of St. Louis, by quitclaim deed.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

38.     Thereafter, despite knowing that significant activities involving radioactive material were conducted on the site, the St. Louis Airport Authority, a department of the City of St. Louis, did nothing to prevent continued dispersal and runoff of hazardous, toxic, carcinogenic, radioactive wastes into Coldwater Creek.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

39.     The St. Louis Airport Authority is the current owner of the SLAPS site.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

40.     As a result of the St. Louis Airport's acts and omissions at the SLAPS site, Coldwater Creek and surrounding properties continued to be contaminated with radioactive materials in excess of background levels.

**ANSWER:** This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

### Radioactive waste materials are moved from SLAPS to Latty Avenue

41.    In the late 1960's, private companies purchased and assumed responsibility for the RWM stored at SLAPS.  According to the offer for sale, the RWM constituted source material requiring a license pursuant to the Atomic Energy Act.

**ANSWER:** This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

42.    The RWM were transported from SLAPS to another site on Coldwater Creek located at 9200 Latty Avenue in Hazelwood, Missouri (part of this site later became known as the Hazelwood Interim Storage Site ("HISS")).  The Latty Avenue site is approximately 1 mile downstream from the SLAPS site.

**ANSWER:** This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

43.    The radioactive waste materials transferred from SLAPS to Latty Avenue include, but are not limited to: (1) pitchblende raffinate, (2) Colorado raffinate, (3) barium sulfate (unleached), (4) barium cake (leached), and (5) miscellaneous residues stored in deteriorated drums.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

14

**Cotter purchased radioactive waste materials and conducted
drying operations at Latty Avenue site**

44.     In 1969, Cotter purchased and assumed responsibility for the RWM stockpiled at
Latty Avenue.  Cotter also agreed to restore the Latty Avenue site where the RWM
were stockpiled.

**ANSWER:** This paragraph contains no allegations against ComEd.  To the extent it

could be construed to contain allegations against ComEd, those allegations are denied.  ComEd

lacks knowledge or information sufficient to form a belief about the truth of the allegations

regarding the other defendants in the case, and therefore denies the same.

45.     The Atomic Energy Commission issued Cotter a source material license covering
9200 Latty Avenue pursuant to which Cotter exercised custody and control over the
Latty Avenue site and the RWM.

**ANSWER:** This paragraph contains no allegations against ComEd.  To the extent it

could be construed to contain allegations against ComEd, those allegations are denied.  ComEd

lacks knowledge or information sufficient to form a belief about the truth of the allegations

regarding the other defendants in the case, and therefore denies the same.

46.     Cotter never maintained financial protection pursuant to the Price Anderson Act
nor did it have an indemnification agreement pursuant to the Price Anderson Act.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it

could be construed to contain allegations against ComEd, those allegations are denied.  ComEd

lacks knowledge or information sufficient to form a belief about the truth of the allegations

regarding the other defendants in the case, and therefore denies the same.

47.     After purchasing the RWM, Cotter dried and loaded the RWM onto railcars next
to Coldwater Creek at a rate of approximately 400 tons per day.  B&K
Construction Company was engaged by Cotter for this purpose.  At all times,
B&K Construction acted as an agent of Cotter and conducted all work under
Cotter's source material license.  Cotter had the responsibility to ensure B&K was
not violating the terms of its license.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

48.     During Cotter's drying operations at Latty Avenue:

A.     The AEC expressed concerns about a dust problem.
B.     The AEC cited Cotter because sample surveys were "totally inadequate to determine concentrations of radioactive materials to which person are exposed pursuant to 10 CFR 20."
C.     The St. Louis County Health Department noted violations related to the restriction of emission of visible air contaminants.
D.     Health and environmental experts expressed concerns and noted violations of AEC regulations.
E.     Upon information and belief, RWM was washed down under the fence, which was a violation of AEC regulations.
F.     Upon information and belief, the settling ponds were in a state of disrepair.
G.     Upon information and belief, the drying equipment was in a state of disrepair.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

49.     At some point during Cotter's operations at Latty Avenue, its dryer broke down. Thereafter, the site was not secured and appeared to be abandoned.

**ANSWER:** This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

50.     In 1973, approximately 18,700 tons of radioactive waste materials remained at the Latty Avenue site.  Cotter loaded approximately 10,000 tons of these materials on railcars and shipped them to Colorado.  Cotter mixed the remaining

radioactive waste materials with contaminated soil and dumped them in the West Lake Landfill.

**ANSWER:** This paragraph contains no allegations against ComEd. To the extent it could be construed to contain allegations against ComEd, those allegations are denied. ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

51.     Cotter never conducted any activities related to Mallinckrodt's contract, or any other contract, with the government.

**ANSWER:** This paragraph contains no allegations against ComEd. To the extent it could be construed to contain allegations against ComEd, those allegations are denied. ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

52.     As a result of Cotter's acts and omissions at the Latty site, Cotter released radiation into unrestricted areas in the environment in excess of the levels permitted by federal regulations in effect at the time, including but not limited to, 10 C.F.R. §§ 20.105 and 20.106. As a result of Cotter's acts and omissions at the Latty site and Cotter's releases, Coldwater Creek and surrounding properties, including the properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked), were contaminated with radioactive materials in excess of background levels.

**ANSWER:** This paragraph contains no allegations against ComEd. To the extent it could be construed to contain allegations against ComEd, those allegations are denied. ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

53.     Upon information and belief, Cotter's RWM remain on the Latty Avenue site to this day.

**ANSWER:** This paragraph contains no allegations against ComEd. To the extent it could be construed to contain allegations against ComEd, those allegations are denied. ComEd

lacks knowledge or information sufficient to form a belief about the truth of the allegations

regarding the other defendants in the case, and therefore denies the same.

**Commonwealth Edison Purchases Cotter and Cotter's License
is Terminated Based on Inaccurate Representations**

54.     In the early 1970s, upon information and belief, Commonwealth Edison Company
("ComEd") began conducting due diligence prior to its purchase of Cotter.

**ANSWER:**  ComEd admits that it undertook the due diligence described in the

Agreement re Cotter Corporation dated May 8, 1974 prior to executing that agreement.  ComEd

denies the remaining allegations in this paragraph.

55.     On May 8, 1974, in the interest of securing a uranium supply, Commonwealth
Edison Company ("ComEd") purchased Cotter Corporation for $18,000,000.00.

**ANSWER:**  ComEd admits that it entered into an agreement for the purchase of all of

Cotter's outstanding shares on May 8, 1974, but denies that the transaction closed on that date

and denies the remaining allegations in this paragraph.

56.     George Rifakes became president of Cotter in May 1974.  Upon information and
belief, Mr. Rifakes was a ComEd employee starting in the 1950's, became a
manager at ComEd in the late 1960's and became vice president of ComEd in
1980.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief regarding

George Rifakes' employment with Cotter.  ComEd admits that George Rifakes was a ComEd

employee starting in the 1950's, that he became vice president at ComEd in 1980, and that he

served as a manager with ComEd before he became vice president.  ComEd denies the remaining

allegations in this paragraph.

57.     Two days after ComEd purchased Cotter, on May 10, 1974, Cotter filed an
application with the AEC to terminate its source material license certifying that
the Latty Avenue site was decontaminated.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it

could be construed to contain allegations against ComEd, those allegations are denied.  ComEd

lacks knowledge or information sufficient to form a belief about the truth of the allegations

regarding the other defendants in the case, and therefore denies the same.

      58.    Upon information and belief, in the early 1970s, health and environmental experts informed Cotter of a harmful radiation survey at the Latty site in excess of decontamination guidelines.  Upon information and belief, the survey was not transmitted to the AEC and no further remediation was conducted.

     **ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it

could be construed to contain allegations against ComEd, those allegations are denied.  ComEd

lacks knowledge or information sufficient to form a belief about the truth of the allegations

regarding the other defendants in the case, and therefore denies the same.

      59.    Two days later, on November 13, 1974, the AEC terminated Cotter's source material license.

     **ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it

could be construed to contain allegations against ComEd, those allegations are denied.  ComEd

lacks knowledge or information sufficient to form a belief about the truth of the allegations

regarding the other defendants in the case, and therefore denies the same.

      60.    Despite Cotter's previous certification that the Latty site was decontaminated, surveys conducted in 1976 at the Latty site showed radiation levels exceeding criteria for decontamination of land areas prior to return to unrestricted use.

     **ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it

could be construed to contain allegations against ComEd, those allegations are denied.  ComEd

lacks knowledge or information sufficient to form a belief about the truth of the allegations

regarding the other defendants in the case, and therefore denies the same.

      61.    In 1977, surveys at the Latty site showed that the site still contained licensable quantities of source material.  Thereafter, the NRC informed Cotter and ComEd that its survey "raised a serious question as to whether statements Cotter Corporation made in its application for termination of its license, with regard to contamination levels and removal of all licensable materials, were correct and, hence, whether the Commission's action terminating your license was founded on accurate representations by you."

**ANSWER:**  ComEd lacks knowledge or information sufficient to state a belief about the truth of the results of unspecified "surveys" and correspondence referenced in this paragraph, and therefore denies the allegations in this paragraph.

62.     As a result of Cotter and ComEd's acts and omissions at the Latty site, the Latty site remained contaminated, and Coldwater Creek and surrounding properties, including the areas where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked), were contaminated with radioactive materials in excess of background levels.

**ANSWER:**   ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

**Jarboe Purchased Latty Site and Conducted Decontamination Operations**

63.     In 1978, Jarboe Realty and Investment Company purchased the property located at 9200 Latty Avenue.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

64.     Upon information and belief, DJR Holdings, Inc., f/k/a Futura Coatings and/or its alter egos leased the Latty Avenue property, which is currently owned by Jarboe Realty & Investments Co., Inc. Both DJR Holdings, Inc. and Jarboe Realty & Investments Co., Inc. are owned, operated, and controlled by the same individuals such that they are mere instruments of those individuals, and that DJR Holdings, Inc. and Jarboe Realty & Investments are indistinct from each other and from their owners.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

65.    In 1979, the owner of Jarboe Realty and Investment Company, Dean Jarboe, conducted decontamination operations at 9200 Latty Avenue.  During this time, 11,000 cubic yards of contaminated soil was excavated from the western half of the property by Coldwater Creek and stockpiled on the eastern half.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

66.    In 1980, Jarboe Realty and Investment Company purchased the property located at 9170 Latty Avenue to store the radioactive waste.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

67.    Jarboe Realty and Investment Company is the current owner of 9200 and 9170 Latty Avenue.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

68.    As a result of Jarboe's acts and omissions, Coldwater Creek and surrounding properties, including the areas where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked), were contaminated with radioactive materials in excess of background levels.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

**Defendants acts and omissions contaminated Coldwater Creek
with radioactive materials**

69.     Coldwater Creek flows adjacent to the SLAPS site, then meanders next to the Latty
        site, and continues to flow through northern St. Louis County until it discharges
        into the Missouri River.

**ANSWER:** Admitted.

70.     As a result of Defendants acts and omissions at the SLAPS and Latty sites,
        Coldwater Creek is contaminated with hazardous, toxic and radioactive materials.
        The RWM was stored on the SLAPS and Latty sites with various methods,
        typically on the open ground, sometimes buried, and sometimes in barrels but
        no matter the method, it was reckless, negligent, and dangerous to store the
        materials in this manner.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are

directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the

truth of allegations regarding the other defendants in this case, and therefore denies the same.

72.     Since the late 1940's, RWM have migrated from the SLAPS site and the Latty
        site into Coldwater Creek and were released or otherwise deposited along the
        entire FEMA one- hundred-year flood plain of Coldwater Creek.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the

truth of the allegations in this paragraph, and therefore denies the same.

73.     Coldwater Creek was and remains contaminated with RWM; this occurred during
        the entire time each Defendant was responsible for the RWM and in each location
        the Defendants had responsibility.  Coldwater Creek has flooded multiple times
        since 1947.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the

truth of the allegations in this paragraph, and therefore denies the same.

74.     As a result of this flooding, the entire one-hundred-year floodplain of Coldwater
        Creek is believed to be contaminated with radioactive particles, including
        radium, thorium and uranium.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding what is "believed" to be true by unspecified individuals regarding Coldwater Creek, and therefore denies the allegations in this paragraph.

### Defendants acts and omissions contaminated the properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked), causing or contributing to cause their cancer

75.   Defendants acts and omissions at the SLAPS and Latty sites have caused the deposition of RWM on the properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked).  Flooding of Coldwater Creek is a significant contributor to the deposition of RWM on these properties.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

76.   Samples taken around Coldwater Creek confirm an elevated presence of RWM, significantly above the background radiation for this area of the United States.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding unspecified "samples taken around Coldwater Creek," and therefore denies the allegations in this paragraph.

77.   The RWM deposited on the properties where Plaintiffs lived, worked, gardened, and frequented is unique and identifiable from naturally occurring Missouri radiation.  Upon information and belief, the RWM that has contaminated the properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked), match the waste fingerprint (or profile) of the RWM generated by Mallinckrodt at SLDS which were later stored at SLAPS and Latty.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies the same.

78.   The RWM was stored on the SLAPS and Latty sites with various methods, typically on the open ground, sometimes buried, and sometimes in barrels but no matter the method, it was reckless, negligent, and dangerous to store the materials in this manner.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the other defendants in the case, and therefore denies the same.

79.   Defendants knew or should have known of the hazards associated with their operations, including but not limited to, that their activities, consisting of storing, processing, management, and use would and did lead to migration and contamination on surrounding properties that would and did result in personal injuries to those exposed.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

80.   As a result of Defendants' acts and omissions, Plaintiffs were exposed to radiation in excess of background, and this exposure caused or contributed to cause them to develop bodily injury, sickness and disease.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

81.   Plaintiff Nikki Steiner Mazzocchio was diagnosed with multiple myeloma, which her exposure to the radiation released by Defendants caused or contributed to cause.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Plaintiff Mazzocchio's diagnosis with multiple myeloma.  ComEd denies the remaining allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

82.   Plaintiff Angela Steiner Kraus was diagnosed with multiple myeloma, which her exposure to the radiation released by Defendants caused or contributed to cause.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Plaintiff Kraus's diagnosis with multiple myeloma. ComEd denies the remaining allegations in this paragraph to the extent they are directed at ComEd. ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

83.  Plaintiffs would not have been exposed to radiation but for the acts and omissions of the Defendants.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd. ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

84.  Defendants acts and omissions were the direct and proximate cause of the damage to Plaintiffs including the present harm and that which will occur in the future. Defendants are liable to Plaintiffs for such damages.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd. ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

**Regulatory history**

85.  Congress first established the Atomic Energy Commission ("AEC") in the Atomic Energy Act of 1946.

**ANSWER:** This paragraph contains no allegations against ComEd. To the extent it could be construed to contain allegations against ComEd, those allegations are denied.

86.  In 1954 Congress replaced the Atomic Energy Act of 1946 with the Atomic Energy Act of 1954 which directed the AEC to prepare regulations that would protect public health and safety from radiation hazards.

**ANSWER:** This paragraph contains no allegations against ComEd. To the extent it could be construed to contain allegations against ComEd, those allegations are denied.

87.    The AEC's radiation protection regulations, 10 C.F.R. Part 20, became effective starting in 1957. There were no federal safety standards related to radioactive material before this time.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.

88.    10 C.F.R. Part 20 was, and still is, only applicable to persons licensed by the AEC (now the NRC).

**ANSWER:**    This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.

89.    Commonwealth Edison Company has never been a licensee of the AEC/NRC with respect to the acts and omissions asserted in this Complaint.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.

90.    The St. Louis Airport Authority has never been a licensee of the AEC/NRC.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.

91.    Jarboe Realty and Investment Company has never been a licensee of the AEC/NRC.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.

## COUNT I – PUBLIC LIABILITY ACTION PURSUANT TO
## THE PRICE ANDERSON ACT

92.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

**ANSWER:**  ComEd restates and incorporates by reference its responses to and denials of the preceding allegations of the Complaint as if fully set forth herein.

93.     In 1957, Congress enacted the Price Anderson Act, 42 U.S.C. § 2210, which established indemnification and limited liability for certain AEC licensees and contractors.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  The allegations in this paragraph improperly state legal conclusions, and ComEd denies them for this reason as well.

94.     In 1988, Congress enacted the Price-Anderson Amendments Act of 1988, which created a federal cause of action for "public liability actions" arising from "nuclear incidents."

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  The allegations in this paragraph improperly state legal conclusions, and ComEd denies them for this reason as well.

95.     A "public liability action" is "any suit asserting public liability" 42 U.S.C. § 2014(hh).  As relevant here, "public liability" means "any legal liability arising out of or resulting from a 'nuclear incident.'" 42 U.S.C. § 2014(hh).

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  The allegations in this paragraph improperly state legal conclusions, and ComEd denies them for this reason as well.

96.     A "nuclear incident," in turn, is "any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." 42 U.S.C. § 2014(q).

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  The

allegations in this paragraph improperly state legal conclusions, and ComEd denies them for this reason as well.

97.     As originally pleaded, Plaintiffs alleged that their claims did not fall within the scope of the PAA because none of the defendants conducted licensed activity as defined by the PAA and because had an indemnification agreement pursuant to the PAA such that there could be no occurrence to establish a "nuclear incident". On November 14, 2022, the Supreme Court denied a Writ of Certiorari seeking review of an Eighth Circuit Court of Appeals decision that determined that similar claims constituted a "nuclear incident" regardless of whether a defendant had an applicable license or indemnity agreement.

**ANSWER:**  The allegations in the first sentence of this paragraph improperly state legal conclusions, and therefore ComEd denies them.  ComEd denies that it did not have a license or indemnity agreement pursuant to the PAA.  ComEd admits that the Supreme Court denied a Writ of Certiorari seeking review of an Eighth Circuit Court of Appeals decision that determined that the PAA preempted similar claims regardless of whether a defendant had an applicable license or indemnity agreement.  ComEd denies all remaining allegations in this paragraph.

98.     Consistent with the Eighth Circuit's decision, Plaintiffs now allege an express cause of action, known as a "public liability action", pursuant to the PAA, because their claims arise from a nuclear incident or incidents at the SLAPS and/or Latty sites.

**ANSWER:**  ComEd admits that Plaintiffs purport to describe the claims that they intend their Complaint to assert.  ComEd denies all remaining allegations in this paragraph.

99.     The PAA does not provide any substantive elements for "public liability actions." The PAA only provides that a "public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section." 42 U.S.C. § 2014(hh).

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  The

allegations in this paragraph improperly state legal conclusions, and ComEd denies them for this reason as well.

100. The PAA does not contain or reference any federal standards, regulations, or thresholds.  See 42 U.S.C. § 2210.

**ANSWER:**  This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  The allegations in this paragraph improperly state legal conclusions, and ComEd denies them for this reason as well.

101. Under the umbrella of Plaintiffs' "public liability action", Plaintiffs assert the following causes of action.

**ANSWER:**  ComEd admits that Plaintiffs purport to describe the claims that they intend their Complaint to assert.  ComEd denies that Plaintiffs can properly maintain any causes of action under the umbrella of Plaintiffs' "public liability action."  ComEd denies the remaining allegations in this paragraph.

## COUNT I, SUBPART (A) – NEGLIGENCE

102. Plaintiffs reallege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

**ANSWER:**  ComEd restates and incorporates by reference its responses to and denials of the preceding allegations of the Complaint as if fully set forth herein.

103. Radioactive isotopes are known human carcinogens and are among the most toxic materials known to man.  When property becomes contaminated with these wastes, the dangers can persist in the environment for thousands of years. Radioactive wastes should be handled, stored, and disposed of with the utmost safety in mind.  Exposures to radioactive wastes should be as low as is reasonably achievable.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies them.

104.    Knowing of the grave dangers posed by these radioactive wastes, the Defendants owed a duty of care to the Plaintiffs and the public to ensure the safe and legal handling, storage, and disposal of the radioactive wastes in order to prevent significant bodily injury, sickness and disease.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are

directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the

truth of allegations regarding the other defendants in this case, and therefore denies the same.

105.    Defendants also had a specific duty to warn or notify Plaintiffs of the potential hazards of exposure to radioactive, toxic and hazardous substances, and to warn or notify Plaintiffs of the fact that discharges or releases of these substances had occurred and were likely to occur in the future.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are

directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the

truth of allegations regarding the other defendants in this case, and therefore denies the same.

106.    Further, Defendants had a duty to comply with applicable state, federal, and local governmental laws, regulations, and guidelines applicable to persons processing, handling, storing, and/or disposing of hazardous, toxic, and radioactive waste materials.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are

directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the

truth of allegations regarding the other defendants in this case, and therefore denies the same.

107.    Defendants breached these duties by their reckless, negligent and grossly negligent processing, handling, storage, and/or disposal of hazardous, toxic, and radioactive waste materials as alleged herein.  Such conduct was in utter non-compliance with applicable federal, state and local laws, regulations, and guidelines.  Defendants' reckless, negligent, grossly negligent, and illegal conduct resulted in the dangerous release of hazardous, toxic, and radioactive substances into the communities around Coldwater Creek.  These releases have exposed Plaintiffs to radiation, causing or contributing to cause them to develop cancer.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are

directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the

truth of allegations regarding the other defendants in this case, and therefore denies the same.

108.   Defendants also failed to warn Plaintiffs of the actual and threatened releases of such hazardous, toxic, and radioactive substances and of the reasonably foreseeable effects of such releases, an omission that was reckless, negligent and grossly negligent.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

109.   Defendants failed to act to prevent their releases from harming Plaintiffs.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

110.   Defendants knew or should have known that their generation, management, storage, use, disposal, releases, or discharges of radioactive, toxic and hazardous substances in as alleged herein would result in damage to Plaintiffs caused by radiation exposure.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

111.   Upon information and belief, Defendants' negligent training of personnel handling radioactive, toxic, and hazardous materials on site was a direct and proximate cause of damage to Plaintiffs.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

112.   Defendants' negligence throughout the history of the mishandling and improper dumping of hazardous, toxic, carcinogenic, radioactive wastes has resulted in repeated releases of radioactive materials and other hazardous materials onto surrounding property, including the properties where Plaintiffs lived, gardened, and frequented (and where Plaintiff Mazzocchio worked), in disregard of applicable regulations and Plaintiffs' rights.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

113.    Defendants' negligence has exposed Plaintiffs to excessive radiation and caused or contributed to cause them to develop cancer.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

114.    Plaintiffs' injuries were the result of wastes generated, disposed of, and controlled by Defendants.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

115.    Plaintiffs did not consent to the injuries, nor did they contribute to the injuries in any way.

**ANSWER:** Denied.

## COUNT I, SUBPART (B) – NEGLIGENCE PER SE

116.    Plaintiffs reallege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

**ANSWER:** ComEd restates and incorporates by reference its responses to and denials of the preceding allegations of the Complaint as if fully set forth herein.

117.    Defendants violated Missouri regulations for Protection against Ionizing Radiation, 19 C.S.R. 20-10.070, 20-10.090, and the Missouri Clean Water Act, Mo. Rev. Stat. § 644.051.1, which require the safe storage and disposal of radioactive material so as to protect the health and safety of the public.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

118.   Plaintiffs are members of the class of persons that the Missouri regulations for Protection against Ionizing Radiation and Missouri Clean Water Act regulations were intended to protect.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

119.   The contamination of Plaintiffs' land is the kind of injury that the Missouri regulations for Protection against Ionizing Radiation and Missouri Clean Water Act regulations were designed to prevent.

**ANSWER:**  ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

120.   Defendants' violations of Missouri regulations for Protection against Ionizing Radiation and Missouri Clean Water Act regulations were the proximate cause of Plaintiffs' injuries.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

121.   To the extent applicable, Defendants violated the regulations in 10 C.F.R. Part 20, including but not limited to 10 C.F.R. 20.1, 10 C.F.R. 20.105, 10 C.F.R. 20.106, 10 C.F.R. 20.201, 10 C.F.R. 20.203, 10 C.F.R. 20.301, 10 C.F.R. 20.302, 10 C.F.R. 20.304, 10 C.F.R. 20.401, 10 C.F.R. 20.403, 10 C.F.R. 20.405.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

122.   Plaintiffs are members of the class of persons that 10 C.F.R. Part 20 was intended to protect.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

123.    Plaintiffs' exposure to radiation is the kind of injury that 10 C.F.R. Part 20 was designed to prevent.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

124.    To the extent applicable, Defendants' violations of 10 C.F.R. Part 20 was the proximate cause of Plaintiffs' injuries.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

125.    Defendants' negligence throughout the history of their mishandling and improper dumping of radioactive wastes in the St. Louis area has resulted in repeated releases of radioactive particles and other hazardous materials offsite in violation of applicable regulations and disregard for Plaintiffs' rights.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

126.    Defendants' negligence has exposed Plaintiffs to radiation in excess of background, causing or contributing to cause their cancer.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

127.    Plaintiffs did not consent to the injuries, nor did they contribute to the injuries in any way.

**ANSWER:** Denied.

**COUNT I, SUBPART (C) – STRICT LIABILITY**

128.   Plaintiffs reallege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

**ANSWER:**  ComEd restates and incorporates by reference its responses to and denials of the preceding allegations of the Complaint as if fully set forth herein.

129.   Defendants engaged in the ultrahazardous activity of handling, storing, and/or disposing of radioactive waste.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

130.   By handling, storing, and/or disposing of radioactive waste, Defendants have created a high degree of risk of harm to Plaintiffs.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

131.   Defendants have been unable or intentionally failed to eliminate the risk of harm caused by their handling, storing, and/or disposing of radioactive waste.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

132.   The risk of harm created by Defendants' acts and omissions is significant.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

133.   As a direct result of Defendants' abnormally dangerous activities that resulted in the emission of radioactive materials, Plaintiffs were exposed to excessive radiation causing or contributing to cause their cancer.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

134.   Plaintiffs' injuries are of the kinds that result from the dangerous nature of handling, storing, and/or disposing of radioactive waste.

**ANSWER:** ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations in this paragraph, and therefore denies the same.

135.   Any value derived from Defendants' handling, storing, and/or disposing of radioactive waste is drastically outweighed by the injuries said activities have caused or contributed to cause Plaintiffs to suffer.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

136.   Accordingly, Defendants are jointly and severally liable for any and all damages Plaintiffs have sustained as a result of their strict liability for handling, storing and/or disposing of radioactive materials, including, without limitation, any incidental or consequential damages.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

## COUNT I, SUBPART (D) – PUNITIVE DAMAGES

137.   Plaintiffs reallege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

**ANSWER:**   ComEd restates and incorporates by reference its responses to and denials of the preceding allegations of the Complaint as if fully set forth herein.

138.   Defendants committed one or more of the willful, wanton, and malicious acts more fully set forth above which individually or cumulatively justify the award of punitive damages in this matter.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

139.    Defendants knew or had information from which, in the exercise of ordinary care, should have known that such conduct, as detailed above, created a high degree of probability of injury to Plaintiffs and others similarly situated.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

140.    The willful, wanton and malicious acts of Defendants, as detailed above, evidence Defendants' complete indifference to and/or conscious disregard for the safety of Plaintiffs, and others similarly situated.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

141.    The PAA does not prohibit punitive damages for conduct occurring before 1988 when 42 U.S.C. § 2210(s) took effect.

**ANSWER:** This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  The allegations in this paragraph improperly state legal conclusions, and ComEd denies them for this reason as well.

142.    The PAA does not prohibit punitive damages for persons who the United States is not obligated to make payments under an agreement of indemnification.  See 42 U.S.C. § 2210(s).

**ANSWER:** This paragraph contains no allegations against ComEd.  To the extent it could be construed to contain allegations against ComEd, those allegations are denied.  The

allegations in this paragraph improperly state legal conclusions, and ComEd denies them for this

reason as well.

143.     Mallinckrodt's PAA indemnification agreement is limited to liability that arises
out of or in connection with its contractual activity.  The St. Louis Airport
Authority, Cotter, ComEd nor Jarboe never conducted any activities connected or
related to Mallinckrodt's contractual activity and their liability is not connected or
related to Mallinckrodt's contractual activity.

**ANSWER:**  The first sentence in this paragraph improperly state legal conclusions, and

therefore ComEd denies them.  ComEd denies the remaining allegations in this paragraph to the

extent they are directed at ComEd.  ComEd lacks knowledge or information sufficient to form a

belief about the truth of allegations regarding the other defendants in this case, and therefore

denies the same.

## COUNT I, SUBPART (E) – CIVIL CONSPIRACY

144.     Plaintiffs reallege and incorporate by reference every allegation of this Complaint
as if each were set forth fully herein.

**ANSWER:**  ComEd restates and incorporates by reference its responses to and denials of

the preceding allegations of the Complaint as if fully set forth herein.

145.     Defendants wrongfully and fraudulently agreed and conspired together to injure
Plaintiffs, by wrongfully releasing radioactive wastes, as more fully alleged
herein.

**ANSWER:**  ComEd denies the allegations in this paragraph to the extent they are

directed at ComEd.  ComEd lacks knowledge or information sufficient to form a belief about the

truth of allegations regarding the other defendants in this case, and therefore denies the same.

146.     Defendants wrongfully and fraudulently agreed and conspired together to take the
actions alleged herein giving rise to causes of action for negligence, negligence
per se, strict/absolute liability, and punitive damages as alleged herein.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd. ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

147. As a result of the conspiracy of the Defendants, Plaintiffs have suffered damages, as more fully alleged herein.

**ANSWER:** ComEd denies the allegations in this paragraph to the extent they are directed at ComEd. ComEd lacks knowledge or information sufficient to form a belief about the truth of allegations regarding the other defendants in this case, and therefore denies the same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, for general damages, special damages, punitive and exemplary damages, prejudgment interest, costs of the action, and such further relief as this Court deems proper.

**ANSWER:** ComEd denies that it has engaged in wrongdoing as to Plaintiffs and denies that Plaintiffs are entitled to general damages, special damages, punitive and exemplary damages, prejudgment interest, costs, or any other relief whatsoever. ComEd denies all remaining allegations in this paragraph.

## AFFIRMATIVE DEFENSES

Pursuant to Fed. R. Civ. P. 8(c), ComEd asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the Supremacy Clause of the United States, Article VI, clause 2, and the laws of the United States, including but not limited to the Price-Anderson Act, 42 U.S.C. § 2210, *et seq.* as well as the remaining portions of the Atomic Energy Act of 1954, as amended, and regulations promulgated thereunder.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations and/or repose.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because any injuries or damages sustained by Plaintiffs as alleged in the Complaint were proximately caused by acts of God or by intervening and/or superseding acts or omissions of others for which ComEd is not legally liable.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because of Plaintiffs' contributory and/or comparative negligence and/or contributory and/or comparative fault.  If Plaintiffs recover damages, ComEd is entitled to have the amount abated, reduced, apportioned, or eliminated to the extent of Plaintiffs' comparative negligence and fault.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' damages, if any, were the direct and proximate result of wrongful conduct, intentional acts, negligence and/or intervening conduct of third parties for whom ComEd is not legally liable.  In the event that Plaintiffs are found to have sustained damages, ComEd is liable only for that portion of any

damages which correspond to the degree of fault or responsibility of ComEd and not for the acts, negligence, or fault of any other person or entity.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' purported claims are barred, in whole or in part, because Plaintiffs ratified, consented to, and acquiesced to the acts, omissions, or conduct, if any, of ComEd or other third parties, thus barring Plaintiffs from any relief as prayed for in the Complaint.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs at all times had actual and/or constructive knowledge of the circumstances upon which the Complaint is based, and that Plaintiffs expressly accepted those circumstances.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because at all times and places mentioned in the Complaint, ComEd complied with the state of the art, and, therefore, Plaintiffs are not entitled to recover from ComEd as a matter of law.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the exposure of Plaintiffs and/or their property, if any, to any alleged radioactive material, substance, or chemical from ComEd's alleged acts was so minimal as to be insufficient to establish by a reasonable degree of probability that any such exposure caused any alleged injury, damage, or loss.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs seek the retroactive application of statutes, rules, regulations, or common-law standards of conduct, or otherwise seek to impose liability retroactively for conduct that was not actionable at the time it

occurred, which violates the Constitution of the United States and the Constitution of the State of Missouri.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for punitive damages are barred, in whole or in part, because an award of punitive damages would violate ComEd's procedural and substantive due process rights and equal protection rights under the Constitution of the United States and the Constitution of the State of Missouri.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because they knowingly came to the harm.  Plaintiffs knowingly purchased and resided in their homes despite the knowledge that it was in the immediate vicinity of a known Superfund site subject to the oversight and regulatory authority of the EPA under CERCLA.

### THIRTEENTH AFFIRMATIVE DEFENSE

ComEd hereby adopts and incorporates any other defense asserted by any other Defendant in this action.

*        *        *

WHEREFORE, ComEd prays that judgment be entered in favor of ComEd and against Plaintiffs on the alleged causes of action in the Complaint, that ComEd be awarded its costs of suit and attorneys' fees incurred, and that the Court award ComEd any such further relief as it deems proper.  ComEd reserves the right to assert additional defenses that may become applicable during the course of the litigation.

ComEd demands a trial by jury.

Dated: September 29, 2023              Respectfully submitted,

                                      */s/ Brian O. Watson*
                                      Brian O. Watson, #68678MO
                                      Lauren E. Jaffe, #6316795IL
                                      RILEY SAFER HOLMES & CANCILA LLP
                                      70 W. Madison St., Ste. 2900
                                      Chicago, Illinois 60602
                                      (312) 471-8700 (main)
                                      (312) 471-8701 (fax)
                                      bwatson@rshc-law.com
                                      ljaffe@rshc-law.com
                                      docketdept@rshc-law.com

                                      Jennifer Steeve, #308082CA
                                      E. Ashley Paynter, #333428CA
                                      RILEY SAFER HOLMES & CANCILA LLP
                                      100 Spectrum Center Drive, Suite 440
                                      Irvine, CA 92618
                                      Phone: (949) 359-5515
                                      Fax: (312) 471-8701
                                      jsteeve@rshc-law.com
                                      apaynter@rshc-law.com
                                      docketdept@rshc-law.com

                                      **ATTORNEYS FOR DEFENDANT
                                      COMMONWEALTH EDISON COMPANY**

## CERTIFICATE OF SERVICE

I certify that on September 29, 2023, these papers were filed through the CM/ECF

system, which will automatically serve an electronic copy upon all counsel of record.

Respectfully submitted,

*/s/ Brian O. Watson*
Brian O. Watson, #68678MO